**[ORAL ARGUMENT SCHEDULED APRIL 9, 2025]**

No. 25-5091

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

NATIONAL TREASURY EMPLOYEES UNION, et al.,

*Plaintiffs-Appellees*,

*v.*

RUSSELL VOUGHT, in his official capacity as Acting Director of the Consumer Financial Protection Bureau, et al.,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Columbia

**REPLY IN SUPPORT OF EMERGENCY MOTION
FOR A STAY PENDING APPEAL**

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
MELISSA N. PATTERSON
CATHERINE PADHI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7712*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-5091*

# INTRODUCTION

The district court here has effectively commandeered the Executive Branch's management of CFPB's workforce on the unsupportable theory that in order to remain operational, CFPB must function at a judicially dictated level. Plaintiffs' attempt to downplay this overreach belies the injunction's manifest overbreadth, which defies the fundamental and undisputed principle that an injunction must be tailored to redress the legal problem on which it is based. Plaintiffs implausibly insist that the injunction here *is* so tailored based on their contention that keeping an agency "open" requires measures intruding on the Executive Branch's discretion, such as a court order to maintain the agency's earlier staffing levels and contracts. That contention has no basis in either logic or law.

On appeal, defendants will demonstrate the many errors underlying the challenged injunction, both legal and factual. At this juncture, however, the plain disconnect between the sweeping terms of the district court's programmatic injunction and the legal problem the district court identified—the need to prevent the purported "eliminat[ion]" of CFPB, Op. 3—warrants immediate relief.

# ARGUMENT

I. **The Government Is Likely To Prevail On Appeal.**

    **A. The District Court Erred In Entering An Injunction Far Broader Than Necessary To Remedy The Purported Problem.**

1. Plaintiffs do not dispute that an injunction broader than necessary to address the problem identified by a court is reversible error. *See, e.g.*, *Dayton Bd. of Ed. v. Brinkman*, 433 U.S. 406, 418-19 (1977) (concluding there was a "disparity between the evidence of constitutional violations and the sweeping remedy finally decreed" and that it was "clear that the presently mandated remedy cannot stand upon the basis of the violations found by the District Court"). Nor do they dispute that in crafting injunctive relief, a court must give due regard to the Executive's Article II prerogatives and "the well-established rule that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" *Sampson v. Murray*, 415 U.S. 61, 83 (1974). Instead, they double down on the district court's conclusion that preliminary relief was necessary for the single purpose of keeping CFPB open to perform its statutory duties during the litigation. Opp. 3, 11-12, 21.

Even assuming *arguendo* that judicial intervention were needed to prevent defendants from "clos[ing] the agency," Op. 100, *but see infra* I.B, the district court's order suffers from a fundamental, reversible error—it imposes sweeping and intrusive requirements going far beyond anything necessary to keep the agency open and performing its statutory duties. *See Nebraska Dep't of Health & Hum. Servs. v. Dep't of Health & Hum. Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006) ("We have long held that '[a]n injunction must be narrowly tailored to remedy the specific harm shown.'").

Contrary to plaintiffs' and the district court's assertions, *see* Opp. 12-15, 22; Dkt. No. 102, at 2 (April 3, 2025) (district court order denying a stay pending appeal), the injunction is far from tailored to prevent the "dissolution of the CFPB." Opp. 22. *See Buchanan v. Evans*, 439 U.S. 1360, 1362 (1978) (Brennan, J., in chambers) (reciting the "familiar rule" that "once a … violation is found, a federal court is required to tailor the scope of the remedy to fit the nature and extent of the … violation") (citations and alterations omitted). Rather, the injunction inserts the court into management decisions entirely disconnected from the agency's ability to carry out statutory obligations.

Take the injunction's effect on CFPB's leadership's ability to manage the size of its workforce. The district court required CFPB to rehire *all* terminated employees without regard for whether these employees are necessary to carry out the agency's statutory duties. Order 2, Dkt. No. 88. Nor can the agency terminate a single employee "except for cause related to the individual employee's performance or conduct." *Id.* The district court indicated that such language permits "routine workplace management," Dkt. No. 102, at 4, but there is nothing routine about exposing an agency to contempt threats over disputes about adequate cause to terminate an employee.

Indeed, it is even clearer now that the district court lacked a basis to prohibit CFPB from undertaking reductions in force that would not impede the agency's ability to meet statutory requirements. In denying a stay pending appeal, the district court made plain that its decision to prohibit reductions in force is based not on a conclusion that such reductions would necessarily leave CFPB unable to fulfill statutory requirements, but rather on its view that CFPB's reduction-in-force plans are "not a routine

4

operation" (a phrase the district court did not define). D. Ct. Dkt. 102, at 4.[1]

A court's view that an agency is engaged in non-routine actions is hardly a foundation for the extraordinary remedy of an injunction—especially when those actions are management tools expressly recognized by Congress. *See* 5 U.S.C. § 3502; *see also* 5 C.F.R. § 351 ("Reduction in Force").

