**[ORAL ARGUMENT SCHEDULED MAY 16, 2025]**

**No. 25-5091**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

NATIONAL TREASURY EMPLOYEES UNION, et al.,

*Plaintiffs-Appellees*,

*v.*

RUSSELL VOUGHT, in his official capacity as Acting Director of the Consumer Financial Protection Bureau, et al.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Columbia

**DEFENDANTS' EMERGENCY MOTION
TO ENFORCE OR CLARIFY STAY PENDING APPEAL**

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
MELISSA N. PATTERSON
CATHERINE PADHI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7712*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*

Just one week ago, this Court issued a partial stay pending appeal of the district court's injunction in this case. Under the terms of this Court's stay order, defendants are permitted to undertake a reduction in force as to "employees whom defendants have determined, after a particularized assessment, to be unnecessary to the performance of defendants' statutory duties." Stay Order at 1 (D.C. Cir. Apr. 11, 2025) (Stay Order). Defendants have done exactly that—after conducting a careful, unit-by-unit analysis of CFPB's operations and statutory duties, they issued reduction-in-force notices to many employees while retaining over 200 others. That is entirely permissible and consistent with this Court's Stay Order. Yet plaintiffs rushed immediately back to district court last night. Doc. 105. And the district court has already blocked the reduction in force, while opening the door to sweeping discovery into the agency's deliberative processes and decision-making. Doc. 113.

Once again, the district court is overriding the lawful manner in which the Bureau's politically accountable leaders have chosen to operate this agency. This most recent order is based on an egregious misconstruction of this Court's order. Defendants thus seek emergency relief from this Court to enforce or clarify its Stay Order through vacatur or any form of relief this

this Court deems appropriate. Such relief would ensure that the district court properly effectuates that Order—and would restore defendants' ability to exercise the important Article II prerogatives that Order protects— as soon as possible. Defendants respectfully request relief **as soon as practicable** given the exigencies and in order to obviate the need for further emergency appellate proceedings.

**1.** On March 28, 2025, the district court entered a broad preliminary injunction seeking effectively to freeze the operations of the CFPB as they stood before the 2025 presidential inauguration. Doc. 88. In relevant part, provision (3) of the injunction stated that: "Defendants shall not terminate any CFPB employee, except for cause related to the individual employee's performance or conduct; and defendants shall not issue any notice of reduction-in-force to any CFPB employee." *Id.* at 2. The parties understood that provision to prohibit defendants from undertaking any reduction in force—precluding the Bureau's new leadership from carrying out the President's direction to all agency heads to "initiate large-scale reductions in force." Executive Order 14210, *Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative*, 90 Fed. Reg. 9669, 9670 (Feb. 11, 2025).

2

**2.** On April 11, 2025, following stay briefing and oral argument, this Court issued the Stay Order. In relevant part, this Court ordered: "Provision three (3) is stayed insofar as it prohibits defendants from terminating or issuing a notice of reduction in force to employees whom defendants have determined, after a particularized assessment, to be unnecessary to the performance of defendants' statutory duties." Stay Order at 1.

Under the plain terms of that Stay Order, defendants are entitled to proceed with reduction-in-force notices, free and clear of the district court's injunction, so long as defendants first made a "particularized assessment" that the affected employees are "unnecessary" for performing the CFPB's statutory duties.

**3.** Defendants proceeded accordingly. After a months-long review, leadership "determined to take the Bureau in a new direction that would perform statutory duties, better align with Administration policy, and right-size the Bureau." Doc. 109 (Paoletta Decl.) ¶ 1. They concluded that many CFPB offices "contained far more employees than are necessary to fulfill the Bureau's statutory duties and discretionary functions." *Id.* ¶ 4.

To comply with the Stay Order, Chief Legal Officer Mark Paoletta worked with two other CFPB attorneys to conduct "a particularized

3

assessment to determine which employees are unnecessary for the Bureau to perform its statutory duties." *Id.* ¶ 6. They "went line by line through each competitive area to determine how many employees were necessary in each area," in light of the relevant statutory obligations. *Id.* ¶ 7. The details of that particularized assessment are set forth in a declaration that identifies each relevant office or unit and the conclusion reached about the statutory functions that it serves. *Id.* ¶¶ 8-18.

All told, defendants concluded that an "approximately 200 person agency allows the Bureau to fulfill its statutory duties and better aligns with the new leadership's priorities and management philosophy." *Id.* ¶ 21. They sent reduction-in-force notices to the remaining CFPB employees, who will remain on paid administrative leave for 60 days until the reduction in force takes effect. *See id.* ¶ 22.

