# In the United States Court of Appeals for the District of Columbia Circuit

_____

NATIONAL TREASURY EMPLOYEES UNION, et al.,
*Plaintiffs-Appellees,*

v.

RUSSELL VOUGHT, in his official capacity as Acting Director of the Consumer Financial Protection Bureau, et al.,
*Defendants-Appellants.*
_____

On Appeal from the United States District Court
for the District of Columbia
Case No. 25-cv-0381-ABJ (The Hon. Amy Berman Jackson)

## PLAINTIFFS-APPELLEES' OPPOSITION TO MOTION TO ENFORCE OR CLARIFY STAY PENDING APPEAL

JENNIFER D. BENNETT
GUPTA WESSLER LLP
505 Montgomery Street
San Francisco, CA 94111
(415) 573-0336

JULIE WILSON
*General Counsel*
PARAS N. SHAH
*Deputy General Counsel*
ALLISON C. GILES
*Assistant Counsel*
NATIONAL TREASURY EMPLOYEES
UNION
800 K Street, NW, Suite 1000
Washington, DC 20001
(202) 572-5500

DEEPAK GUPTA
ROBERT FRIEDMAN
GABRIEL CHESS
GUPTA WESSLER LLP
2001 K Street, NW
Suite 850 North
Washington, DC 20006
(202) 888-1741
deepak@guptawessler.com

WENDY LIU
ADINA H. ROSENBAUM
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

April 22, 2025                    *Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

Introduction ........................................................................................ 1

Statement ......................................................................................... 3

Argument .......................................................................................... 8

    I.    The district court is the proper forum for adjudicating
compliance with the injunction in the first instance, and
the government has not sought mandamus, let alone tried
to meet its demanding standard. .......................................................... 8

    II.   The defendants forfeited any objection to the TRO. ......................... 13

    III.  The district court properly issued a TRO to preserve
the status quo before resolving whether the defendants
violated the partially stayed preliminary injunction. ........................... 14

Conclusion .......................................................................................20

# INTRODUCTION

Just days ago, the defendants took another shot at doing what the district court had stopped them from doing only a few weeks ago: shuttering the CFPB. They sent RIF notices to almost 90% of the agency's workforce, and placed those employees on administrative leave, effective the following day. Almost immediately, evidence began to emerge that the defendants had not performed the "particularized assessment" that the preliminary injunction, as partially stayed by this Court, requires. In addition, if the defendants' plan went forward, CFPB data would likely be irreparably lost and the Consumer Response Division unable to function.

Faced with evidence that the defendants likely violated its preliminary injunction, the district court did what any court would (and should) do: It scheduled a hearing to get to the bottom of it. And to preserve the status quo while the court conducted the necessary factfinding, it entered a temporary order pausing the RIFs and the administrative leave. The defendants did not object to this order.

Nevertheless, they have filed an emergency motion asking this Court to vacate it. The defendants do not cite a single case involving an emergency "motion to enforce or clarify" a stay—much less granting one. That's unsurprising: That's not the proper vehicle for asking an appellate court to overturn a district court order.

The proper vehicle to overturn a district court order is to either appeal it or seek mandamus. The defendants have appealed the district court's order, but they

haven't filed anything in that appeal. And they haven't filed a petition for mandamus at all.

Presumably, that's because they can't meet the standard: To warrant the "extraordinary" remedy of mandamus, the defendants bear the burden of showing a "clear and indisputable" right to relief. *Illinois v. Ferriero*, 60 F.4th 704, 714 (D.C. Cir. 2023). They cannot come close to doing so. District courts have the power to enforce their own injunctions. Indeed, that's how injunctions are *supposed* to be enforced. And district courts have the power to issue temporary orders preserving the status quo while they determine whether an injunction was violated. That, too, is exactly what a district court is supposed to do.

The defendants complain that the district court is attempting to second guess their determination, after a particularized assessment, that the agency could lose 90% of its workforce immediately and still perform its statutory functions. That is not what the district court is doing: The district court is determining whether they conducted a particularized assessment *at all*. It is also determining whether, if allowed to proceed, the RIF and administrative leave would violate the prohibition on data deletion and the requirement that Consumer Response collect, monitor, and respond to complaints—provisions the defendants don't even mention. In other words, the district court is attempting to determine whether the defendants violated

the *unstayed* portion of its injunction. Doing so—and temporarily preserving the status quo in the interim—is exactly what the court is supposed to do in this situation.

