# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 25-5091**                               **September Term, 2024**

1:25-cv-00381-ABJ

**Filed On:** April 28, 2025

National Treasury Employees Union, et al.,

    Appellees

  v.

Russell T. Vought, in his official capacity as Acting Director of the Consumer Financial Protection Bureau and Consumer Financial Protection Bureau,

    Appellants

------------------------------

Consolidated with 25-5132

    **BEFORE:** Pillard, Katsas, and Rao*, Circuit Judges

# O R D E R

Upon consideration of the emergency motion to enforce or clarify the court's April 11, 2025 order, the response thereto, and the reply, it is

**ORDERED** that the emergency motion be granted in part. Defendants seek clarification of what constitutes a "particularized assessment" that employees subject to a proposed reduction in force (RIF) are unnecessary to the performance of defendants' statutory duties, as that term is used in this court's April 11, 2025 order partially granting defendants' motion for a stay pending appeal. That term was not clearly defined in our stay order, so we define it now. Such a "particularized assessment" involves a determination, conducted by the decisionmaker responsible for the RIF, that each division or office within the Consumer Financial Protection Bureau will be able to perform any statutorily required duties of that division or office without the employees subject to the RIF. The declaration filed by the CFPB's Chief Legal Officer on April 18, 2025 states that the defendants conducted the requisite "particularized assessment." It is

---

\* A statement by Circuit Judge Rao, dissenting from this order, is attached.

**FURTHER ORDERED**, *sua sponte*, that this court's stay order be modified in part to lift the partial stay of paragraph (3) of the preliminary injunction. Our partial stay order permitted defendants to conduct RIFs of employees "whom defendants have determined, after a particularized assessment, to be unnecessary to the performance of defendants' statutory duties." The parties vigorously dispute whether this language permits judicial review of the questions whether the assessment at issue was "particularized" and whether the employees subject to the RIF are "unnecessary to the performance of defendants' statutory duties." Defendants further argue that any such judicial review would make the injunction impermissibly vague. In response, plaintiffs highlight that the proposed RIF currently at issue, involving nearly 90 percent of agency employees, exceeds the scope of the RIF that prompted the district court's original preliminary injunction. Given these ongoing disputes, we think it best to restore the interim protection of paragraph (3) of the preliminary injunction, which ensures that plaintiffs can receive meaningful final relief should the defendants not prevail in this appeal, rather than continue collateral litigation over the meaning and reviewability of the "particularized assessment" requirement imposed by this court's stay order. Reinforcing this conclusion, we have already accommodated the government's interests by substantially expediting the appeal, with oral argument scheduled less than three weeks from today. At that time, we will carefully consider the separation-of-powers and other arguments raised by the parties. For these reasons, paragraph (3) of the preliminary injunction under review is now effective pending further order of this court.

**<u>Per Curiam</u>**

                                                              **FOR THE COURT:**
                                                              Clifton B. Cislak, Clerk

                                      BY:    /s/
                                                               Michael C. McGrail
                                                               Deputy Clerk

RAO, *Circuit Judge*, dissenting: The panel today bars the political leadership of the Consumer Financial Protection Bureau (CFPB) from reducing its workforce in accordance with President Trump's directives. Because the preliminary injunction entered by the district court raises serious separation of powers concerns and has paved the way for ongoing judicial supervision of an Executive Branch agency, I would continue the stay pending appeal.

* * *

At the end of March, the district court entered a preliminary injunction prohibiting the CFPB from carrying out any reductions in force (RIFs), effectively freezing the staffing of the CFPB as it existed under the previous administration. The government sought a stay of the injunction pending appeal, which we granted in substantial part on April 11. The stay permitted RIFs consistent with the CFPB's statutory obligations. We also expedited consideration of the merits of the preliminary injunction and scheduled oral argument for May 16.

