[ORAL ARGUMENT HELD MAY 16, 2025]
No. 25-5091

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

NATIONAL TREASURY EMPLOYEES UNION, *et al.*,

*Plaintiffs-Appellees*,

v.

RUSSELL T. VOUGHT, in his official capacity as Acting Director of the
Consumer Financial Protection Bureau, *et al.*,

*Defendants-Appellants*.

*On Appeal from the United States District Court
for the District of Columbia*

**BRIEF OF CONSTITUTIONAL ACCOUNTABILITY CENTER
AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLEES'
PETITION FOR REHEARING *EN BANC***

Elizabeth B. Wydra
Brianne J. Gorod
Brian R. Frazelle
Miriam Becker-Cohen
Joshua D. Blecher-Cohen
CONSTITUTIONAL
  ACCOUNTABILITY CENTER
1730 Rhode Island Ave. NW
Suite 1200
Washington, D.C. 20036
(202) 296-6889
brianne@theusconstitution.org

*Counsel for Amicus Curiae*

**STATEMENT REGARDING CONSENT TO FILE
AND SEPARATE BRIEFING**

Pursuant to D.C. Circuit Rule 29(b), undersigned counsel for *amicus curiae* Constitutional Accountability Center (CAC) represents that counsel for all parties have consented to the filing of this brief.[1]

Pursuant to D.C. Circuit Rule 29(d), undersigned counsel for *amicus curiae* certifies that a separate brief is necessary. *Amicus* is a think tank and public interest law firm dedicated to fulfilling the progressive promise of the Constitution's text and history. CAC works in our courts, through our government, and with legal scholars to improve understanding of the Constitution and to protect the rights, freedoms, and structural safeguards that our nation's charter guarantees. CAC has filed *amicus* briefs in federal courts in multiple cases about the constitutional separation of powers, including before the panel in this case, and has accordingly developed expertise in the relevant constitutional text and history.

---

[1] No counsel for a party authored this brief in whole or in part, and no person other than *amicus curiae* or its counsel made a monetary contribution to its preparation or submission.

i

## CORPORATE DISCLOSURE STATEMENT

*Amicus curiae* Constitutional Accountability Center states that no party to this brief is a publicly held corporation, issues stock, or has a parent corporation.

## CERTIFICATE AS TO PARTIES, RULINGS,
## AND RELATED CASES

I.    PARTIES AND *AMICI*

Except for any *amici* who had not yet entered an appearance in this case as of the filing of the Petition for Rehearing *En Banc*, all parties, intervenors, and *amici* appearing in this Court are listed in the Petition for Rehearing *En Banc*.

II.    RULINGS UNDER REVIEW

Reference to the ruling under review appears in the Petition for Rehearing *En Banc*.

III.    RELATED CASES

Reference to any related cases pending before this Court appears in the Petition for Rehearing *En Banc*.

Dated:  September 30, 2025                         /s/ Brianne J. Gorod
                                                  Brianne J. Gorod

                                                  *Counsel for Amicus Curiae*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. v

GLOSSARY .................................................................................... viii

INTEREST OF *AMICUS CURIAE* ................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ................................ 1

ARGUMENT ..................................................................................... 3

I.     Unilateral Executive Abolition of Federal Agencies Violates the Constitution's Separation of Powers Because Congress Has Exclusive Authority to Create, Restructure, or Eliminate Federal Agencies ............................................................................. 3

II.    Plaintiffs' Separation-of-Powers Claim Is Judicially Reviewable Under *Dalton v. Specter* ...................................................... 5

CONCLUSION .................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

<u>CASES</u>

*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015).............................................................. 7

*Dakota Cent. Tel. Co. v. South Dakota ex rel. Payne*,
  250 U.S. 163 (1919).............................................................. 2, 7

*Dalton v. Specter*,
  511 U.S. 462 (1994)....................................................... 1, 2, 6-8, 10

*Dames & Moore v. Regan*,
  453 U.S. 654 (1981).............................................................. 8

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992).............................................................. 8, 9

*Free Ent. Fund v. PCAOB*,
  561 U.S. 477 (2010).............................................................. 3

*INS v. Chadha*,
  462 U.S. 919 (1983).............................................................. 3

*Mistretta v. United States*,
  488 U.S. 361 (1989).............................................................. 3

