# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

NATIONAL TREASURY EMPLOYEES UNION, ET AL.,

*Plaintiffs-Appellees,*

– v. –

RUSSELL T. VOUGHT, ET AL.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Columbia
Case No. 24-cv-0381-ABJ (The Hon. Amy Berman Jackson)

## BRIEF OF 41 NONPROFIT VETERANS, LEGAL SERVICES, AND CONSUMER ORGANIZATIONS AS AMICI CURIAE IN SUPPORT OF APPELLEES' PETITION FOR REHEARING EN BANC

Seth E. Mermin
David S. Nahmias
Shelmun R. Dashan
CENTER FOR CONSUMER LAW &
ECONOMIC JUSTICE
UC BERKELEY SCHOOL OF LAW
308 Berkeley Law
Berkeley, CA 94720-7200
(510) 643-3519
tmermin@law.berkeley.edu
dnahmias@law.berkeley.edu

Persis S. Yu (D.C. Bar No. 90014714)
PROTECT BORROWERS*
1025 Connecticut Ave NW, #717
Washington, DC 20036

Ariel Levinson-Waldman
A.J. Hong-Huber
John Blake
Marissa Ditkowksy
TZEDEK DC
UDC DAVID A. CLARKE SCHOOL OF LAW
4340 Connecticut Ave. NW, Ste. 345
Washington, D.C. 20008

R.T. Winston Berkman-Breen
PROTECT BORROWERS*
40 Rector Street, 9th Floor
New York, NY 10006

*A fiscally sponsored project of the
Shared Ascent Fund*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), amici curiae certify as follows:

## A.    Parties and Amici.

Apart from the amici curiae listed below and any amici who have not yet entered an appearance in this case, all parties, intervenors, and amici appearing in this Court are listed in Addendum B of the Petition for Rehearing En Banc.

- Americans for Financial Reform Education Fund

- Consumer Advocates Against Reverse Mortgage Abuse

- CASH Campaign of Maryland

- Center for Consumer Law and Economic Justice

- Center for Digital Democracy

- Center for Economic Integrity

- Center for Elder Law & Justice

- Center for LGBTQ Economic Advancement & Research

- Center for Responsible Lending

- Community and Shelter Assistance Corp. (CASA) of Oregon

- Community Economic Empowerment Network

- Connecticut Veterans Legal Center

- Consumer Action

- Consumer Federation of America

- Consumers for Auto Reliability and Safety

- DannLaw

- Legal Aid DC

- Legal Assistance for Seniors

- Mid-Minnesota Legal Aid

- Minority Veterans of America

- Mobilization for Justice

- Mountain State Justice

- National Association of Consumer Advocates

- National Fair Housing Alliance

- New Economy Project

- New Jersey Citizen Action

- New York Legal Assistance Group

- Oregon Consumer Justice

- People Power United

- Project GREEN

- Prosperity Indiana

- Protect Borrowers (a fiscally sponsored project of the Shared Ascent Fund)

- Public Counsel

- Public Justice Center

- Rise Economy

- Texas A & M School of Law - Family & Veterans Advocacy Clinic

- Texas Appleseed

- Tzedek DC

- Virginia Citizens Consumer Council

- Western New York Law Center

- Woodstock Institute

**B.      Ruling under Review.**

Reference to the ruling at issue appears in the Petition for Rehearing En Banc.

**C.      Related Cases.**

Reference to any related cases pending before this Court appears in the Petition for Rehearing En Banc.

Respectfully submitted,

/s/ David S. Nahmias
David S. Nahmias
*Counsel for Amici Curiae*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

No party to this filing has a parent corporation, and no publicly held corporation owns 10% or more of the stock of any party to this filing.

# CERTIFICATE OF COUNSEL

Pursuant to D.C. Circuit Rule 29(d), amici curiae are aware of four other potential amicus briefs in support of Appellees from Members of Congress, States, former CFPB officials, and the Constitutional Accountability Center. Separate briefs are necessary because this brief offers the distinct perspective of national, state, and local non-profit organizations from across the country that advocate for the ordinary Americans who engage daily in the consumer financial marketplace and who would face inordinate harm if the CFPB is eliminated and its statutory functions ceased. The other briefs, by contrast, focus on the separation of powers concerns at issue in this case from the perspective of Congress, the consequences to the States' enforcement and financial supervisory efforts if the CFPB is shuttered, the particular viewpoints of officials of the agency, and a non-profit law firm with a specific interest in separation of powers questions. Amici curiae believe that their brief will help the Court to assess the extraordinary importance of the issues presented.

