## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

NATIONAL TREASURY EMPLOYEES UNION, et al.,

*Plaintiffs-Appellees,*

v.

RUSSELL T. VOUGHT, in his official capacity as Acting Director of the
Consumer Financial Protection Bureau, et al.,

*Defendants-Appellants.*

———————————

On Appeal from the United States District Court
for the District of Columbia

———————————

## OPPOSITION TO PETITION FOR
## REHEARING EN BANC

———————————

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
MELISSA N. PATTERSON
DEREK WEISS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7230*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-5365*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ................................................................. 1

STATEMENT ................................................................................................... 4

ARGUMENT ................................................................................................... 6

THIS COURT SHOULD DENY THE PETITION FOR REHEARING
    EN BANC. .................................................................................................. 6

    A.    The Panel Correctly Applied Ordinary APA Principles. .............7

            1.    Plaintiffs' Petition Mischaracterizes The Panel's
                  APA Analysis. ..........................................................................7

            2.    The Panel Correctly Concluded That Abstract Plans
                  To Take Future Action Are Not Reviewable Under
                  the APA. ....................................................................................8

            3.    Plaintiffs' Policy Concerns Are Misplaced. ........................13

    B.    Allegations That The Executive Has Contravened Statutes
            State *Ultra Vires*, Not Constitutional, Claims. ..............................15

    C.    This Case Does Not Meet The Criteria For En Banc
            Review. ...........................................................................................18

CONCLUSION ............................................................................................... 20

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Bennett v. Spear,*
 520 U.S. 154 (1997) ....................................................................... 11

*Biden v. Texas,*
 597 U.S. 785 (2022) ......................................................................... 9

*Dalton v. Specter,*
 511 U.S. 462 (1994) ............................................................ 3, 6, 15-16

*Free Enter. Fund v. Public Co. Acct. Oversight Bd.,*
 561 U.S. 477 (2010) ....................................................................... 17

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.,*
 460 F.3d 13 (D.C. Cir. 2006) .......................................................... 10

*Global Health Council v. Trump*:
 No. 25-5097, 2025 WL 2709437 (D.C. Cir. Aug. 28, 2025) ...................... 3, 16
 No. 25-5097, 2025 WL 2480618 (D.C. Cir. Aug. 28, 2025) .......................... 16

*Hispanic Affairs Project v. Acosta,*
 901 F.3d 378 (D.C. Cir. 2018) ........................................................ 10

*Independent Equip. Dealers Ass'n v. EPA,*
 372 F.3d 420 (D.C. Cir. 2004) ........................................................ 10

*Lujan v. National Wildlife Fed'n,*
 497 U.S. 871 (1990) ............................................................. 3, 12, 15

*National Insts. of Health v. American Pub. Health Ass'n,*
 145 S. Ct. 2658 (2025) ............................................................. 14-15

*Norton v. Southern Utah Wilderness All.,*
 542 U.S. 55 (2004) ......................................................................... 12

*Venetian Casino Resort, LLC v. EEOC,*
 530 F.3d 925 (D.C. Cir. 2008) ........................................................ 10

*Whitman v. American Trucking Ass'ns,*
 531 U.S. 457 (2001) ......................................................................... 9

*Youngstown Sheet & Tube Co. v. Sawyer,*
    343 U.S. 579 (1952) ........................................................................... 16

**Statutes:**

Administrative Procedure Act (APA):
    5 U.S.C. § 551(4) ................................................................................ 9
    5 U.S.C. § 551(13) .............................................................................. 9
    5 U.S.C. § 702 ..................................................................................... 9
    5 U.S.C. § 706(1) .................................................................... 3, 14, 17

**Other Authority:**

*D.C. Circuit Handbook of Practice and Internal Procedures* (2025) ......................18

# GLOSSARY

APA                     Administrative Procedure Act

CFPB                    Consumer Financial Protection Bureau

## INTRODUCTION AND SUMMARY

"To promote the President's deregulatory agenda, the Consumer Financial Protection Bureau undertook a series of actions to substantially downsize the agency" in early 2025. Op. 3. Although factual disputes exist surrounding those actions, all the parties and both the majority and dissenting opinions agree that the Executive Branch lacks power to unilaterally abolish CFPB based on policy disagreements with Congress's choices. Op. 27. Accordingly, this case does not involve any claim that "[a]gency officials" could "wipe" the statutory "provisions [regarding CFPB] off the books"; as the majority emphasized, it is clear that they "cannot." *Id.*