The injunction's restraints on work management are equally unjustified. The district court directed that "defendants shall not reinstitute [the earlier stop-work email] or seek to achieve the outcome of a work stoppage, whether through a stop-work order, an order directing employees to take administrative leave, or any other means." Order 2, Dkt. No. 88. Plaintiffs contend that this language "doesn't prohibit the defendants from stopping particular activities." Opp. 14. Even if plaintiffs' reading could be squared with the injunction's actual language, which contains no such carveout, it would represent a significant incursion on the agency's management entirely untethered from any statutory requirement.

---

[1] The district court's description of a planned reduction in force that "would leave no open positions behind," D. Ct. Dkt. 102, at 4, does not account for the record evidence that any reductions in force are intended to leave a streamlined workforce capable of "driving the highest-quality, most efficient delivery of their statutorily-required functions," OMB-OPM Memo 2, Dkt. No. 70-2. *See also* March 10 Tr. 62-63.

If employees perform only work subject to the agency's discretion—such as enforcement activities—there is no reason why the agency should be barred from telling them to stop that work and take administrative leave.

Plaintiffs nowhere explain why these aspects of the preliminary injunction are necessary to ensure compliance with any statute or preclude the closure of the agency. Instead, they insist that the only way for CFPB to remain operational is to continue operating with its previous workforce. The illogic of that assertion underscores the government's likelihood of success on appeal.

2. Plaintiffs respond that defendants may not "complain that the district court's order should have been narrower, when they refused to ever say how." Opp. 18. This argument gets things exactly backwards. The plaintiff seeking a preliminary injunction—not the defendant—bears the burden of establishing entitlement to that extraordinary remedy, including demonstrating that the scope of the requested injunction is appropriate and necessary to prevent the specific irreparable harm they have established flowing from the alleged legal violation. If plaintiffs fail to carry that burden, they are entitled to no injunction, not an overbroad one. *See Brinkman*, 433 U.S. at 418 (vacating "a remedy which ... is entirely out of

6

proportion to the constitutional violations found by the District Court"); *id.* at 422 (Brennan, J., concurring) ("[I]t is plain that [lower court proceedings] resulted in a remedy going beyond the violations so far found," as the specific "violations already found are not of themselves sufficient to support the broad remedial order entered below.").

To be clear, the government also below disputed—and will on appeal continue to contest—the propriety of a broad, vague injunction generally directing CFPB to comply with the law, particularly without any showing that a plaintiff suffers a cognizable injury caused by the agency's failure to carry out a particular statutory duty. *See* Opp. to Preliminary Injunction Mot. 14-17, Dkt. No. 31; *see also Public Citizen, Inc. v. FERC*, 839 F.3d 1165, 1172 (D.C. Cir. 2016) (explaining that agency "[i]naction is reviewable only where the agency fails to take a 'discrete' action it is legally required to take"); *id.* (noting the "connection between the reviewability of inaction and the writ of mandamus") (citing *Norton v. S. Utah Wilderness All.* ("*SUWA*"), 542 U.S. 55, 63 (2004)). Courts are not "empowered to enter general orders compelling compliance with broad statutory mandates"—if so, "they would necessarily be empowered, as well, to determine whether compliance was achieved—which would mean that it would ultimately

7

become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate." *SUWA*, 542 U.S. at 66-67. The result would be "judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve," and thus "undue judicial interference with [an agency's] lawful discretion." *Id.* at 66.

But the impropriety of a general follow-the-law injunction does not mean that plaintiffs are entitled to a specific but overbroad injunction, which is what the district court entered here. As explained, had the district court issued a narrow injunction requiring defendants to keep CFPB open to fulfill specified statutory obligations, the government may not have needed to seek emergency relief. *See* Mot. 1, 15, 21. But given the district court's decision to enter an injunction requiring much more, the government has sought—and this Court should enter—a stay.

### B. The Government Is Committed To Keeping CFPB Open Such That It Continues To Fulfill Its Statutory Obligations.

As the government will demonstrate on appeal, the district court's conclusion that there is an ongoing effort by agency leadership to eliminate CFPB is incorrect and belied by the record. *See* Op. 2-3, 101; *see also* Dkt. No.

8

102, at 5. For present purposes, this Court need not resolve any factual disputes, but in exercising its authority to issue a stay under 28 U.S.C. § 1651, it may note that, under the leadership of Acting Director Russell Vought and Chief Legal Officer Mark Paoletta, the agency has represented that CFPB will remain open and that work necessary to fulfill its statutory obligations will continue.