**4.** Last night, after learning of this reduction in force, plaintiffs returned to the district court seeking an order to show cause why the reduction in force did not violate the (partially stayed) preliminary injunction. Doc. 105. Their motion rested on speculation about how the reduction in force would supposedly impact the agency's ability to perform its statutory functions. *Id.* at 2.

Shortly before midnight, the district court entered an order demanding various documents be filed by 10 AM, with a hearing at 11 AM at which the court insisted on attendance of "a person with personal knowledge of the scope of the [reduction in force] and the decision to implement it." Minute Order of 11:13 PM (Apr. 17, 2025). Defendants filed the documents, plus the Paoletta Declaration making clear how the agency had conducted the "particularized assessment" and evaluated its statutory duties. *See* Docs. 108, 109.

**5.** After a contentious hearing, and shortly before 4:30 PM today, the district court entered an order providing that "the Reduction in Force announced by Acting Director Vought on or about April 17, 2025 is SUSPENDED and it may NOT be implemented, effectuated, or completed in any way until this Court has ruled on plaintiffs' motion to enforce the preliminary injunction" Doc. 113, at 7. The order further states that "the defendants are PROHIBITED from discontinuing any employee's access to work systems, including email and internal platforms until this Court has ruled on plaintiffs' motion." *Id.* The order did not find that defendants had failed to engage in a particularized assessment or that they had not determined that the employees subject to the reduction in force are

5

unnecessary to the performance of the Bureau's statutory duties. Rather, the court entered its order barring the reduction in force based on its assessment that "given the starkly different pictures being presented by declarations alone, it is necessary to conduct an evidentiary hearing before the Court can determine whether the agency is complying with or flouting the Order." *Id.* at 5.

**6.** The district court's order profoundly misunderstands this Court's Stay Order, and this Court should immediately act to enforce or clarify its terms to give effect to the relief this Court ordered.

This Court's Stay Order empowered defendants to conduct a reduction in force as to any CFPB employee "whom *defendants have determined*, after a particularized assessment, to be unnecessary to the performance of defendants' statutory duties." Stay Order at 1 (emphasis added). The order thus unambiguously means that if *defendants* make the requisite assessment and determination, they may proceed with a reduction in force without violating the district court's injunction. Defendants made those requisite assessments and determinations, as the record substantiates in detail. Doc. 109 (Paoletta Decl.).

Importantly, this Court did not stay provision (3) of the injunction only "insofar as it prohibits defendants from terminating or issuing a notice of reduction in force to employees *who are* unnecessary to the performance of defendants' statutory duties." And for good reason: Exactly how many agency employees are "necessary" to fulfill the agency's statutory duties is hardly a "clear" provision that could properly be incorporated into an injunction; instead, it is a judgment call on which reasonable minds may differ. And, crucially, it is a judgment call that Article II empowers *defendants* to make—not plaintiffs or a court. *See* 12 U.S.C. § 5493(a)(1)(B) ("The Director is authorized to employ attorneys, compliance examiners, compliance supervision analysts, economists, statisticians, and other employees *as may be deemed necessary* to conduct the business of the Bureau." (emphasis added)). This Court's Stay Order followed suit—and avoided the problem of a fatally ambiguous injunction—by staying provision (3) as to employees "*whom defendants have determined*" after a particularized assessment are unnecessary to fulfill the Bureau's statutory duties.

The district court appears to have based its new injunction on a profound misunderstanding of this Court's order, one that permits the district court to probe, second-guess, and look behind defendants'

determinations. The district court invoked the opinion of a CFPB employee that, contrary to the Chief Legal Officer's assessment, the reduction in force will leave one of the Bureau's offices "[un]able to perform its statutory duties without adequate, experienced staff." Doc. 113, at 4. And it hypothesized that the reduction in force "will decimate the agency and render it unable to comply with its statutory duties." *Id.* at 6. Such inquiries form no valid part of *enforcing* the unstayed portions of the injunction; instead, they *violate* this Court's Stay Order, which properly and expressly committed to *defendants* the determination of how many and which employees were necessary to carry out the Bureau's statutory duties.

Moreover, the district court's order appears to stem from an untenable interpretation of this Court's requirement that defendants engage in a "particularized assessment." Notably, although this Court specified that defendants must engage in an "individualized assessment" with respect to already terminated employees, it required only a "particularized assessment" with respect to employees subject to a new reduction in force. Stay Order at 1. That variation in wording is presumed meaningful. *Cf. Russello v. United States*, 464 U.S. 16, 23 (1983). The district court noted that the Chief Legal Officer's "declaration does not describe any consultation

8

with the heads of the various offices involved" and that one of plaintiffs' declarations "states that no managers in Consumer Response were consulted by agency leadership about the level of staff needed to perform the office's statutory duties." Doc. 113, at 4. But the particularized-assessment requirement does not impose strictures on the consultation processes defendants choose to use to make their determinations. Nor does it required an individualized assessment as to whether a particular employee has been among "the ones who carry out the day-to-day tasks involved in fulfilling [statutory] obligations." *Id.* Rather, an office-by-office assessment like that documented in the Chief Legal Officer's declaration is entirely sufficient to discharge defendants' duty to make particularized assessments before engaging in the now-suspended reduction in force. *See* Doc. 109 (Paoletta Decl.) ¶ 19 (explaining the particularized and specific analysis "of each office, division, unit, subunit").