Ultimately, the defendants vacillate between asking the court to do one of two things: (1) circumvent the district court's factfinding, and adjudicate their compliance with the injunction in the first instance; or (2) render the preliminary injunction meaningless by "clarifying" that the requirement to perform a "particularized assessment" before firing most of the agency is nothing more than a requirement that the defendants *say* they have conducted an assessment. This Court should do neither.

## STATEMENT

**1.** After reviewing hundreds of documents and conducting a two-day evidentiary hearing, the district court found that the defendants had attempted to shut down the CFPB—something only Congress can do. They almost succeeded: Within days of Acting Director Vought taking over the agency, the defendants had put virtually the entire workforce on administrative leave, canceled the majority of its contracts, and were within hours of firing most of its employees when the plaintiffs filed a TRO motion. The defendants' own witness testified that if that happened, it would have caused irreparable harm. To ensure that the defendants couldn't irreparably shutter the agency while this case is pending, the district court entered a preliminary injunction. Dkt. 87.

On Friday, April 11, this Court granted in part and denied in part the defendants' motion to stay that injunction. Among other things, still in place are: the prohibition on RIFs except that RIF notices may be issued to employees the "defendants have determined, after a particularized assessment, to be unnecessary to the performance of defendants' statutory duties"; the prohibition on work stoppages except those that "defendants have determined, after a particularized assessment, would not interfere with the performance of defendants' statutory duties"; the prohibition on data deletion; and the requirement that the defendants maintain the consumer response system and monitor and respond to complaints. Stay Order at 1-2; Dkt. 87.

**2.** Just days after this Court's order, the defendants issued RIF notices to more than 1,400 CFPB employees—nearly 90% of the Bureau's staff. Dkt. 106-2 at 10. Those notices also put those employees on administrative leave—cutting them off from CFPB systems, including their email—starting the following day. *Id.*

Almost immediately, the plaintiffs began receiving evidence that no "particularized assessment" had been done before doing so. Although the defendants had previously told the district court that agency leadership is dependent on team managers to identify what and who was necessary to perform statutorily required work, employees began to report that they had not consulted any programmatic managers before implementing the RIF. *Compare* 3/11 Tr. (Dkt. 74) 117, *with* Dkt. 106-

2 at 2 ("No leader in Consumer Response was consulted."); Dkt. 110 at 1 (head of the Office of Research testifies that "[no]one consulted" him "or any seniors leaders in the Office of Research").

Even more concerning, during the RIF process, members of the RIF team had raised concerns with CFPB leadership about the "court order requiring … a particularized assessment," and "they were told that all that mattered was the numbers." Dkt. 111 at 2. "The direction to ignore the concern," they said, "came from Mark Paoletta, who said that the numbers-based RIF should move forward, and that leadership would assume the risk." *Id.*

Evidence also quickly began to emerge that the RIFs, and accompanying immediate administrative leave, would threaten the CFPB's ability to preserve its data. *See* Dkt. 106-1 at 2. And within short order, they would render Consumer Response unable to function. *See* Dkt. 106-2.

**3.** Because the evidence suggested that the RIF and the impending administrative leave of almost the entire workforce violated the preliminary injunction, as stayed by this Court, the plaintiffs filed an emergency motion for an order to show cause why the defendants had not violated the injunction. Dkt. 105.

At a hearing the following day, the district court—on the plaintiffs' motion— converted the motion to show cause into a motion to enforce the preliminary injunction. *See* 4/18 Tr. (Dkt. 112) at 18. But the court concluded that it did not have

enough information to resolve the motion. Dkt. 113 at 5. Chief Legal Officer Mark Paoletta had filed a declaration asserting that the defendants had conducted a particularized assessment. Dkts. 108. But the plaintiffs—in very little time—had filed declarations suggesting that no such assessment had occurred. *See* Dkt. 113 at 4-5 (summarizing evidence).