The enjoined parties include the Acting Director and other political leadership of the CFPB, appointed by the President to implement his agenda. With the preliminary injunction largely stayed, the CFPB's leadership issued RIF notices to more than 80 percent of the agency's workforce. In a statement filed below, the agency's Chief Legal Officer detailed the particularized assessment underlying the RIF and attested that the "employees retained were sufficient to perform the Bureau's statutory duties." Declaration of Mark Paoletta, *NTEU v. CFPB*, 25-cv-381, ECF 109, at 4 (D.D.C. Apr. 18, 2025). He further clarified that the employees subject to the RIF would remain employed for sixty days, and that the agency's leadership would "continuously assess the Bureau's workforce needs" and "make appropriate changes to ensure compliance with statutory duties." *Id.*

Rather than wait to see if any harm materialized, the plaintiffs returned to the district court on the same day the RIF notices were issued, demanding immediate judicial intervention because it was "unfathomable" that the CFPB could continue to provide statutorily required services if the RIF were executed. But the plaintiffs did not allege they had suffered any specific harm or loss of service from the RIF. Nor could they, since the employees subject to the RIF had not yet stopped working, much less been terminated.

Without any finding of particularized harm, the district court halted the RIF. Although the district court styled its action as a temporary restraining order, "the label attached ... by the trial court is not decisive." *Adams v. Vance*, 570 F.2d 950, 953 (D.C. Cir. 1978) (cleaned up); *see also Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025). I would construe the district court's order prohibiting the RIF as a modification of its preliminary injunction. *See Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 944 F.3d 945, 948 (D.C. Cir. 2019) ("An order modifies an earlier injunction when it actually changes the legal relationship of the parties to the decree.") (cleaned up). As such, the order is immediately appealable. 28 U.S.C. § 1292(a)(1). If the district court abused its discretion in modifying the injunction, vacatur is the appropriate remedy. *Klayman v. Porter*, 104 F.4th 298, 305 (D.C. Cir. 2024).

* * *

In my view, the district court's modification of the injunction is inconsistent with the terms of this court's April 11 stay and therefore an abuse of discretion.

The April 11 stay did not create a preclearance regime whereby the CFPB must obtain judicial approval for its management decisions. Unfortunately, that is precisely what is

unfolding below, as the district court has blocked a RIF while it determines, by its own lights, whether the CFPB's staffing plans will be sufficient to fulfill general statutory requirements. *See NTEU v. CFPB*, 25-cv-381, ECF 113, at 5–6 (D.D.C. Apr. 18, 2025) (enjoining RIF and scheduling evidentiary hearing to determine whether planned staffing levels will leave agency "unable to comply with its statutory duties"); *id.*, Minute Order (D.D.C. Apr. 21, 2025) (requiring Chief Legal Officer to appear at hearing and be available to testify about his particularized assessment).

The district court's approach turns the separation of powers on its head. The execution of the laws, including the management of administrative agencies, is committed to Executive Branch officials under the direction of the President. *See* U.S. CONST. art. II, § 3 (requiring the President to "take Care that the Laws be faithfully executed"). When agency action is challenged, courts have an essential obligation to say what the law is. But whatever the merits of this underlying lawsuit, the district court cannot erase the boundaries between the courts and the Executive by setting up a temporary judicial receivership of the CFPB. As the Supreme Court has admonished, "it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also* Dan Dobbs, Law of Remedies § 2.9(5) (2d ed. 1993) ("[J]udicial control of legislative or executive branch decisions interferes substantially with the separation of powers system of government. If the judicial interference is substantial, judges themselves may lose their distinctive judicial character if they become managers of executive departments by way of injunction.").

While the April 11 stay left some parts of the preliminary injunction in place based on the government's concessions, it in no way authorized the district court to "inject[] [itself] into day-to-day agency management" or to superintend the personnel decisions of the CFPB's political leadership. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 67 (2004). I would vacate the district court's modification.

To the extent the stay was unclear, I would clarify that if the defendants' actions cause a plaintiff to lose services required by statute, the district court may issue appropriate relief, targeted to that plaintiff's specific injury, under Federal Rule of Civil Procedure 62(d). *See Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) (explaining that "any action taken pursuant to Rule 62[(d)] may not materially alter the status of the case on appeal") (cleaned up); *Casey*, 518 U.S. at 357 ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."). In the alternative, if a partial stay is truly "unworkable," I would put an end to these cat-and-mouse games and stay the preliminary injunction entirely. *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 585 (2017) (Thomas, J., concurring in part).

* * *

The district court overstepped our stay. Rather than remedy the judicial error, today's order hamstrings the Executive and prevents the CFPB from downsizing until the merits of the appeal are resolved. The lack of judicially manageable standards in this posture is a reason to leave execution of the laws to the Executive, not the courts. I respectfully dissent.