*Myers v. United States*,
  272 U.S. 52 (1926).............................................................. 3

*NFIB v. OSHA*,
  595 U.S. 109 (2022).............................................................. 3

*NLRB v. Noel Canning*,
  573 U.S. 513 (2014).............................................................. 5

*The Pocket Veto Case*,
  279 U.S. 655 (1929).............................................................. 5

## TABLE OF AUTHORITIES – cont'd

**Page(s)**

*United States v. Midwest Oil Co.*,
   236 U.S. 459 (1915) ............................................................... 4

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952) ........................................................ 2, 3, 7, 8, 10

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, § 1 ............................................................... 3

U.S. Const. art. I, § 7 ............................................................... 3

U.S. Const. art. II, § 2 .............................................................. 3

## STATUTES AND LEGISLATIVE MATERIALS

Act of Sept. 2, 1789, ch. 12, 1 Stat. 65 .................................. 3

Act of Sept. 15, 1789, ch. 14, 1 Stat. 68 ................................ 4

Act of July 4, 1836, ch. 352, 5 Stat. 107 ................................ 4

Act of Mar. 3, 1933, Pub. L. No. 72-428, tit. IV, 47 Stat. 1489 ............. 5

Homeland Security Act of 2002, Pub. L. No. 107-296,
   116 Stat. 2135 .................................................................... 4

Reorganization Act of 1939, Pub. L. No. 76-19, 53 Stat. 561 ............... 5

Reorganization Act of 1977, Pub. L. No. 95-17, 91 Stat. 29 ................ 5

## TABLE OF AUTHORITIES – cont'd

**Page(s)**

OTHER AUTHORITIES

Henry B. Hogue, Cong. Rsch. Serv., R47897, *Abolishing a Federal Agency: The Interstate Commerce Commission* (2024) ....................     4

# GLOSSARY

APA          Administrative Procedure Act

CAC          Constitutional Accountability Center

CFPB         Consumer Financial Protection Bureau

## INTEREST OF *AMICUS CURIAE*

Constitutional Accountability Center (CAC) is a think tank and public interest law firm dedicated to fulfilling the progressive promise of the Constitution's text and history. CAC works to improve understanding of the Constitution and preserve the rights, freedoms, and structural safeguards it guarantees, and accordingly has an interest in this case.

## INTRODUCTION
## AND SUMMARY OF ARGUMENT

The Constitution gives Congress—not the President—the power to create executive-branch agencies and the power to abolish them. The panel majority, through a fundamental misunderstanding of the Supreme Court's decision in *Dalton v. Specter*, 511 U.S. 462 (1994), reduces this pillar of congressional authority to an empty promise. This Court should not allow that derogation of the separation of powers and contortion of Supreme Court precedent to stand.

In *Dalton*, the Supreme Court held that "all executive actions in excess of statutory authority" are not "*ipso facto* unconstitutional." *Dalton*, 511 U.S. at 472. But here is what *Dalton* did not do: it did not hold that *no* executive action in excess of statutory authority is *ever* unconstitutional. *Contra* Maj. Op. 45-46. Indeed, *Dalton* makes clear that plaintiffs may bring constitutional claims whenever the President "act[s] in violation of the Constitution," including by arrogating another branch's core power or exercising a power the Constitution does not grant him.

1

*Dalton*, 511 U.S. at 473-74. And as the record reflects, that is exactly what happened here.

The evidence shows, and the district court found, that the President unilaterally sought to eliminate the Consumer Financial Protection Bureau (CFPB), seizing for himself Congress's exclusive power to abolish federal agencies, by "firing all probationary and term-limited employees without cause, cutting off funding, terminating contracts, closing all of the offices, and implementing a reduction in force." JA634. In light of this, Plaintiffs' separation-of-powers claim is premised on "a want of [Presidential] power," as opposed to "a mere excess or abuse of discretion in exerting a power given." *Dalton*, 511 U.S. at 474 (alteration in original) (quoting *Dakota Cent. Tel. Co. v. South Dakota ex rel. Payne*, 250 U.S. 163, 184 (1919)). That makes this case like *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), the archetypal separation-of-powers case.