# **TABLE OF CONTENTS**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............ ii

CORPORATE DISCLOSURE STATEMENT ........................................................v

CERTIFICATE OF COUNSEL ....................................................................................vi

TABLE OF CONTENTS ............................................................................. vii

TABLE OF AUTHORITIES............................................................................. viii

GLOSSARY ..................................................................................................... xii

INTERESTS OF AMICI CURIAE ...........................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................1

ARGUMENT ...................................................................................................4

    I.    THE CONTINUED EXISTENCE OF A FUNCTIONING CFPB IS
         EXCEPTIONALLY IMPORTANT AND WARRANTS EN BANC
         REVIEW. ...............................................................................................4

         A.    The American Economy Relies on the CFPB to Administer
              Critical Federal Financial Laws. .......................................................4

         B.    Critical Populations Rely on the CFPB's Continued
              Enforcement of Financial Laws. .......................................................6

         C.    The Majority Opinion Jeopardizes the CFPB's Key
              Consumer Welfare and Market Monitoring Tool. ............................8

    II.    THE PANEL DECISION CANNOT BE RECONCILED WITH
         CONTROLLING PRECEDENT ON THE SEPARATION OF
         POWERS...............................................................................................10

         A.    The Majority Opinion's Abdication of Judicial Review
              Warrants En Banc Consideration....................................................11

         B.    Dismantling the CFPB Violates the Separation of Powers.............11

CONCLUSION ...................................................................................................12

CERTIFICATE OF SERVICE...............................................................................12

CERTIFICATE OF COMPLIANCE ....................................................................15

# TABLE OF AUTHORITIES

## Cases

*Bennett v. Spear*,
    520 U.S. 154 (1997)......................................................................11

*Biden v. Nebraska*,
    600 U.S. 477 (2023)...................................................................3, 11

*DHS v. Regents of the Univ. of Cal.*,
    591 U.S. 1 (2020)..........................................................................11

*Freytag v. Comm'r*,
    501 U.S. 868 (1991).......................................................................3

*NTEU v. Vought*,
    149 F.4th 762 (D.C. Cir. 2025).....................................................2

*NTEU v. Vought*,
    774 F. Supp. 3d 1 (D.D.C. 2025).........................................1, 10, 11

*PHH Mortg. v. CFPB*,
    881 F.3d 75 (D.C. Cir. 2018).........................................................5

*Seila Law LLC v. CFPB*,
    591 U.S. 197 (2020).......................................................................5

*Tenn. Valley Auth. v. Hill*,
    437 U.S. 153 (1978).......................................................................3

*The Confiscation Cases*,
    87 U.S. 92 (1873).........................................................................10

*West Virginia v. EPA*,
    597 U.S. 697 (2022).....................................................................11

## Statutes

12 U.S.C. § 5481 ...............................................................................4

12 U.S.C. § 5493 ...................................................................6

12 U.S.C. § 5493(b)..............................................................2

12 U.S.C. § 5493(b)(3).........................................................8

12 U.S.C. § 5493(e)..............................................................7

12 U.S.C. § 5495 ...................................................................5

12 U.S.C. § 5511(a)..............................................................4

12 U.S.C. § 5511(b)..............................................................2

12 U.S.C. § 5514(b)(3).........................................................5

12 U.S.C. § 5581 ...................................................................5

**Rules**

Fed. R. App. P. 29(a) .............................................................1

**Other Authorities**

Adam J. Levitin, *The Consumer Financial Protection Bureau:
An Introduction*, 32 Rev. Banking & Fin. L. 321 (2013)...............................5

Brief of Mortg. Bankers Ass'n et al. as Amici Curiae, *CFPB v. CFSA*,
No. 22-448 (U.S. May 15, 2023) ....................................................6

CFPB, *CFPB Orders Hyundai to Pay $19 Million for Widespread Credit
Reporting Failures* (July 26, 2022)..................................................9

CFPB, *CFPB Study Details the Rapid Growth of "Buy Now, Pay Later"
Lending* (Sept. 15, 2022)..................................................................9