Instead, this case concerns whether plaintiffs can bring an APA or constitutional claim challenging an entirely nonbinding—and even on plaintiffs' telling, promptly countermanded—purported decision to close CFPB that the district court found the Acting Director made in the days after assuming office. The panel majority applied settled law to conclude that they cannot. The panel explained that even assuming the district court correctly found "that interim CFPB leadership at one point made an abstract decision to shut down the Bureau," Op. 33-34, multiple, independent,

established doctrines make clear that any such decision is unreviewable under the APA: it was not an "agency action" under the APA, it was not "final," it was not "discrete," and it was not "ripe." Equally well-settled are the principles the majority applied to correctly reject plaintiffs' attempt to put a constitutional label on their arguments that the putative shutdown decision violates statutes. However framed, arguments that the Executive has failed to adhere to statutory commands are statutory claims triggering *ultra vires* review's stringent requirements, which plaintiffs do not even attempt to satisfy.

In their en banc petition, plaintiffs ignore the multiple grounds on which the panel concluded APA review is unavailable. Instead, they attack a straw man, asking this Court to reject a novel "statement rule" the panel did not apply and affirmatively disclaimed. Disregarding the panel's correct and factbound identification of several familiar APA defects, plaintiffs urge this Court to grant rehearing en banc to announce a novel rule of their own. On plaintiffs' theory, rather than challenging an agency's "discrete decisions that may have caused them harm," they must be permitted to "dress up" such "'individual actions' as a single decision in order to challenge all of them at once," thus enabling them to secure a sweeping remedy preventing

the agency from taking even concededly lawful steps. Op. 31 (quoting *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 893 (1990)). No principle of administrative law permits litigants to secure such programmatic judicial supervision of the Executive's discharge of its statutory responsibilities. As the majority explained, if CFPB ever unlawfully ceases to perform a mandatory statutory duty, plaintiffs can remedy any resultant injury through an APA action under 5 U.S.C. § 706(1) to compel the performance of such duties. *See* Op. 34-35. Plaintiffs' dissatisfaction with that well-established route is hardly a basis for an en banc proceeding.

Equally unworthy of further review is plaintiffs' attempt to evade these APA limits by recasting their statutory complaints as an equitable constitutional claim. The panel correctly applied *Dalton v. Specter*, 511 U.S. 462 (1994), to conclude that plaintiffs' allegations that CFPB's actions conflict with its organic statute go to a statutory claim. This Court recently denied en banc review of another routine application of *Dalton* in *Global Health Council v. Trump*, No. 25-5097, 2025 WL 2709437, at *1 (D.C. Cir. Aug. 28, 2025) (per curiam), and this Court should do the same here.

## STATEMENT

Shortly after the President took office in early 2025, the new CFPB leadership "undertook a series of actions to substantially downsize the agency." Op. 3. "These actions included terminating employees, cancelling contracts, declining additional funding, [and] moving to smaller headquarters … ." *Id.* Plaintiffs did not seek judicial review of these discrete agency actions.

Instead, plaintiffs challenged what they allege was an unexpressed decision to "shut down the CFPB." Op. 27.[1] This posited decision is not in any "regulation, order, document, email, or other statement, written or oral, purporting to shut down the CFPB," but plaintiffs "infer such an overarching decision from" the other "various discrete 'actions' taken by agency leadership to downsize the Bureau." *Id.* Plaintiffs sought review both under the APA and through an equitable cause of action.

---

[1] Plaintiffs also challenged a February 10 "stop work" order, which the panel held is not a reviewable final agency action. Op. 25-26; *see* Dissent 26 (concluding that "the gravamen" of plaintiffs' claim is the alleged shutdown decision and that "resolving this case does not require analyzing that [Stop Work] Order separately under the APA"). Plaintiffs do not suggest the en banc Court should reconsider that conclusion.

The district court accepted plaintiffs' arguments, finding "that interim CFPB leadership at one point made an abstract decision to shut down the Bureau," Op. 33-34, and that plaintiffs were likely to succeed on their APA and equitable separation-of-powers claims. The district court entered a wide-ranging preliminary injunction that did not target the putative shutdown decision, instead focusing on various agency actions that were not themselves directly challenged, requiring the reinstatement of "all probationary and term employees," barring CFPB "from firing any employee except for cause" or "instituting any work stoppage," and compelling the rescission of "all contract terminations," along with various provisions mandating employee access to office space or remote-work means. Op. 10.