As the government explained in its stay motion, CFPB has acted repeatedly to counter the impression that CFPB would no longer perform its statutorily required functions. In contending otherwise, plaintiffs and the district court rely heavily on the February 10 email that Acting Director Vought sent the morning of his first full business day on the job, *see* Op. 14; Mar. 10 Tr. 159:17-21, insisting this email reveals an intent to eliminate CFPB entirely. But the email did not categorically proscribe all agency work without exception—it asked employees to contact Mark Paoletta "to get approval" to work on "any urgent matters." Op. 14. When an agency employee reached out to Paoletta regarding a "high-priority issu[e]," Paoletta "assessed the situation and said please do not stop work on this, please continue moving forward with this." March 10. Tr. at 77-78. And to

9

assure himself this work "would continue," Paoletta "asked the employe[e] to confirm that he had received the email." *Id.*

Nevertheless, once agency leadership recognized that employees had inferred the agency was winding down, it acted to dispel that misimpression. As previously explained, Chief Operating Officer Adam Martinez assured various divisions that "statutorily required work and/or work required by law are authorized." Op. 26-27. And on March 2, Chief Legal Officer Mark Paoletta addressed the February 10 email explicitly, recognizing that some employees were not performing statutorily required work as a consequence of it. Op. 30. He stated explicitly that "Employees should be performing work that is required by law and do not need to seek prior approval to do so." *Id.* Moreover, to ensure that confusion did not hinder such work, he added, "If you are aware of other employees that are needed to assist you in performing a statutorily required task but are not doing so, please raise this with me immediately." Op. 30.

Similarly, while plaintiffs cite a February 11 email directing the cancellation of all contracts in several agency divisions, Opp. 5 (citing Op. 17), they omit any reference to instructions from the next week, when Paoletta was "directing [agency employees] to not terminate or suspend

10

any contracts without specific authorization from Acting Director Vought or me." Dkt. No. 66-2, at 2 (Feb. 19 email). They also leave out that Paoletta asked for a spreadsheet of contracts that "support statutorily required functions and data," *id.* at 1 (Feb. 18 email), and then asked for any "termination notifications issued for the contracts itemized … in [this] spreadsheet to be rescinded/withdrawn," such that there would be "no interruption" in contract performance, *id.* at 3 (Feb. 19 emails).

Defendants will show on appeal that the evidence does not support the district court's conclusion that a preliminary injunction is necessary to prevent CFPB from being eliminated. But for purposes of this motion, defendants continue to affirm, as they maintained below, that "absent congressional action, [CFPB] will remain open and will perform its legally required functions." Order, Doc. 2109145 (granting administrative stay "in light of appellants' representations").

## II. The Remaining Factors Favor A Stay.

The remaining factors also warrant a stay. A court's equitable powers do not extend to injunctions reaching far beyond any purported problem identified by plaintiffs or the court, and plaintiffs cannot claim an equitable entitlement to relief the court is not authorized to provide.

11

Plaintiffs suggest (Opp. 20, 22) that the government cannot be harmed by an injunction that is consistent with the parties' earlier consent agreements that contain some (though not all) of the injunction's provisions. That the government was willing to exercise its Article II authority to accommodate the district court for a matter of weeks in no way suggests that no injury flows from a coercive judicial order intruding on core Executive Branch prerogatives lasting many months more. And it is difficult to imagine a more effective way to undermine parties' willingness to reach a temporary compromise that permits district courts time to consider preliminary relief than plaintiffs' suggested approach to equity.

Moreover, the district court's order is far broader than anything to which the government agreed as an interim, time-limited measure—not for the entire span of appellate proceedings. *See* Dkt. Nos. 19 (consent order); 53, 71 (notices of agreement). For example, the district court ordered the government to reinstate all probationary and term employees, regardless of whether they are necessary for CFPB to perform its statutory obligations. Order 2, Dkt. No. 88. The district court also prohibited CFPB from instituting any future temporary work-stoppage orders, again without considering whether such an order was necessary to prevent the agency's

12

elimination. *Id.* The government had never agreed to such restrictions even as a temporary matter, and for good reason: CFPB performs many discretionary enforcement functions not mandated by statute, and which the agency's political leadership should be free to stop at will without concern that they are acting contrary to litigation obligations subject to judicial superintendence.

Indeed, the government is irreparably harmed by the injunction's transformation of routine agency-administration matters into potential sources of contempt litigation. For as long as the injunction lasts, routine and lawful firings could be the subject of contempt proceedings. The same is true of the agency's decision to halt contract work, with its determination about what is "unnecessary for the agency to fulfill its statutory functions" subject to second-guessing in court. Such judicial supervision over an agency's exercise of lawful discretion is unwarranted and impermissible, but it will continue, potentially for many months, unless the injunction is stayed. *See SUWA*, 542 U.S. at 66-67.

## CONCLUSION

For the foregoing reasons, this Court should stay the district court's order pending appeal.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney*
    *General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney*
    *General*

MARK R. FREEMAN
MELISSA N. PATTERSON
*/s/ Catherine Padhi*
CATHERINE PADHI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7712*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-5091*
  *catherine.m.padhi@usdoj.gov*

APRIL 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2599 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Book Antiqua 14-point font, a proportionally spaced typeface.

*/s/ Catherine Padhi*
Catherine Padhi

# CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*/s/ Catherine Padhi*
Catherine Padhi