Given that defendants made the determinations this Court specified, upon the assessments this Court specified, they were entitled under this Court's Stay Order to engage in a reduction in force in line with those determinations. Without even purporting to find that defendants failed to comply with the Stay Order's conditions, the district court's order has

9

unlawfully stymied defendants' exercise of authority that this Court's Stay Order restored.

**7.** This Court should grant immediate relief to permit defendants to reinstate the reduction in force. That relief could take the form of vacatur of the district court's new injunction, or an order clarifying that the Stay Order does not permit the district court to second-guess the substance of defendants' determinations or impose additional processes on their particularized assessments related to reductions in force.[1]

*First*, the district court has enjoined the reduction in force permitted by the Stay Order, which was scheduled to take effect today (by placing the employees on paid leave and terminating their access to their work systems). That alone is grounds for immediate relief, just as it was grounds for the Stay Order itself. The district court's improper implementation of this Court's Stay impedes the Executive Branch from operating this federal agency in the

---

[1] Because this Court has jurisdiction to enforce its own orders, no new appeal from the district court's order suspending the reduction in force is necessary in order to grant relief that would allow defendants to engage in activities consistent with this Court's Stay. *See Yablonski v. United Mine Workers of America*, 454 F.2d 1036, 1038 (D.C. Cir. 1972); *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). In an abundance of caution, however, defendants have filed a notice of appeal from the injunction (which lacks any temporal limit) the district court entered today. *See* Doc. 115.

(lawful) manner that its politically accountable leaders have chosen. That amounts to "an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *Immigration & Naturalization Serv. v. Legalization Assistance Project of L.A. Cty. Fed'n of Labor*, 510 U.S. 1301, 1305–06 (1993) (O'Connor, J., in chambers).

*Second*, the district court's misapprehensions regarding the contours of this Court's Stay are the basis for its decision to permit intrusive discovery *next week* into the Bureau's deliberative decisions. *See* Doc. 113, at 5 (permitting plaintiffs to "issue requests for production of documents to defendants by Friday, April 18" and ordering "defendants' response to the motion to enforce … by Tuesday, April 22"). That discovery is to be followed by an evidentiary hearing at which plaintiffs and the district court appear to contemplate questioning high-ranking agency leaders about their plans and decisions. Such discovery and proceedings cannot be reconciled with a proper understanding of the Stay Order, and inflict additional irreparable harm on the separation of powers. *Cf. In re Clinton*, 973 F.3d 106, 112-13 (D.C. Cir. 2020)*; In re U.S. Dep't of Educ.*, 25 F.4th 692, 701 (9th Cir. 2022).

8. Immediate clarification or other relief could also obviate the need for further emergency proceedings in this Court. While the government

considers this Court's Stay Order to plainly permit the reduction in force at issue—and to plainly preclude the district court's searching inquiry into the substance of defendants' determinations and the details of the processes defendants employ in reaching those determinations—the district court has significantly erred in implementing its terms. Should this Court vacate the new injunction or provide additional clarity regarding the existing Stay Order, the government may not need to press, and this Court may not need to consider, a new appeal and emergency stay. While the district court's intrusion on the Executive Branch's operation of the Bureau unfortunately may still require such measures if the district court continues on its current course, action now to enforce or clarify the Stay Order this Court has already entered may forestall the need to further burden this Court.

## CONCLUSION

For these reasons, the Court should immediately grant vacatur, clarification, or any other form of relief it considers appropriate to ensure that the district court adheres to the relief this Court ordered and does not second-guess defendants' determinations regarding how many employees are necessary to carry out the Bureau's statutory duties or impose additional procedural obligations on defendants in making those determinations.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
MELISSA N. PATTERSON
/s/ Catherine Padhi
CATHERINE PADHI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7712*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-5091*
  *catherine.m.padhi@usdoj.gov*

APRIL 2025

13

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2465 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Book Antiqua 14-point font, a proportionally spaced typeface.

                                                             */s/ Catherine Padhi*
                                                             Catherine Padhi

# CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

        */s/ Catherine Padhi*
        Catherine Padhi