Because there was a factual dispute about whether the defendants were complying with the injunction, the district court deemed it "necessary to conduct an evidentiary hearing" before ruling on the plaintiffs' motion. Dkt. 113 at 5. The district court explained, however, that, based on the evidence before it, it was "deeply concerned" that the defendants were not "in compliance with the preliminary injunction." 4/18 Tr. 13. And the court advised the defendants that it planned to issue a temporary order preserving the status quo—pausing the implementation of the RIFs and the administrative leave—until it could "get[] to the bottom of the facts." *Id.* at 15. "The defense voiced no objection." Dkt. 113 at 5. The court then issued that TRO as an "oral order," while promising to issue a written order later in the day. 4/18 Tr. 19. The court set the evidentiary hearing for April 28. *See id.* It offered to hold the hearing even sooner, on April 23, but the defendants "request[ed] the 28th." *Id.*

A few hours later, the district court issued a seven-page order memorializing its oral order and explaining its reasoning. *See* Dkt. 113. The court issued a temporary restraining under Rule 65(b) because the court was "faced with what appears to be a

violation of a preliminary injunction that has already been reviewed and refined by the Court of Appeals and that remains in force." *Id.* at 7. Absent a TRO, the court explained, "there will be no agency standing by the time it gets to consider the merits," and failure to issue the temporary order would cause "irreparable injury." *Id.* at 6. The order temporarily "suspended" the April 17 reduction in force and enjoined the defendants from "implement[ing], effectuat[ing], or complet[ing]" it, and "prohibited" the defendants "from discontinuing any employee's access to work systems, including email and internal platforms." *Id.* at 7.

Soon after, on the plaintiffs' motion, the court clarified that its order was a TRO and would "remain in place for no more than 14 days, unless before that time the court, for good cause, extends it." 4/19 Minute Order (citing Fed. R. Civ. P. 65(b)(2)). The court also clarified that the prohibition on "discontinuing an employee's access to work systems" only prohibited taking that action "as part of the enjoined RIF." *Id.*

**4.** Just before midnight on April 18, the defendants filed a notice of appeal in the district court. *See* Dkt. 115. Then, they filed an "emergency motion to enforce or clarify stay" in the already-pending appeal in this Court. And the next morning, they docketed an appeal in this Court of the district court's April 18 temporary restraining order. *See* No. 25-5132. This Court consolidated that appeal with the already pending appeal of the preliminary injunction. To date, the defendants have not filed a motion

for a stay, or any brief, in the appeal they docketed at No. 25-5132. Nor have they moved to stay the temporary restraining order in the district court (or in this Court). The only motion before this Court—filed in the defendants' initial appeal of the preliminary injunction motion—is the "motion to enforce or clarify stay pending appeal" docketed in the earlier filed case.

## ARGUMENT

### I. The district court is the proper forum for adjudicating compliance with the injunction in the first instance, and the government has not sought mandamus, let alone tried to meet its demanding standard.

The defendants styled their motion as a "motion to enforce or clarify stay pending appeal." Their motion, though, makes it hard to know what exactly they want the Court to enforce. At times, it seems that the defendants are asking this Court to take over the district court's enforcement proceedings and adjudicate the defendants' compliance itself. Other times, they seem to be asking the Court to enforce its stay order against the district court. Both requests run aground on insurmountable obstacles. The first request isn't one that is properly made in this Court—the district court must enforce the injunction. The second is essentially a request for mandamus, but the defendants haven't actually made that request—and they can't meet the high bar for that extraordinary writ anyway.

**1.** The defendants spend much of their motion trying to convince this Court that before terminating most of the agency days after this Court's stay order, they

performed a particularized assessment. Insofar as the defendants are asking this Court to adjudicate their compliance with the injunction in the first instance, they have come to the wrong forum. "[T]he longstanding equitable principle that" "govern[s] how courts enforce injunctions" is that "'the offended judge [is] *solely responsible* for identifying, prosecuting, adjudicating, and sanctioning" violations of their injunction. *Bruce v. Citigroup Inc.*, 75 F.4th 297, 303 (2d Cir. 2023) (quoting *United Mine Workers v. Bagwell*, 512 U.S. 821, 831 (1994), and collecting cases). A court that did not issue the injunction with which compliance is at issue does not have jurisdiction to adjudicate a motion to enforce. *See Bruce*, 75 F.4th at 302 n.5; *E.O.H.C. v. Sec'y U. S. Dep't of Homeland Sec.*, 950 F.3d 177, 194 (3d Cir. 2020) (Bibas, J.) ("[E]ach court has the inherent power to enforce its own orders, but generally lacks the power to enforce orders of other courts.").