The panel's misreading of *Dalton*, if allowed to stand, will have staggering implications, distorting the Supreme Court's careful handling of that case and allowing the executive branch to evade constitutional review simply by denying it has taken a challenged action—no matter how baseless that assertion—even in cases raising the "concern[s] of encroachment and aggrandizement" that have "animated [the Supreme Court's] separation-of-powers jurisprudence and aroused [its]

2

vigilance." *Mistretta v. United States*, 488 U.S. 361, 382 (1989). This Court should grant rehearing *en banc*.

## ARGUMENT

### I.      Unilateral Executive Abolition of Federal Agencies Violates the Constitution's Separation of Powers Because Congress Has Exclusive Authority to Create, Restructure, or Eliminate Federal Agencies.

Because federal agencies are "creatures of statute," *NFIB v. OSHA*, 595 U.S. 109, 117 (2022) (*per curiam*), it takes an act of law to create, restructure, or abolish an agency. In that lawmaking process, Congress is supreme. The Constitution provides that "[a]ll legislative Powers . . . shall be vested in a Congress of the United States." U.S. Const. art. I, § 1. It sets forth "a step-by-step, deliberate and deliberative process" for the enactment of laws, *INS v. Chadha*, 462 U.S. 919, 959 (1983), under which the President's power is limited to "recommendation and veto," *Youngstown*, 343 U.S. at 655 (Jackson, J., concurring); *see* U.S. Const. art. I, § 7 (setting forth requirements of bicameralism and presentment).

Congress, not the President, therefore has "plenary control over the . . . existence of executive offices." *Free Ent. Fund v. PCAOB*, 561 U.S. 477, 500 (2010). Congress may establish offices "by Law," U.S. Const. art. II, § 2, cl. 2, and it may "determin[e] . . . their functions and jurisdiction," *Myers v. United States*, 272 U.S. 52, 129 (1926). Indeed, Congress has created and restructured executive departments and agencies since the Founding. *See, e.g.*, Act of Sept. 2, 1789, ch.

12, § 1, 1 Stat. 65, 65 (creating Treasury Department); Act of Sept. 15, 1789, ch. 14, § 1, 1 Stat. 68, 68 (renaming the "Department of Foreign Affairs" the "Department of State"); Act of July 4, 1836, ch. 352, §§ 1-5, 5 Stat. 107, 107-11 ("reorganiz[ing]" the General Land Office).

Congress also has the exclusive power to abolish federal agencies, which it exercises as needed. *See, e.g.*, Homeland Security Act of 2002, Pub. L. No. 107-296, § 471, 116 Stat. 2135, 2205 (codified at 6 U.S.C. § 291) (abolishing the Immigration and Naturalization Service). The President, in contrast, cannot eliminate an agency on his own, as the Constitution "does not confer upon him any power to enact laws or to suspend or repeal such as the Congress enacts." *United States v. Midwest Oil Co.*, 236 U.S. 459, 505 (1915). Accordingly, past Presidents seeking to eliminate executive departments or agencies have recognized that Congress retains that ultimate authority. For instance, President Reagan pushed to abolish the Interstate Commerce Commission and proposed legislation to do so, but Congress did not pass it and so he relented. *See* Henry B. Hogue, Cong. Rsch. Serv., R47897, *Abolishing a Federal Agency: The Interstate Commerce Commission* 18 (2024).

In fact, whenever past Presidents have reorganized the executive branch, they have always done so pursuant to express congressional delegations of that power. Throughout the twentieth century, Congress passed Reorganization Acts,

4

authorizing Presidents to make major changes to the executive branch not possible via ordinary discretionary action. Sometimes Congress authorized the abolition of agencies. *See, e.g.*, Act of Mar. 3, 1933, Pub. L. No. 72-428, tit. IV, §§ 402, 403, 409, 47 Stat. 1489, 1517-19. Other times, it expressly retained that power for itself. *See, e.g.*, Reorganization Act of 1939, Pub. L. No. 76-19, § 3, 53 Stat. 561-62; Reorganization Act of 1977, Pub. L. No. 95-17, 91 Stat. 29.

This "[l]ong settled and established practice" of Congress using the lawmaking process to reorganize or abolish agencies, and receiving due deference from the President in doing so, underscores that the authority to create, restructure, and abolish federal agencies lies with Congress. *NLRB v. Noel Canning*, 573 U.S. 513, 524 (2014) (alteration in original) (quoting *The Pocket Veto Case*, 279 U.S. 655, 689 (1929)). And the Reorganization Acts demonstrate that when Congress wants to authorize the President to abolish a federal agency, it knows how to do so. At no point has Congress authorized the President to abolish the CFPB, and Defendants do not even purport to claim otherwise.