CFPB, *CFPB Takes Action Against Reverse Mortgage Lender for
Deceptive Advertising* (Aug. 24, 2021)..........................................8

CFPB, *Consumer Response Annual Report: January 1 – December 31,
2024* (May 1, 2025)..........................................................................9

CFPB, *Four Million Complaints: More Than Just a Milestone*
(Sept. 29, 2023) ............................................................9

CFPB, Off. of Servicemember Affairs, *The CFPB is Protecting the
Military Community and Providing Relief* (May 23, 2024) ...........7

CFPB, *Submit a Complaint About a Financial Product or Service*
(last modified Mar. 12, 2025) ...................................8, 9

CFPB, *Supervisory Highlights: Issue 33* (Spring 2024) ..........5

Charlotte Haendler & Rawley Z. Heimer, *The Hidden Costs of
Financial Services: Consumer Complaints and
Financial Restitution* (Apr. 15, 2025) ..........................9

E. Tammy Kim, *Killing The Military's Consumer Watchdog*,
The New Yorker (Mar. 18, 2025) ..................................7

Fed. Reserve Bank of N.Y., *Quarterly Report on Household Debt and
Credit—2024: Q4* (Feb. 2025) ...................................3

Jilenne Gunther, AARP, *The Scope of Elder Financial Exploitation:
What It Costs Victims* (2023) ..................................7

Juan M. Sánchez & Masataka Mori, Fed. Reserve Bank of St. Louis,
*The Broad, Continuing Rise in Delinquent U.S. Credit Card
Debt Revisited* (Mar. 9, 2025) ................................2

Matt Sedensky, *Consumer Watchdog Agency Called "Vicious" By Trump
Seen As A Hero To Many It Aided*, L.A. Times (Feb. 18, 2025) ....9

Nat'l Ass'n of Federally-Insured Credit Unions, Comment Letter on
Proposed Rulemaking on the "Role of Supervisory Guidance"
(Dec. 30, 2020) ...............................................6

U.S. DOD, *Report on the Military Lending Act and the Effects of
High Interest Rates on Readiness* (2021) ......................6

Yiwei Dou et al., *Learning from Peers: Evidence from Disclosure of Consumer Complaints*, 77 J. Acct. & Econ. 101620 (2024)...........................9

**Administrative Adjudications**

*Prime Choice Funding, Inc.*,
CFPB No. 2020-BCFP-0006 (July 24, 2020) ................................................7

*Sovereign Lending Grp.*,
CFPB No. 2020-BCFP-0006 (July 24, 2020) ................................................7

# <u>GLOSSARY</u>

CFPB      Consumer Financial Protection Bureau

CFSA      Community Financial Services Association of America

DOD      United States Department of Defense

NTEU      National Treasury Employees Union

VA      United States Department of Veterans Affairs

## INTERESTS OF AMICI CURIAE[1]

Amici curiae are 41 nonprofit organizations that rely on the Consumer Financial Protection Bureau (CFPB) for information, enforcement, and client education. Amici include organizations that serve populations at particular risk of fraud and deception in the lending market—including populations that Congress mandated that the CFPB assist. Others contribute to and benefit from generally applicable CFPB rulemakings, guidance, and materials to support their clients. These organizations hold a collective interest in the continued viability of the CFPB. Individual statements of interest are available in the accompanying motion.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Last winter, the new acting director of the CFPB attempted, without congressional authorization, to eliminate the Bureau. After taking evidence over two days, the district court found that Defendants "stopped all work" and attempted "to dismantle and shut down the agency entirely, in violation of statutory mandates." *NTEU v. Vought*, 774 F. Supp. 3d 1, 81-82 (D.D.C. 2025). Nevertheless, on appeal, a divided panel of this Court concluded that it could not review the legality of those actions. *NTEU v. Vought*, 149 F.4th 762, 790 (D.C.

---

[1] No counsel for any party authored this brief in whole or in part, and no person other than amici curiae, their members, and their counsel made a monetary contribution to the preparation or submission of this brief. Fed. R. App. P. 29(a). All parties have consented to the filing of this brief.