On appeal, the government argued, *inter alia*, that the district court clearly erred in finding that defendants decided to close the agency entirely and that plaintiffs lacked a cause of action. Joined by Judge Rao, Judge Katsas explained that while the panel was "reluctant to conclude that the district court's factual assessments were clearly erroneous," that putative shutdown decision was not a "reviewable decision" under the APA even assuming it had occurred, Op. 27-28, because it was not an "agency action"

and it was not "final," "discrete," or "ripe."  Op. 28-33.  The panel further held that while "equitable claims that a federal agency has violated a federal statute" can be brought as *ultra vires* claims, "plaintiffs expressly disavow[ed] any such *ultra vires* claim."  Op. 43-44.  Plaintiffs instead sought equitable review of a constitutional claim, but the panel explained that the "supposed separation-of-powers violation turns entirely on whether CFPB officials violated the governing statutes" making it an *ultra vires* claim under *Dalton v. Specter*, 511 U.S. 462 (1994).  Op. 47.  Judge Pillard dissented.

## ARGUMENT

## THIS COURT SHOULD DENY THE PETITION FOR REHEARING EN BANC.

The panel's opinion is correct and consistent with the decisions of this Court and the Supreme Court, applying ordinary APA and equitable doctrines to the facts as the district court found them.  Should CFPB unlawfully cease performing its mandatory statutory duties, plaintiffs may challenge such a failure within the APA's well-established limits.  Plaintiffs' dissatisfaction with those limits is hardly a reason for the en banc court to intervene.  The petition for rehearing en banc should be denied.

### A. The Panel Correctly Applied Ordinary APA Principles.

#### 1. Plaintiffs' Petition Mischaracterizes The Panel's APA Analysis.

As the panel explained—and plaintiffs do not contest—under decades-old precedent, the APA cabins judicial review to "agency actions" that are "final," "ripe for review," and "discrete." Op. 18-20. The panel assumed the district court correctly found that agency leadership at one point decided to close CFPB entirely, but concluded plaintiffs' APA challenge to this purported shutdown decision fails all four of these requirements. *See* Op. 28-35. Each of these four conclusions supports the panel's holding that plaintiffs' APA claim is not reviewable.

Rather than engage with these legal conclusions or the longstanding precedent on which they are based, the petition for rehearing attacks a straw man, asserting that the panel's careful analysis of the multiple defects in their APA claim "all boil[s] down" to what plaintiffs call a "novel public-statement rule." Pet. 9. But the panel's analysis does no such thing. The panel said so explicitly: "our analysis does not hinge on the absence of a memorandum alone." Op. 41.

Rather, the panel explained that "[e]ven if there were a memo" reflecting a shutdown decision "it would not be reviewable unless it bound the agency." Op. 41. But the uncontested facts—actions of the Acting Director and the Chief Legal Officer—illustrate there was no such binding effect here. "[J]ust three weeks after the posited shutdown decision," the agency's Chief Legal Officer "instructed employees to perform all legally required work." Op. 41-42. The Dissent so acknowledged. *Id*. The Acting Director himself, "just one day after the decision is alleged to have occurred … took action inconsistent with a final shutdown decision," ordering an employee to perform a statutorily required task indefinitely. *Id*. Consistent with precedent, the panel's opinion reflects only that there was no final, ripe, and discrete action, and that the absence of any embodiment or announcement of a purported agency decision is merely *relevant* to—not dispositive of—the APA inquiry.

### 2. The Panel Correctly Concluded That Abstract Plans To Take Future Action Are Not Reviewable Under the APA.

Plaintiffs' petition fails to explain why any of the four legal conclusions the panel actually relied upon is incorrect, much less show that all four were incorrect.

**a.** A court may not review "an abstract decision" but is instead limited to reviewing "specific agency action, as defined in the APA." *Biden v. Texas*, 597 U.S. 785, 809 (2022); *see* 5 U.S.C. § 702. The APA defines "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Contrary to plaintiffs' suggestion, the putative, *unexpressed* decision here does not satisfy the statutory definition of a "rule." Op. 29. A "rule" must be "an agency *statement* of general or particular applicability and future effect," 5 U.S.C. § 551(4) (emphasis added); and an unannounced decision is, of course, not a "statement." *See* Op. 29. Plaintiffs' fallback argument that it is "equivalent" to a rule fares no better; as the panel held, "[u]nexpressed decisions are the opposite of, not something 'equivalent' to, such a 'statement.'" Op. 30 n.5.