That an appeal from the preliminary injunction is pending does not divest the district court of it its jurisdiction to enforce the order, as partially stayed, in the interim, either. *See, e.g.*, *Hawaii v. Trump*, 863 F.3d 1102, 1104 (9th Cir. 2017) (district court has authority "to interpret and enforce" an injunction as it was stayed in part by the Supreme Court). The usual rule is that a district court retains jurisdiction to enforce its injunction "while an interlocutory appeal is pending." 16 Wright & Miller, Federal Practice & Procedure § 3921.2 (3d ed. 2025). It also retains the power to act "to preserve the status quo" while the interlocutory appeal is pending. *Id.*

That's precisely what the district court did here. *See* Dkt. 113 at 5. When the district court scheduled an evidentiary hearing—and took steps to ensure that it would have the relevant facts before it at that hearing—it was ensuring it had the record necessary to enforce its injunction (or determine such enforcement was unnecessary). And when the court issued a temporary order pausing the defendants' actions, it acted "to preserve the status quo," *id.*, in the short period of time needed to adjudicate the defendants' compliance.

**2.** Insofar as the defendants are asking this Court to enforce its stay, that request is essentially a request for mandamus—a petition the defendants have not even filed. That reflects the nature of a stay. Unlike an injunction—which "direct[s] the conduct of a particular actor"—"a stay operates upon the judicial proceeding itself." *Nken v. Holder*, 556 U.S. 418, 428 (2009). It "does so either by halting or postponing some portion of the proceeding, or by temporarily divesting an order of enforceability." *Id.* This Court's stay order did the latter of those two things— "temporarily suspending" the district court's "authority to act" on the portions of the injunction that were stayed. *Id.* at 428-29. The gravamen of the defendants' motion is that the district court has exceeded its "authority" in light of this Court's stay order. *See, e.g.*, Mot. at 7, 9. That complaint sounds in the heartland of mandamus. *See Will*, 389 U.S. at 95-96 ("The peremptory writ of mandamus has traditionally been used

in the federal courts only to confine an inferior court to a lawful exercise of its prescribed jurisdiction" and to prevent "a judicial usurpation of power.").

Further confirming that the defendants' request is one that must be brought via mandamus, the sole authority on which they rely for their motion (at 10 n.1)—*Yablonski v. United Mine Workers*, 454 F.2d 1036 (D.C. Cir. 1971)—involved mandamus. *See id.* at 1038-39 ("mandamus lies to rectify a deviation" by a trial court from "the letter or spirit of the [appellate court's] mandate"). But as this Court stressed in that same decision, mandamus is an "extraordinary remed[y] … reserved for really extraordinary causes." *Id.* And to warrant the "extraordinary" remedy of mandamus, the defendants bear the burden of showing a "clear and indisputable" right to relief. *Illinois v. Ferriero*, 60 F.4th 704, 714 (D.C. Cir. 2023).[1]

They can't meet that bar here, which might be why they have avoided any mention of mandamus and have not attempted to explain how they satisfy its demanding requirements. The district court isn't "usurp[ing]" this Court's power or "deviat[ing]" from "the letter or spirit" of this Court's stay order. *Yablonksi*, 454 F.2d at 1038-39. The district court—both at the hearing and in its temporary restraining order—repeatedly acknowledged and quoted from this Court's order and stressed

---

[1] The defendants also cite (at 10 n.1), without a pincite, *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). *Chambers* is inapposite. It addresses a district court's inherent power to sanction attorneys for "bad-faith conduct." *Id.* at 46-47. It does not have anything to say about the proper vehicle, or venue, for filing a motion to enforce a partially stayed preliminary injunction.

that its task was to determine whether the defendants have violated the preliminary injunction "as it was refined by the Court of Appeals." Dkt. 113 at 5; *see also id.* at 3 (quoting this Court's order in full); 4/18 Tr. 5 (reciting this Court's order at the hearing). As the district court properly recognized, the question for purposes of the RIF and work stoppage provisions of the partially stayed order is whether the defendants *actually made* a "particularized assessment," not whether any conclusions they drew from that assessment were the right ones. *Id.* at 6-7, 13-14 (focusing on the "particularized assessment" as required by the partially stayed order).