## II.    Plaintiffs' Separation-of-Powers Claim Is Judicially Reviewable Under *Dalton v. Specter*.

**A.** The panel majority's rejection of Plaintiffs' separation-of-powers claim rests on a misunderstanding of *Dalton v. Specter*. *Dalton* involved the President's decision to close a naval shipyard under a statute governing base closures. The plaintiffs asserted that the President "violated the terms of the [statute] by accepting

procedurally flawed recommendations" from other executive officials regarding the closure. 511 U.S. at 474. The Supreme Court rejected their effort to convert an alleged statutory violation into a constitutional one, reasoning that their constitutional claim was really just a challenge to the President's "exercise [of] discretion Congress ha[d] granted him" in the statute. *Id.* at 476.

In reaching that conclusion, the Supreme Court cautioned that "[o]ur cases do not support the proposition that *every* action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id.* at 472 (emphasis added). The Court noted that its prior decisions would not have distinguished between statutory and constitutional claims "[i]f *all* executive actions in excess of statutory authority were *ipso facto* unconstitutional." *Id.* (emphasis added). But the Court never suggested that *no* action by the President in excess of his statutory authority may ever violate the Constitution.

Indeed, *Dalton* makes clear that *some* executive actions taken without statutory authority do give rise to actionable constitutional claims. *Contra* Maj. Op. 45-47. Plaintiffs may bring constitutional claims whenever the President "act[s] in violation of the Constitution," *Dalton*, 511 U.S. at 474, such as when he exercises a power not delegated to him, *id.* at 473, including those expressly delegated to other branches. In such instances, there is "a want of [Presidential] power," as opposed to

"a mere excess or abuse of discretion in exerting a power given." *Id.* at 474 (alteration in original) (quoting *Dakota Cent. Tel. Co.*, 250 U.S. at 184).

Of course, a "want of [Presidential] power," *id.*, may exist when the President violates both the Constitution *and* a statute. The President's authority to act "must stem either from an act of Congress or from the Constitution itself," *Youngstown*, 343 U.S. at 585, so it is hardly surprising that, faced with a separation-of-powers challenge, the executive branch may point to a statute purportedly authorizing his behavior or, as here, "simply deny having taken an action that all recognize as indisputably unconstitutional," Dissenting Op. 55. But if *Dalton* means that "implied equitable review for constitutional claims is unavailable where the plaintiff argues that statutory violations by executive officials implicate the separation of powers," Maj. Op. 47-48, it is difficult to see how plaintiffs could *ever* bring a separation-of-powers claim when a President usurps a core congressional power and, in so doing, commits both statutory and constitutional violations. *Cf. Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324-29, 331-32 (2015) (holding that a law foreclosed review of statutory violations but still considering whether litigants could bring a viable constitutional claim).

The panel mistakenly distinguishes *Youngstown* by noting that the dispute there was "entirely constitutional." Maj. Op. 48. To be sure, *Youngstown* was the rare case in which "no statutory authority was claimed" by the President to justify

7

his seizure of the country's steel mills. *Dalton*, 511 U.S. at 473. But *Youngstown* still contemplates courts' adjudication of separation-of-powers claims alongside analysis of statutory violations—indeed, in *Youngstown* itself, Justice Jackson analyzed the text of several relevant federal condemnation statutes and concluded that their policies were "inconsistent" with President Truman's seizure of the steel mills, putting the President's power at its lowest ebb. *Youngstown*, 343 U.S. at 639-40.

Since *Youngstown*, the Supreme Court has confirmed that the existence of statutory disputes does not foreclose review of separation-of-powers claims. Thus, in *Dames & Moore v. Regan*, 453 U.S. 654 (1981), the Court resolved the merits of a claim that the President and the Treasury Secretary went "beyond their statutory and constitutional powers." *Id.* at 667. Unlike in *Youngstown*, the President "purported to act under authority of" two federal statutes, *id.* at 675, which the Court had to interpret to resolve the separation-of-powers claim, *id.* at 670-74. The presence of a statutory dispute did not, however, nullify the plaintiffs' freestanding constitutional claim. *Id.* at 674.