1

Cir. 2025). That decision does not accord with the facts found by the district court. Absent that court's injunction and the panel's order withholding issuance of its mandate, a complete shutdown would have occurred—jeopardizing 340 million consumers and returning the nation to the unprotected state in which it stood prior to the Great Recession.

This Court should grant the petition for en banc review because the unlawful, unilateral dismantling of an agency intended to protect over a hundred million American families from financial harm presents an issue of exceptional importance. Defendants' conduct is incompatible with Congress's goals in establishing the CFPB, *see* 12 U.S.C. § 5511(b), and threatens significant harm to the particular constituencies the Bureau must serve, *id.* § 5493(b). If unchecked, these actions will remove the nation's principal bulwark against toxic financial products, predatory lending, and fraudulent schemes using new technologies like artificial intelligence to hoodwink American consumers. With consumer financial fragility now reaching 2008 levels by some metrics,[2] the gutting of the Bureau today poses significant danger to the U.S. economy and contravenes the very purpose of the Dodd-Frank Act that established the Bureau.

---

[2] *See* Juan M. Sánchez & Masataka Mori, Fed. Reserve Bank of St. Louis, *The Broad, Continuing Rise in Delinquent U.S. Credit Card Debt Revisited* (Mar. 9, 2025) (finding that the "present share of credit card debt in delinquency is reaching levels seen in the 2008 global financial crisis").

Moreover, the panel decision conflicts with Supreme Court precedent on the reviewability of unconstitutional actions and the separation of powers. Neither the majority opinion nor Defendants proffer any argument supporting the constitutionality of the Administration's actions, nor could they. The power to create an executive agency and wholly eliminate it belongs "exclusive[ly]" to Congress. *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 194 (1978). Moreover, dismantling the federal agency that oversees the $18 trillion market for household consumer debt[3] involves "staggering" economic and political risks that the executive branch could not undertake without clear congressional authority. *Biden v. Nebraska*, 600 U.S. 477, 502 (2023).

The panel majority ceded its important responsibility to protect the public and safeguard the balance of powers. *See Freytag v. Comm'r*, 501 U.S. 868, 678 (1991) (noting the judiciary's "strong interest" in "maintaining the constitutional plan of separation of powers"). This Court sitting en banc can correct this potentially grievous error.

The petition should be granted.

---

[3] *See* Fed. Reserve Bank of N.Y., *Quarterly Report on Household Debt and Credit—2024: Q4* (Feb. 2025), https://perma.cc/B8U6-DBVD (aggregating mortgage, student, automobile, credit card, and other forms of household debt).

## ARGUMENT

## I. THE CONTINUED EXISTENCE OF A FUNCTIONING CFPB IS EXCEPTIONALLY IMPORTANT AND WARRANTS EN BANC REVIEW.

The Bureau is the linchpin of modern consumer financial protection in the United States. Eliminating the CFPB disrupts programs, ceases enforcement, and exposes the American economy to significant systemic risk. Yet the majority opinion did not consider the danger of a unilateral shutdown of this congressionally mandated agency.

### A. The American Economy Relies on the CFPB to Administer Critical Federal Financial Laws.

The CFPB provides stability to the multitrillion-dollar American consumer financial market. The Bureau's elimination—which the majority opinion permits—will greenlight the risky behaviors that led to the Bureau's creation. Following the 2008 financial crisis, Congress established the Bureau to promote a "fair, transparent, and competitive" marketplace for "all consumers." 12 U.S.C. § 5511(a). Congress tasked the Bureau with enforcing specified consumer protection laws, proactively supervising the financial industry, identifying risks, and coordinating agencies to safeguard consumers and maintain a stable financial sector. *Id.* §§ 5481, 5511.

The sheer magnitude and complexity of the U.S. consumer financial system led Congress to establish a robust regulatory regime. Yet absent a functioning

Bureau, that regime is likely to suffer "appreciable damage," *Seila Law LLC v. CFPB*, 591 U.S. 197, 237 (2020), and the kinds of gaps in oversight that precipitated the Great Recession. *See PHH Mortg. v. CFPB*, 881 F.3d 75, 120 (D.C. Cir. 2018) (en banc) (observing that "Congress partially attributed [the 2008 financial crisis] to a colossal failure of consumer protection"), *abrogated on other grounds by Seila*, 591 U.S. 197.[4] In the Dodd-Frank Act, Congress mandated that the CFPB play a pivotal role in overseeing the consumer financial system and coordinating supervision, rulemaking, and enforcement activities among other federal and state agencies. 12 U.S.C. §§ 5581, 5495, 5514(b)(3). Defendants' actions leave the CFPB unable to fulfill these mandates.