Plaintiffs' reliance (at 10) on dicta from *Whitman v. American Trucking Associations*, 531 U.S. 457, 478 (2001), to support a more expansive definition of "agency action" is similarly misplaced. As the panel observed (Op. 29 n.5)—and plaintiffs do not refute—this Court in the aftermath of that dicta has repeatedly reiterated its "long recognized" holding "that the term agency action is not so all-encompassing as to authorize us to exercise

judicial review over everything done by an administrative agency." *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 19 (D.C. Cir. 2006) (alteration omitted) (quoting *Independent Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (Roberts, J.)).

Finally, plaintiffs' petition attempts to derive a rule that unexpressed, not-yet-fully-implemented decisions are nonetheless reviewable from two cases. Neither supports their novel theory. First, *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925 (D.C. Cir. 2008), offers no support for plaintiffs' assertion (at 10) that a policy is reviewable even if unembodied in a statement; as the panel correctly explained, *Venetian Casino* involved a policy that "*was* recorded" and communicated "repeatedly," Op. 36 (citing 530 F.3d at 928-29). Second, *Hispanic Affairs Project v. Acosta*—which plaintiffs did not cite before the panel—merely held that a court could review a "*de facto* policy" the agency had employed for years as clearly discernible from "extensive evidence" of "actual practice." 901 F.3d 378, 386 (D.C. Cir. 2018). These cases do not assist plaintiffs' request for APA review of an unexpressed decision reflecting officials' intentions for future agency action, rather than such actions themselves.

**b.**     Even if there had been reviewable agency action, the panel also correctly held that the "putative" "decision" was not final because, "by itself," it did not "effec[t] the termination of any employees or the cancellation of any contracts." Op. 30. Such a decision was, if anything, the beginning of a process to decide what actions to take to implement an abstract strategy, not the "'consummation' of the agency's decisionmaking process" that affected any person's rights. *See Bennett v. Spear*, 520 U.S. 154, 178 (1997).

Plaintiffs (at 8) entirely mischaracterize the panel opinion in suggesting that its finality analysis turned on whether the putative decision was announced. While the panel imagined a different agency action that would have been final, the panel's hypothetical changed more than just its announcement status. The panel distinguished between (1) a final agency action announcing the consummation of the agency's decisionmaking process regarding how to implement the decision ("Effective immediately, Bureau employees may not perform any work") as opposed to (2) a non-final public announcement akin to the unexpressed decision plaintiffs allege here ("I intend to shut down the Bureau"). *Compare* Op. 40, *with* Op. 41. A general plan of future action—no matter how firmly announced—is only a

preliminary step along the way to final action. Accordingly, cases involving termination orders with "formal legal consequence[s]," Op. 38, do not aid plaintiffs' attempt to secure review of an asserted decision to create such consequences in the future. *See* Pet. 9; Op. 37-39.

**c.** Moreover, under longstanding Supreme Court precedent, abstract, programmatic decisions are insufficiently discrete to be reviewable under the APA. *See Norton v. Southern Utah Wilderness All.*, 542 U.S. 55, 62 (2004); *National Wildlife Fed'n*, 497 U.S. at 891. Here, the panel applied such precedent to conclude that plaintiffs, having eschewed any challenges to the "discrete decisions [regarding, *e.g.*, contracts and employment] that may have caused them harm," could not "dress up these 'many individual actions' as a single decision in order to challenge all of them at once." Op. 31 (quoting *National Wildlife Fed'n*, 497 U.S. at 893). Plaintiffs' petition fails to explain why the action here is sufficiently discrete, omitting any discussion of the relevant Supreme Court precedent. Plaintiffs similarly ignore the panel's explanation that plaintiffs' panel-stage attempts to distinguish those cases fail. *See* Op. 39-40.