And the defendants haven't even bothered to argue that the district court's temporary order and scheduled evidentiary hearing run afoul of this Court's decision *not* to stay the provisions of the injunction covering data and the Consumer Response division. Those provisions, this Court instructed, were to "remain in full effect." Stay Order 2. The district court is properly engaged in the task of determining whether the defendants are complying with them.

This Court does, of course, have the authority to clarify its order. *See, e.g.*, *Old Dominion Elec. Coop. v. FERC*, 905 F.3d 671 (D.C. Cir. 2018) (denying motion for clarification). But the defendants are not truly seeking clarification—they are asking this Court to adjudicate a factual dispute about whether they have complied with the preliminary injunction *as it is written*. And this Court should not allow the defendants to do an end run around mandamus by captioning their request as a motion to

clarify. To countenance that move would create an exception to the exacting mandamus standard by which a party complaining that a district court has strayed from this Court's mandate need only ask this Court to "clarify" the mandate. *Contra Yablonski*, 454 F.2d at 1038-39 (applying mandamus standard where petitioner seeks to "exact compliance with the mandate").

**3.** Falling back, the defendants point out in a footnote (at 10 n.1) that they also "filed a notice of appeal" from the temporary restraining order. They did docket that appeal. *See* No. 25-5132. But they have not filed anything in that appeal. That choice makes sense, given that this Court's jurisdiction over the district court's order is dubious. *See Adams v. Vance*, 570 F.2d 950, 953 (D.C. Cir. 1978) ("The grant of a temporary restraining order under Rule 65(b) … is generally not appealable."). But absent any request for this Court to *do* anything in that appeal, it's difficult to see what relevance it has.

## II. The defendants forfeited any objection to the TRO.

There is another problem with the defendants' emergency request: they forfeited any objection to the entry of the TRO. At the hearing, the district court explained that it intended to issue a temporary order to preserve the status quo pending resolution of the factual dispute about the defendants' compliance with the injunction. *See* 4/18 Tr. 15. "The defense voiced no objection to" the district court's entry of that temporary order pending resolution of the plaintiffs' motion to enforce.

Dkt. 113 at 5; *see also* 4/19 Minute Order (noting that the "defendants raised no objection at the hearing" to the entry of the order).

"To preserve a claim of error on appeal, a party typically must raise the issue before the trial court." *Salazar ex rel. Salazar v. District of Columbia*, 602 F.3d 431, 436-37 (D.C. Cir. 2010). That fundamental "procedural principle," *id.*, applies with no less force in the context of "emergency" proceedings for a TRO, *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 322-23 (D.C. Cir. 2018). The defendants failed entirely to preserve any objection to the TRO—the order which they now decry (at 2) as "egregious." Their challenge to the TRO is therefore forfeited. *See Keepseagle v. Vilsack*, 815 F.3d 28, 36 (D.C. Cir. 2016).

## III.  The district court properly issued a TRO to preserve the status quo before resolving whether the defendants violated the partially stayed preliminary injunction.

Even setting aside the many threshold problems with the defendants' motion, this Court should deny it. The motion rests on two faulty premises. The first is that the district court misapprehends, and is therefore misapplying, the injunction as it was partially stayed. The second is that the only provisions of the injunction at issue are those that were partially stayed, when in fact the defendants' compliance with provisions that were entirely unaffected by this Court's order is also in question.

**1.** The defendants proceed (at, for instance, 7) as if the district court believes it can determine for itself whether the employees that were included in the RIF are

"[]necessary to the performance of defendants' statutory duties."[2] That's not right. The district court recognized that what the injunction—as partially stayed by this Court—requires is that before "terminating or issuing a notice of reduction in force" the "defendants have determined, *after a particularized assessment*," the affected employees "to be unnecessary to the performance of defendants' statutory duties." Stay Order 1 (emphasis added).