Likewise, in *Franklin v. Massachusetts*, 505 U.S. 788 (1992), the plaintiffs challenged the executive branch's method of counting overseas federal employees, bringing claims "under both the APA and the Constitution." *Id.* at 796. The Court rejected the APA claims, *id.* at 796-801, but made explicit that this "d[id] not dispose

8

of [the plaintiffs'] constitutional claims," *id.* at 801.  Although the executive branch relied entirely on statutory authority, *id.* at 791-94, the Court resolved "[o]n the merits" the plaintiffs' claim "that the Secretary [of Commerce]'s allocation of overseas federal employees . . . violated the command of Article I."  *Id.* at 803.

*Dalton* did not overrule these cases.  Instead, *Dalton* allows the adjudication of separation-of-powers claims involving colorable allegations that the executive has unilaterally usurped a core congressional power.

**B.**  That is precisely the type of challenge that Plaintiffs bring here, and the panel majority's conclusion that Plaintiffs' constitutional "separation-of-powers" claim is "entirely" reducible to—and foreclosed by—inquiry into "whether CFPB officials violated the governing statutes," Maj. Op. 47, fundamentally misunderstands that claim.

Unlike in *Dalton*, Plaintiffs' separation-of-powers claim is not premised on the President exceeding some power Congress conferred on the President in the statutes establishing the CFPB and requiring it to perform certain functions.  Plaintiffs instead challenge the President's usurpation of a power that belongs exclusively to Congress—the power to eliminate the CFPB altogether—by "firing all probationary and term-limited employees without cause, cutting off funding, terminating contracts, closing all of the offices, and implementing a reduction in force . . . that would cover everyone else."  JA634.

That challenge is not properly understood either as a "claim[] alleging nothing more than executive actions in contravention of statutes," Maj. Op. 48, nor as a constitutional challenge to "the President's obligation to take care that the *statutes* governing the CFPB are faithfully executed," *id*. at 49.  Instead, "Plaintiffs object not to the cessation of discrete and mandatory agency duties, but to the decision to shutter an agency created by Congress—an action for which the President's authority, if it is to exist at all, 'must be found in . . . the Constitution.'"  Dissenting Op. 53 (quoting *Youngstown*, 343 U.S. at 587).

*Youngstown*, not *Dalton*, is thus the closer comparison to this case.  Like *Youngstown*, "this case 'involve[s] the conceded *absence* of *any* statutory authority' to undertake the challenged action."  Dissenting Op. 53 (alteration in original) (quoting *Dalton*, 511 U.S. at 473).  But needing to inquire whether Congress delegated its sole power to abolish an executive agency to the President cannot— and does not here—transform a constitutional separation-of-powers claim into a "claim[] that a federal agency has violated a federal statute."  Maj. Op. 43.

To be sure, the President's actions may also violate the statutes that created the CFPB and assign its mandatory functions.  But regardless, there is a distinct violation of the separation of powers here because the power to abolish the CFPB wholesale belongs to Congress, and Congress has not delegated that authority to the President.  Thus, the President's unauthorized effort to abolish the CFPB amounts to

a violation of Congress's control over the creation, restructuring, and elimination of executive agencies.  The existence of statutory infringements does not foreclose a separation-of-powers claim to challenge that core constitutional violation, and *Dalton* does not so much as suggest that it does.

## CONCLUSION

For the foregoing reasons, this Court should grant rehearing *en banc*.

Respectfully submitted,

/s/ Brianne J. Gorod
Elizabeth B. Wydra
Brianne J. Gorod
Brian R. Frazelle
Miriam Becker-Cohen
Joshua D. Blecher-Cohen
CONSTITUTIONAL ACCOUNTABILITY CENTER
1730 Rhode Island Ave. NW, Suite 1200
Washington, D.C. 20036
(202) 296-6889
brianne@theusconstitution.org

*Counsel for Amicus Curiae*

Dated: September 30, 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(b)(4) because it contains 2,371 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Times New Roman font.

Executed this 30th day of September, 2025.

/s/ Brianne J. Gorod
Brianne J. Gorod

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of September, 2025, I electronically filed the foregoing document using the Court's CM/ECF system, causing a notice of filing to be served upon all counsel of record.

Dated: September 30, 2025

/s/ Brianne J. Gorod
Brianne J. Gorod