Among many duties intended to avert future economic calamities, the Bureau's examination authority identifies abusive market practices, deters noncompliance, and resolves emerging risks.[5] But effective examinations require a functioning agency. The Bureau's *Supervisory Highlights* regularly flag problematic industry trends,[6] and businesses rely on this guidance to shape internal

---

[4] *See* Adam J. Levitin, *The Consumer Financial Protection Bureau: An Introduction*, 32 Rev. Banking & Fin. L. 321, 330 (2013).

[5] *See id.* at 355-56.

[6] *See, e.g.*, CFPB, *Supervisory Highlights: Issue 35* (Fall 2024), https://perma.cc/XXA7-FDDM (identifying a "trend of significant violations" in the auto lending market).

compliance programs and avoid liability.[7] For instance, CFPB rules "are now baked into the daily functioning of the mortgage industry," and industry leaders fear that ending the Bureau's work could cause the mortgage market to "grind to a halt," and "chaos would ensue."[8] Yet that is the likely result if the panel's opinion permitting Defendants to execute their shutdown plan stands.

## B. Critical Populations Rely on the CFPB's Continued Enforcement of Financial Laws.

Closing the Bureau also jeopardizes congressional protections for "traditionally underserved communities," 12 U.S.C. § 5493, against financial exploitation and predatory lending schemes.

For example, the CFPB protects active duty servicemembers and veterans from scammers and unscrupulous lenders. It could not fulfill that role if Defendants are permitted to destroy the agency. Aggressive lenders routinely target servicemembers and veterans with high-cost loans that burden them with unmanageable debt and can lead to disciplinary action and even discharge.[9]

---

[7] *See, e.g.*, Nat'l Ass'n of Federally-Insured Credit Unions, Comment Letter on Proposed Rulemaking on the "Role of Supervisory Guidance" (Dec. 30, 2020), https://perma.cc/VM4E-GA8A ("Supervisory guidance plays a critical role in assisting credit unions to shape their practices, policies, and procedures.").

[8] *See* Brief of Mortg. Bankers Ass'n et al. as Amici Curiae, *CFPB v. CFSA*, No. 22-448, at 6, 11-12 (U.S. May 15, 2023), https://perma.cc/Z2H4-MYXH.

[9] U.S. DOD, *Report on the Military Lending Act and the Effects of High Interest Rates on Readiness* 15 (2021), https://perma.cc/6D5Q-WJ83 (warning that servicemembers' individual financial insecurity can impact military readiness); *see*

Congress created the CFPB's Office of Servicemember Affairs to protect this community pivotal to our national security; no other federal agency has a comparable mandate. 12 U.S.C. § 5493(e). The office handles complaints, coordinates cross-agency enforcement, and monitors trends in financial harm to military families. Over the past fourteen years, military families have received $183 million in relief.[10] The Bureau has also brought actions against mortgage lenders that disseminated deceptive mailers to servicemembers and veterans about VA-guaranteed loans that illegally misrepresented credit terms.[11] Because the Bureau is often the only federal authority that holds systematic offenders accountable, dismantling its operations— including the Office of Servicemember Affairs—puts military families at risk.

Similarly, millions of older Americans may lose the principal federal cop on the beat protecting them from corporate fraud. Elder financial abuse costs victims more than $28 billion annually.[12] Mindful that aggressive lenders routinely prey on

---

*also* E. Tammy Kim, *Killing The Military's Consumer Watchdog*, The New Yorker (Mar. 18, 2025), https://perma.cc/KZ8S-QMPR.

[10] CFPB, Off. of Servicemember Affairs, *The CFPB is Protecting the Military Community and Providing Relief* (May 23, 2024), https://perma.cc/3P3J-ZHJY.

[11] *See, e.g.*, *Prime Choice Funding, Inc.*, CFPB No. 2020-BCFP-0006 (July 24, 2020), https://perma.cc/UC9S-FVLU; *Sovereign Lending Grp.*, CFPB No. 2020-BCFP-0006 (July 24, 2020), https://perma.cc/4PKU-J8QV.