**d.** Finally, the panel cogently explained why the putative decision was insufficiently ripe for judicial review, largely because the "exact scope

of the putative shutdown" is unclear.  Op. 33-34.  The events that followed the asserted shutdown decision illustrate the point, with the agency expressly directing the performance of statutorily required work.  *Id.*  As the panel correctly held, a "regularly moving targe[t]" as any agency plan crystallized does "not raise issues fit for review."  Op. 34 & n.7 (noting the relevance of the "Acting Director's speedy renunciation of any intent to shut down the Bureau, backed with concrete action").

### 3.    Plaintiffs' Policy Concerns Are Misplaced.

Plaintiffs' policy concerns (at 11-12) that the panel's opinion will permit agency action to evade judicial review are misplaced.  The panel explained that it is "difficult to imagine a form of executive action" that would "inflict immediate injuries" but would not satisfy its rule.  Op. 49 n.11; *see* Op. 41.  In response, plaintiffs point (at 12) to asserted injuries attributable to concrete agency actions *other than* the posited shutdown decision, *i.e.*, to the agency's employment- and contract-related actions.  Plaintiffs' inability to challenge such decisions does not stem from the panel's routine application of well-settled APA doctrines, but rather from separate statutes channeling review of such matters to other tribunals—statutes whose

preclusive effects plaintiffs do not challenge in their petition. *See* Op. 12-15 (discussing the Civil Service Reform Act's preclusive effects).

By contrast, plaintiffs' novel attempt to circumvent such statutes and doctrines by aggregating agency decisions would vitiate traditional limits on APA review. It would significantly undermine the heightened standard required to "compel agency action unlawfully withheld," 5 U.S.C. § 706(1) — the real thrust of plaintiffs' complaint here. On plaintiffs' theory, that standard can be avoided by the simple expedient of reframing a claim as one targeting a *plan* to disregard statutory duties. And indeed, plaintiffs' casual dismissal of the availability of a § 706(1) claim if their fears of unfulfilled statutory obligations actually materialize illustrates that they seek far more than the discharge of such duties; they want to preserve CFPB in the form it has "take[n] years" to build. Pet. 16.

Such expansive remedial views highlight that it is plaintiffs, not the panel, who seek to alter the bounds of APA review. As the panel explained, even if the putative shutdown decision were reviewable, a court could set aside only that decision, not "*other* agency actions — such as a [reduction in force] announced around the same time." Op. 42; *see National Insts. of Health v. American Pub. Health Ass'n*, 145 S. Ct. 2658, 2661 (2025) (Barrett, J.,

concurring in the partial grant of a stay). A district court cannot "leverage" its APA "review from one discrete action to" set aside other actions, as the sweeping preliminary injunction at issue here does. Op. 42. Plaintiffs' contrary view (NTEU Br. 50) would contravene the APA's long-acknowledged limits to permit courts to micromanage "day-to-day management of the agency, including decisions about how many employees the agency may terminate, how many contracts it may cancel, how it may approve work, which buildings it must occupy, and how employees will complete remote work." Op. 17; *see* Op. 42-43; *National Wildlife Fed'n*, 497 U.S. at 899.

### B. Allegations That The Executive Has Contravened Statutes State *Ultra Vires*, Not Constitutional, Claims.

When APA review is unavailable, "parties aggrieved by federal agency action may seek equitable relief even without an express statutory cause of action." Op. 43. The Supreme Court has distinguished between two types of such actions: "claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Dalton v. Specter*, 511 U.S. 462, 472 (1994).

The panel correctly held that plaintiffs' claim here—that defendants' actions violated statutes creating CFPB and assigning it certain obligations—is a statutory claim (also called an *ultra vires* claim), not a constitutional one. *See* Op. 44-49. This conclusion follows from a straightforward application of *Dalton*, which rejected the argument that "whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine." 511 U.S. at 471. Another panel of this Court recently reached the same conclusion when presented with a statutory claim labeled as a constitutional claim. *Global Health Council v. Trump*, No. 25-5097, 2025 WL 2480618, at *6 (D.C. Cir. Aug. 28, 2025). This Court denied en banc review of that decision. 2025 WL 2709437, at *1.