What the district court properly identified is a factual dispute about whether there was any such "particularized assessment." The district court acknowledged that the defendants filed a declaration from Mark Paoletta in which he claimed that the Bureau made that assessment. *See* Dkt. 113 at 4. The plaintiffs, though, filed declarations that "paint[ed] a dramatically different picture" and suggested no particularized assessment took place. *Id.* In the short period of time before the hearing, witnesses came forward and testified that the defendants did not consult with the heads of statutorily required divisions and offices before conducting RIFs. *See id.* Members of the team that implemented the RIFs said that, after that team

---

[2] This misunderstanding relates to the defendants' compliance with provisions three and four of the injunction. As partially stayed by this Court, both of those provisions require the defendants to make a "particularized assessment" about the effect of their actions on the performance of "statutory duties" prior to taking certain actions (RIFs or work stoppages). Stay Order 1-2. The district court was properly concerned that the defendants took actions that violated both of those provisions, by implementing RIFs and by immediately disconnecting employees from CFPB work systems.

raised concerns about compliance with this Court's stay order, Paoletta responded "that [a] numbers-based RIF should move forward, and that leadership would assume the risk." *Id.* at 5. The plaintiffs also proffered an internal Bureau email from three days before the RIFs saying that "CFPB does not have a policy or decision from senior leadership regarding" a "Reduction in Force [] plan." Dkt. 106-1 Ex. A.

The district court had still further doubts about Paoletta's declaration, noting that it "includes no dates," does not describe when the particularized assessment "was done," "doesn't include the names of the people involved," and doesn't explain "how or when the RIF orders came to be justified on April 16 or April 17." 4/18 Tr. 7. What's more, the district court had previously concluded that the government's first witness in this case (Adam Martinez) gave misleading testimony based "on what Mark Paoletta" told him. Dkt. 87 at 93.

Given these dueling accounts, and the district court's previous findings about the veracity of the defendants' representations, *see* Dkt. 87 at 65-66, the court explained that it needed to resolve the factual dispute before ruling on the motion to enforce. But the factual dispute that the district court is going to resolve is *not* whether the defendants drew the right conclusions from a particularized assessment, it is whether *there was* a particularized assessment at all. *See* 4/18 Tr. 14-15.

In asking this Court to step in and short-circuit that fact finding process, the defendants are asking the Court to make one of two mistakes. Perhaps they are asking

the Court to sit as the finder of fact and hold an evidentiary hearing to "get to the the bottom" of what happened. 4/18 Tr. 14-15. But "[f]actfinding is the basic responsibility of district courts, rather than appellate courts, and … the Court of Appeals should not … resolve in the first instance a factual dispute which ha[s] not been considered by the District Court." *In re Sealed Case*, 552 F.3d 841, 845 (D.C. Cir. 2009) (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 291-92 (1982)).

Alternatively, they could be asking this Court to render the injunction judicially unenforceable. On the defendants' view, filing a declaration that says they complied with the injunction is the end of the story. Apparently, no court can examine whether they have, in fact, complied with the order. That renders meaningless the words "particularized assessment," which is "an active verb[al]" phrase and "requires that steps be taken." *Abrego Garcia v. Noem*, 2025 WL 1135112, at *1 (4th Cir. 2025) (Wilkinson, J.) (discussing an injunction that requires the government to "facilitate"). "The plain and active meaning of [those] word[s] cannot be diluted" by the defendants' attempt to render them unenforceable. *Id.*

And as a general proposition, that's not how injunctions work. "When a court employs the extraordinary remedy of an injunction … it directs the conduct of a party, and does so with the backing of its full coercive powers." *Nken*, 556 U.S. at 428. "[F]ederal courts are not reduced to issuing injunctions against state officers and hoping for compliance." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 440 (2004). "Once

issued, an injunction may be enforced." *Id.* There is nothing anomalous about holding an evidentiary hearing as part of that enforcement process. *See, e.g., id.* at 435-36 (describing the "evidentiary hearing" held by district court before it concluded a "consent decree had been violated"). Nor is there anything anomalous about requiring the government's declarant to testify at that hearing. *See, e.g., In re Cheney*, 544 F.3d 311, 313-14 (D.C. Cir. 2008) (allowing plaintiffs to depose Vice President's Deputy Chief of Staff who submitted a sworn declaration to allow "follow-up questioning on facts [the defendant] has itself put in evidence").