[12] Jilenne Gunther, AARP, *The Scope of Elder Financial Exploitation: What It Costs Victims* 1 (2023), https://perma.cc/Q3Y9-M8KR.

senior citizens, Congress created an Office of Financial Protection for Older Americans within the CFPB with research, education, and coordination responsibilities. 12 U.S.C. § 5493(g). The Bureau has also prosecuted cases against companies like Nationwide Equities that target older homeowners with deceptive reverse mortgage products and advertisements.[13]

If the majority opinion is allowed to stand and the CFPB is shuttered, these vulnerable populations and others will lose the only federal agency dedicated to protecting their financial wellbeing.

C.    **The Majority Opinion Jeopardizes the CFPB's Key Consumer Welfare and Market Monitoring Tool.**

Finally, the elimination of the CFPB will undermine its consumer complaint portal, a key mechanism designed to unearth and resolve financial fraud in real time. The Bureau's unique complaint process helps expose bad actors, resolve matters informally, and identify patterns in the marketplace to inform future enforcement. *See* 12 U.S.C. § 5493(b)(3).[14] The portal allows consumers to file complaints directly with the agency, which ordinarily results in a response from the

---

[13] CFPB, *CFPB Takes Action Against Reverse Mortgage Lender for Deceptive Advertising* (Aug. 24, 2021), https://perma.cc/Q5AZ-8ZHT.

[14] *See generally* CFPB, *Submit a Complaint About a Financial Product or Service* (last modified Mar. 12, 2025), https://perma.cc/5JW4-BP4S.

lender and resolution within sixty days.[15] Additionally, public access to company

responses incentivizes compliance and informal resolution without litigation.[16]

The complaint process has obtained beneficial resolutions for millions of

consumers.[17] One study found that companies subject to complaints lodged with

the Bureau have returned $1,470 per successful complaint to consumers on

average.[18] Furthermore, through the complaint database, the Bureau has identified

repeat corporate offenders and emerging threats to consumer financial security.[19]

---

[15] *Id.* Of the nearly three million complaints the CFPB forwarded to companies for review in 2024, "[a]pproximately 13% of complaints were closed within the initial response period of 15 days and 98% were closed within the final response period of 60 days." CFPB, *Consumer Response Annual Report: January 1 – December 31, 2024*, at 17 (May 1, 2025), https://perma.cc/UE3K-5SH3.

[16] Yiwei Dou et al., *Learning from Peers: Evidence from Disclosure of Consumer Complaints*, 77 J. Acct. & Econ. 101620 (2024).

[17] CFPB, *Four Million Complaints: More Than Just a Milestone* 3, 18 (Sept. 29, 2023), https://perma.cc/DF84-WGEZ; *see, e.g.*, Matt Sedensky, *Consumer Watchdog Agency Called "Vicious" By Trump Seen As A Hero To Many It Aided*, L.A. Times (Feb. 18, 2025), https://perma.cc/CQ5N-K94F (describing how the CFPB complaint process helped one person in Phoenix stop debt collectors from harassing her 95-year-old father over unpaid medical bills, and helped a retired auto dealership manager in Las Vegas stop receiving unnecessary bills from his mortgage lender).

[18] Charlotte Haendler & Rawley Z. Heimer, *The Hidden Costs of Financial Services: Consumer Complaints and Financial Restitution* 12 (Apr. 15, 2025), https://ssrn.com/abstract=5218602.

[19] *See, e.g.*, CFPB, *CFPB Orders Hyundai to Pay $19 Million for Widespread Credit Reporting Failures* (July 26, 2022), https://perma.cc/Y8HB-2ST8 (settlement with auto lender after it furnished inaccurate information to credit bureaus, based on consumer complaints); CFPB, *CFPB Study Details the Rapid Growth of "Buy Now, Pay Later" Lending* (Sept. 15, 2022),

The dismantling of the Bureau jeopardizes the continued accuracy and availability of this resource. Even in the short time before the district court intervened, the Bureau's shutdown caused a backlog of 16,000 complaints. *NTEU*, 774 F. Supp. 3d at 66. If the complaint portal is shuttered, millions of Americans will lose likely the only accessible mechanism for vindicating their statutorily guaranteed consumer protection rights.