Plaintiffs' rehearing petition relies (at 14-15) primarily on *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952), to propose a new distinction between claims that an Executive Branch decision exceeded statutory authority (which plaintiffs concede are statutory) and claims that an Executive Branch decision was made without statutory authority (which plaintiffs argue are constitutional). But this proposed distinction is one of wording, not substance. However a plaintiff might phrase their challenge, "as *Dalton* made clear, a claim that executive officials have not discharged"

their "obligation to take care that the *statutes* governing the CFPB are faithfully executed … gives rise at most to an *ultra vires* claim." Op. 49. The panel's opinion accepts that courts may entertain constitutional claims in equity where the only basis of authority asserted is the President's inherent constitutional power (as in *Youngstown*), or where there is an allegation that a statute itself has a constitutional defect (as in separation-of-powers cases like *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010)). But it rightly rejects plaintiffs' invitation to permit them to "plead around" *Dalton*'s fundamental insight that where a claim turns on the Executive's statutory obligations, the strictures on statutory claims apply. Op. 49 n.11.[2] Plaintiffs' own decision to "expressly disavow any … *ultra vires* claim," Op. 44, means that the panel had no occasion to consider

---

[2] The dissent's suggestion (at 54-55) that the majority's application of *Dalton* would have permitted President Truman to evade judicial review by simply "den[ying] having ordered any nationalization" of steel mills mistakes the nature of the putative Executive action at issue here, which is a nonbinding and unfulfilled plan. As the panel suggested, where "conclusive" Executive actions "inflict immediate injuries"—such as if steel mills were actually seized—they would "support judicial review, through the APA or otherwise." Op. 49 n.11. And the majority repeatedly emphasized that just such a route to judicial review here does indeed exist if plaintiffs' feared closure of CFPB actually occurs: an action under 5 U.S.C. § 706(1). Op. 17, 35, 39 n.8.

whether their claim here could satisfy those strictures. And certainly nothing in the panel opinion renders courts "incapable," Pet. 15, of reviewing and, where appropriate, redressing *ultra vires* claims.

### C. This Case Does Not Meet The Criteria For En Banc Review.

The panel's opinion is not only correct, it fails to satisfy the criteria for en banc review. Petitions for rehearing en banc are "rarely granted" and "ordinarily will be allowed only if" the panel decision conflicts with precedent or involves a question of exceptional importance. *D.C. Circuit Handbook of Practice and Internal Procedures* 58 (2025).

The panel opinion faithfully applies existing precedent. It does not announce a "novel statement rule," Pet. 11, or "enabl[e] agencies to avoid judicial scrutiny of virtually any decision, simply by choosing not to memorialize it," Pet. 16. As discussed, while the panel doubted that "a secret decision not memorialized in any public statement, written or oral" could produce the type of effects that support judicial review, it clearly held that its "analysis does not hinge on the absence of a memorandum alone." Op. 41. The panel's application of settled APA doctrines regarding final,

discrete, ripe agency action to the facts the district court found does not warrant en banc review.

Nor does the panel's application of the law to these facts conflict with any circuit or Supreme Court precedent. The cases plaintiffs rely upon are readily distinguishable, and plaintiffs generally fail to address the panel's reasons for distinguishing them. *See* Op. 35-39. It is instead plaintiffs who would contravene long-settled doctrines of judicial review. Their expansive view of the APA would allow artful pleading to vitiate the final-agency-action requirement, circumvent § 706(1)'s standards, and permit routine multi-day evidentiary hearings to examine the mental processes of Executive Branch officials. And their blinkered reading of *Dalton* would allow plaintiffs to evade the strictures of *ultra vires* review.

Finally, plaintiffs' assertion (at 15-16) that case-specific reasons make en banc review "urgently needed" is baseless. It turns on plaintiffs' unexplained contention that the APA's usual remedies when an agency unlawfully fails to perform a mandatory duty are inadequate; plaintiffs are "not clear how that would work." Pet. 16. But plaintiffs' inability to imagine a properly tailored judicial order under § 706(1) to perform discrete agency actions Congress required of CFPB does not mean such remedies do not

exist.  And plaintiffs' own tactical choices mean that *ultra vires* review and any attendant remedies are not at issue in this appeal.  This Court should decline to grant rehearing en banc to accept plaintiffs' proposal to create new doctrines allowing plaintiffs to circumvent the careful limits on judicial review that Congress enacted into the APA and other statutes.

## CONCLUSION

The petition for rehearing en banc should be denied.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
MELISSA N. PATTERSON
DEREK WEISS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7230*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-5365*

October 2025

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limit of Federal Rule of Appellate Procedure 40(d)(3)-(4) because it contains 3,878 words. This response also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Book Antiqua, a proportionally spaced typeface.

*/s/ Derek Weiss*
Derek Weiss