**2.** The defendants also ignore entirely that the evidentiary hearing is not limited to resolving whether they violated the provisions of the injunction governing RIFs and work stoppages. The injunction also requires the defendants to "ensure that in accordance with 12 U.S.C. § 5492(b)(3), the CFPB Office of Consumer Response continues to maintain a single, toll-free telephone number, a website, and a database for the centralized collection of consumers complaints," and that the defendants "continue[] to monitor and respond to those complaints, including by providing Elevated Case Management." Dkt. 88 at 2-3 (provision 6). This Court's stay order left that provision in place as written by the district court.

The defendants, though, issued RIF notices to 112 of the 128 employees that work in Consumer Response. Dkt. 109 at 2 (Paoletta declaration). And the defendants would have halted the work of those 112 employees completely at 6:00 pm on April

28 were it not for the district court's issuance of the temporary restraining order. Even if the defendants made a "particularized assessment" before taking these actions, there remains the question of whether the CFPB *can* fulfill the Consumer Response obligations imposed by the injunction. *See* 4/18 Tr. 13-14. As the Chief of Staff of the Office of Consumer Response explained, "the Office" would have been "incapable of performing its statutory obligations shortly after CFPB employees los[t] access to systems on April 18 at 6 PM." Dkt. 106-2 at 2. Among other things, the employees that oversee the consumer call center were fired, as were those "responsible for directing complaints to companies—tens of thousands of complaints every month," along with the "staff responsible for maintaining" the consumer complaint database—to which "more than 2.7 million complaints" were added in 2024 alone. *Id.* at 2-3. And the supervisor of the escalated case management team, whose work the injunction *specifically* requires the defendants to continue, testified that he and at least six of his seven direct reports were included in the RIFs. *See* Dkt. 106-3 at 1.

The defendants also ignore that their actions may have violated the first provision in the injunction, which addresses data preservation and was also left in place by this Court's stay order. *See* Stay Order (no mention of provision 1). That provision requires the defendants to "maintain" and "not delete, destroy, remove, or impair any data or other CFPB records." Dkt. 88 at 2. The defendants included in

the RIFs most of the employees working in the Operations Division, though. Dkt. 109 at 3-4. Beyond a conclusory assertion that "these personnel levels [are] sufficient for the preservation of data," *id.* at 4, the defendants have offered little reason to believe that data will not be impaired by the mass terminations. That assertion is dubious, given that the defendants fired (and therefore immediately stopped the work of) "the team that oversees [] contractors managing the CFPB's network, including the system in which CFPB data is stored." Dkt. 106-1 at 1. And more evidence has since come to light that their actions threatened to cause irreparable data loss—evidence the district court will consider at the evidentiary hearing.

In training all of their fire on the "particularized assessment" language from this Court's partial stay order, the defendants completely ignore these two provisions, both of which their actions may well have violated, and neither of which say anything about a "particularized assessment." Asking this Court to adjudicate, in the first instance, the defendants' compliance with these provisions of the injunction is particularly bizarre, given that this Court's stay order left them entirely untouched.

## CONCLUSION

This Court should deny the defendants' motion.

Respectfully submitted,

*/s/ Deepak Gupta*
DEEPAK GUPTA
ROBERT FRIEDMAN
GABRIEL CHESS

Gupta Wessler LLP
2001 K Street, NW
Suite 850 North
Washington, DC 20006
(202) 888-1741
*deepak@guptawessler.com*

Jennifer D. Bennett
Gupta Wessler LLP
505 Montgomery Street
San Francisco, CA 94111
(415) 573-0336
*jennifer@guptawessler.com*

Wendy Liu
Adina H. Rosenbaum
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

Julie Wilson
*General Counsel*
Paras N. Shah
*Deputy General Counsel*
Allison C. Giles
*Assistant Counsel*
National Treasury Employees
Union
800 K Street, NW, Suite 1000
Washington, DC 20001
(202) 572-5500

April 22, 2025                    *Counsel for Plaintiffs-Appellees*

**CERTIFICATE OF COMPLIANCE WITH RULE 32(g)(1)**

I hereby certify that my word processing program, Microsoft Word, counted 5,011 words in the foregoing brief, exclusive of the portions excluded by Rule 32(f). The document also complies with the typeface requirements of Fed. R. App. P. 32(a)(6) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in proportionally spaced typeface in 14-point Baskerville font.

April 22, 2025
                                                    _/s/ Deepak Gupta_
                                                    Deepak Gupta

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Deepak Gupta*
Deepak Gupta