## II. THE PANEL DECISION CANNOT BE RECONCILED WITH CONTROLLING PRECEDENT ON THE SEPARATION OF POWERS.

The executive branch's attempt to eliminate a congressionally enacted agency also presents fundamental constitutional questions that warrant en banc review. As the district court found, Defendants' extraordinary assertion of unchecked power to close the Bureau far exceeds the limits of executive authority. *NTEU*, 774 F. Supp. 3d at 56-58; *see also The Confiscation Cases*, 87 U.S. 92, 112-13 (1873) ("No power was ever vested in the President to repeal an act of Congress."). The panel opinion sidestepped this issue by ruling that the evisceration of the CFPB was unreviewable. Controlling precedent and the core principles animating the separation of powers cannot countenance that conclusion.

---

https://perma.cc/4ZRF-NNW5 (report on new predatory short-term credit products).

## A. The Majority Opinion's Abdication of Judicial Review Warrants En Banc Consideration.

An agency's closure is a quintessentially reviewable agency action "from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (holding that a final action "marks the consummation of the agency's decisionmaking process"); *see DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 18-19 (2020) (rescission of immigration non-enforcement policy subject to judicial review). The district court found that the Defendants engaged in a "concerted, expedited effort" based on premeditated plans to eliminate a statutorily mandated agency. *NTEU*, 774 F. Supp. 3d at 58. Had they managed to fully accomplish their plan, all Bureau operations would have ceased, including pending litigation, supervision, examination, and consumer complaint resolution. The majority's determination that it could not review this shutdown, despite its legal consequences, is incompatible with Supreme Court precedent.

## B. Dismantling the CFPB Violates the Separation of Powers.

Because the majority focused exclusively on reviewability, it had no occasion to address the merits of Defendants' actions. This Court can consider and apply clear precedent that forecloses a unilateral shutdown of the CFPB. *See West Virginia v. EPA*, 597 U.S. 697, 723 (2022) (requiring, based on "separation of powers principles," "clear congressional authorization" to justify assertions of

broad administrative power in "extraordinary cases" with "economic and political significance"); *see also Nebraska*, 600 U.S. at 506 (observing that "the basic and consequential tradeoffs inherent in a mass . . . [policy] program are ones that Congress would likely have intended for itself"). The sudden closure of an agency empowered by Congress to conduct a wide array of activities violates any reasonable conception of the separation of powers.

Defendants' attempt to eliminate the CFPB undermines the authority and intent that Congress exercised in establishing the Bureau. Yet the panel majority allowed an unconstitutional action to stand and countenanced the dismantling of a statutorily mandated agency created to safeguard the U.S. economy and hundreds of millions of American consumers. The astonishing assertion of untrammeled executive authority, and the question of the continued existence of an essential, congressionally mandated federal agency, merit the full Court's attention.

## <u>CONCLUSION</u>

The petition for rehearing en banc should be granted.

Dated: October 6, 2025

Respectfully submitted,

/s/ *Seth E. Mermin*
Seth E. Mermin
David S. Nahmias
Shelmun R. Dashan
CENTER FOR CONSUMER LAW &
ECONOMIC JUSTICE
UC BERKELEY SCHOOL OF LAW
308 Berkeley Law

Berkeley, CA 94720-7200
tmermin@law.berkeley.edu
dnahmias@law.berkeley.edu

Ariel Levinson-Waldman
A.J. Hong-Huber
John Blake
Marissa Ditkowksy
TZEDEK DC
UDC DAVID A. CLARKE SCHOOL OF LAW
4340 Connecticut Ave. NW,
Suite 345
Washington, D.C. 20008

Persis S. Yu (D.C. Bar No. 90014714)
PROTECT BORROWERS*
1025 Connecticut Ave NW, #717
Washington, DC 20036

R.T. Winston Berkman-Breen
PROTECT BORROWERS*
40 Rector Street, 9th Floor
New York, NY 10006

*A fiscally sponsored project of the
Shared Ascent Fund

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ David S. Nahmias
David S. Nahmias
*Counsel for Amici Curiae*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(b)(4) because it contains 2,580 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word. The text is in 14-point Times New Roman type.

/s/ David S. Nahmias
David S. Nahmias
*Counsel for Amici Curiae*