**No. 25-5091**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————

NATIONAL TREASURY EMPLOYEES UNION, *et al.*

Plaintiffs-Appellees,

v.

RUSSELL VOUGHT, in his official capacity as Acting Director of the Consumer Financial Protection Bureau, *et al.*

Defendants-Appellants.

———————

On Appeal from the United States District Court
for the District of Columbia

———————

**BRIEF OF AMICI CURIAE AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES; AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES; AMERICAN FOREIGN SERVICE ASSOCIATION; AND THE NEWSGUILD-COMMUNICATIONS WORKERS OF AMERICA IN SUPPORT OF PLAINITFFS-APPELLEES**

———————

|  |  |
|---|---|
| *(Additional counsel listed on signature block)* | TEAGUE PATERSON<br>MATTHEW BLUMIN<br>GEORGINA YEOMANS<br>AMERICAN FEDERATION OF STATE,<br>COUNTY, AND MUNICIPAL EMPLOYEES,<br>AFL-CIO (AFSCME)<br>1625 L Street, N.W.<br>Washington, D.C. 20036<br>(202) 775-5900 |

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), amici curiae certify as follows:

## A. Parties and Amici

Apart from the amici curiae listed below and any amici who have not yet entered an appearance in this case, all parties, intervenors, and amici appearing in this Court are listed in the En Banc Brief of Plaintiffs-Appellees.

- American Federation of State, County, and Municipal Employees
- American Federation of Government Employees
- American Foreign Service Association
- The NewsGuild-CWA

## B. Ruling under review

Reference to the ruling at issue appears in the En Banc Brief of Plaintiffs-Appellees.

## C. Related Cases

Reference to any related cases pending before this Court appears in the En Banc Brief of Plaintiffs-Appellees.

Respectfully submitted,

*s/ Georgina Yeomans*
Georgina Yeomans

# RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Amici Curiae American Federation of State, County, and Municipal Employees ("AFSCME"); American Federation of Government Employees ("AFGE"); American Foreign Service Association ("AFSA"); and The NewsGuild-CWA ("TNG-CWA") make the following disclosures:

Amicus Curiae AFSCME is a national labor organization and unincorporated membership association headquartered in Washington, D.C. AFSCME is the largest trade union of public employees in the United States.

Amicus Curiae AFGE is a labor organization and unincorporated association headquartered in Washington, D.C. AFGE is the largest federal employee union.

Amicus Curiae AFSA is a professional association and labor organization headquartered in Washington, D.C. AFSA is the sole labor organization for the United States Foreign Service.

Amicus Curiae TNG-CWA is a labor union representing more than 27,000 employees. It is the largest labor union representing journalists and media workers in North America.

No Amicus Curiae has a parent corporation, and no publicly held company owns 10% or more of any amici's stock.

## CERTIFICATE OF COUNSEL

Amici curiae represent under D.C. Circuit Rule 29(d) that this separate amicus brief is warranted. Amici are unaware of any other amicus brief in support of Plaintiffs-Appellees that will address the jurisdictional arguments regarding jurisdiction-stripping by implication addressed herein.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................v

INTEREST OF AMICI CURIAE ..............................................................................1

INTRODUCTION ....................................................................................................3

LEGAL BACKGROUND .........................................................................................4

ARGUMENT ..........................................................................................................12

    I.    Claims by CFPB employees' representatives are not channeled............13

    II.    Claims by parties who rely on CFPB services and have no relationship
        to federal employment are not channeled. ..............................................19

    III.    Fundamental assumptions underlying the CSRA have been eroded,
        rendering administrative channels particularly inappropriate fora for this
        dispute. ....................................................................................................21

    IV.    The *en banc* Court should provide guidance to the district courts and
        future panels on administrative channeling. ...........................................26

CONCLUSION.......................................................................................................28

CERTIFICATE OF COMPLIANCE.......................................................................30

CERTIFICATE OF SERVICE ...............................................................................31

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner,*
387 U.S. 136 (1967)……………………………………………………………..21

*Abdelfattah v. U.S. Dep't of Homeland Sec.,*
787 F.3d 524 (D.C. Cir. 2015)…………………………………………………..7

*Am. Fed'n of Gov't Emps. v. Trump,*
139 F.4th 1020 (9th Cir. 2025)…………………………..……......9, 10, 13, 18

*Am. Fed'n of Gov't Emps. v. Trump,*
784 F. Supp. 3d 1316 (N.D. Cal.)…………………………………...............10

*Am. Fed'n of Gov't Emps. v. Trump,*
155 F.4th 1082 (9th Cir. 2025)………………………………………………...10

*Am. Fed'n of Gov't Emps. v. Trump,*
929 F.3d 748 (D.C. Cir. 2019)………………………………………14, 16, 18

*Andrade v. Lauer,*
729 F.2d 1475 (D.C. Cir. 1984)…………………………………………………7

*Axon Enter., Inc. v. Fed. Trade Comm'n,*
598 U.S. 175 (2023)…………………………………………..5, 6, 8, 9, 14, 16, 17, 18

*Bowen v. Mich. Acad. of Family Physicians,*
476 U.S. 667 (1986)……………………………………………………...16

*Bullock v. Dep't of Air Force,*
80 M.S.P.R. 361 (1998)……………………………………………………..17

*Carr v. Saul,*
593 U.S. 83, 92 (2021)………………………………………………………...18

*Carducci v. Regan,*
714 F.2d 171 (D.C. Cir. 1983)…………………………………………………15

*Church of Scientology of Cal. v. IRS,*
    792 F.2d 153 (D.C. Cir. 1986)…….…………………………………………..27

*Cmty. Servs. Admin.,*
    7 F.L.R.A. 762 (1982)………………………………………………………17

*Dellinger v. Bessent,*
    768 F. Supp. 3d 33 (D.D.C. 2025)…………………………………………..23

*Elgin v. Dep't of Treasury,*
    567 U.S. 1 (2012)……………………………………………...…….5, 6, 20

*Fed. L. Enf't Officers Ass'n v. Ahuja,*
    62 F.4th 551 (D.C. Cir. 2023)………………………………………………15

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
    561 U.S. 477 (2010)……………………………………………………..5, 9

*Grundmann v. Bessent,*
    770 F. Supp. 3d 166 (D.D.C. 2025)…………………………………………24

*Harris v. Bessent,*
    160 F.4th 1235 (D.C. Cir. 2025)…………………………………………..23, 25

*Hubbard v. EPA Adm'r,*
    809 F.2d 1 (D.C. Cir. 1986)………………………………………………..7

*In re Aiken County,*
    725 F.3d 255 (D.C. Cir. 2013)………………………………………………13

*Jackler v. Dep't of Justice,*
    No. DA-0752-25-0330-I-1 (M.S.P.B.)………………………………………...24

*Jaroch v. Dep't of Justice,*
    No. DA-0752-25-0328-I-1 (M.S.P.B.)………………………………………...25

*Lucas v. Am. Fed'n of Gov't Emps.,*
    151 F.4th 370 (D.C. Cir. 2025)…………………………………………15, 19

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,*
    567 U.S. 209 (2012)………………………………………………………7, 15, 21

*McMahon v. New York,*
    606 U.S. ---, 145 S. Ct. 2643 (July 14, 2025)…...………………………11, 27

*Nat'l Ass'n of Immigr. Judges v. Owen,*
    139 F.4th 293 (4th Cir. 2025)…………………………………………5, 6, 26

*Nat'l Treasury Emps. Union v. Vought,*
    149 F.4th 762 (D.C. Cir. 2025)…………………………………………..19

*New York v. Kennedy,*
    155 F.4th 67 (1st Cir. 2025)…………………………………………...10

*New York v. McMahon,*
    784 F. Supp. 3d 311 (D. Mass. 2025)……………………………………...11, 27

*Off. of Personnel Mgmt. v. Am. Fed'n of Gov't Emps.,*
    145 S. Ct. 1914 (2025)…………………………………………………...11

*Sackett v. E.P.A.,*
    566 U.S. 120, 129 (2012)……………………………………………...21

*Spagnola v. Mathis,*
    859 F.2d 223 (D.C. Cir. 1988)……………………………………………..7

*Steel Co. v. Citizens for Better Env't,*
    523 U.S. 83 (1998)……………………………………………………10

*Thunder Basin Coal Co. v. Reich,*
    510 U.S. 200 (1994)…………………………………………...3, 4, 5, 8, 16

*Trump v. Am. Fed'n of Gov't Emps.,*
    606 U.S. ---, 145 S. Ct. 2635 (2025) ………………………………9, 10, 11, 27

*United States v. Fausto,*
    484 U.S. 439, 447 (1988)……………………………………….....6, 20, 22

*United States v. Nat'l Treasury Emps. Union,*
    513 U.S. 454 (1995)……………………………………………….....7

*U.S. Army Corps of Eng'rs v. Hawkes Co.,*
    578 U.S. 590 (2016)……………………………………………15, 21

*Webster v. Doe,*
    486 U.S. 592 (1988)………………………………………………...20

*Weaver v. U.S. Info. Agency,*
    87 F.3d 1429 (D.C. Cir. 1996)……………………………………7

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.,*
    586 U.S. 9 (2018)………………………………………………...16

*Widakuswara v. Lake,*
    No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025)………………...14, 17

*Youngstown Sheet & Tube Co. v. Sawyer,*
    343 U.S. 579 (1952)………………………………………………...13

*Ziglar v. Abbasi,*
    582 U.S. 120 (2017)………………………………………………...11

**Statutes**

5 U.S.C. § 1101……………………………………………………………1

5 U.S.C. § 1103……………………………………………………….....5

5 U.S.C. § 1105……………………………………………………….....5

5 U.S.C. § 1202………………………………………………………..23

5 U.S.C. § 1204………………………………………………………12, 23

5 U.S.C. § 1211………………………………………………………...23

5 U.S.C. § 1212……………………………………………………….....5

5 U.S.C. § 7104………………………………………………………...23

5 U.S.C. § 7105……………………………………………………......5

5 U.S.C. § 7123……………………………………………………...16

5 U.S.C. § 7134……………………………………………………......5

5 U.S.C. § 7513……………………………………………………...23

5 U.S.C. § 7703……………………………………………………16, 23

**Other Authorities**

90 Fed. Reg. 10447 (Feb. 18, 2025)…………………………………24

H. Rep. 95-1403 (1978)……...……..………………………………..23

S. Rep. 95-969 (1978)………………………………………………..5, 22

Office of Legal Counsel, *The Merit System Protection Board's Authority*
   *to Adjudicate Constitutional Questions within an Administrative Proceeding*
   (Sept. 26, 2025)……………………………………………………..24

Statement of Justice Department Chief
   of Staff Chad Mizelle, Dep't of Justice (Feb. 20, 2025). ..………………………25

# INTEREST OF AMICI CURIAE[1]

Amici curiae are four labor unions whose members have been harmed by the federal government's unprecedented actions to reorganize itself without Congressional authority: the American Federation of State, County, and Municipal Employees (AFSCME); the American Federation of Government Employees (AFGE); the American Foreign Service Association (AFSA); and The NewsGuild-Communications Workers of America (TNG-CWA).

Amici are parties to *Widakuswara v. Lake*, No. 25-5144, a case pending in this Court and in which the government has raised substantially similar implied statutory preclusion arguments under the Civil Service Reform Act (CSRA), 5 U.S.C. § 1101 et seq., as those raised here. In *Widakuswara*, AFSCME, AFGE, and AFSA all represent federal employees who have been adversely affected by sweeping agency action aimed at the dismantlement of the U.S. Agency for Global Media (USAGM), an independent executive agency; each of these three amici represents a bargaining unit of employees of USAGM as the certified collective bargaining representative of that unit under federal labor law. The government has argued that the CSRA, or in the case of AFSA, the Foreign Service Act, impliedly

---

[1] No party's counsel authored this brief in whole or in part and no party or party's counsel, or any other person other than amici curiae, their members or their counsel, contributed money that was intended to fund preparing or submitting this brief.

precludes district court jurisdiction over these unions' claims in terms nearly identical to those raised here.

TNG-CWA represents journalists throughout the country who travel abroad to report on international news stories and relied on the now largely silent reporting USAGM once produced and broadcast to stay safe and informed while abroad. It also represents employees of Radio Free Asia, a third-party private grantee broadcaster funded by USAGM. TNG-CWA does not represent any employees of USAGM itself. Nevertheless, in *Widakuswara,* the government has argued that TNG-CWA and its members are entirely precluded by the CSRA from challenging the agency's allegedly unlawful decision to shutter many of its vital operations.

AFSCME, AFGE, and AFSA are also parties to other cases pending in this Court or in the District Court for the District of Columbia in which the government has raised administrative channeling as a barrier to district court jurisdiction over claims brought as representatives of federal employees and over claims brought as third-party beneficiaries of government services. *See, e.g., Am. Fed'n of Gov't Emps. v. Trump*, No. 25-5290 (D.C. Cir.) (AFGE and AFSA, as representatives of federal employees, challenging shuttering of U.S. Agency for International Development); *Am. Library Ass'n v. Sonderling*, 1:25-cv-01050-RJL (D.D.C.) (AFSCME, as representative of third-party beneficiaries of government services,

challenging substantial dismantlement of the Institute for Museum and Library Services).

Amici thus have a significant interest in the Court's proper resolution of the implied statutory preclusion arguments the Defendants advance here.

## INTRODUCTION

Defendants argue that the district court lacked jurisdiction over this entire dispute because it is channeled to an administrative adjudicatory scheme under the CSRA by virtue of the doctrine established by *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). Accepting that argument would require this Court to extend *Thunder Basin* in a manner the Supreme Court has recently declined to do, and would leave district courts without authority to adjudicate recurring issues of executive overreach. Congress never intended that result when it passed the CSRA. This Court should reject Defendants' arguments and hold that the district court properly exercised jurisdiction in this case.

This case, in which the labor union representatives of employees of the Consumer Financial Protection Bureau (CFPB), joined by members of the public who rely on CFPB services, challenge the agency's decision to dismantle itself, does not belong in any administrative channel created by the CSRA. The Supreme Court has never held that a challenge to sweeping unlawful agency action that threatens the very existence of an executive agency must proceed before

administrative tribunals. And Defendants have cited no case holding that parties who are not federal employees may also be deprived of district court jurisdiction by the CSRA. In fact, in recent months, the Supreme Court has twice been asked—and twice declined—to adopt Defendants' position.

The lack of authority for Defendants' position is unsurprising. As to the federal employees' claims, the circumstances animating this case do not align with the considerations the Supreme Court set forth in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), to guide courts in assessing whether claims are channeled through administrative processes. And as to third-party claims, there is no basis to conclude that the CSRA stripped third parties of their constitutional rights or of their right to invoke the Administrative Procedure Act's (APA) capacious review provisions. Moreover, events over the past year have undermined the guarantees of impartiality that are the bedrock of CSRA administrative processes, firmly undermining any inference that these claims should be channeled. The *en banc* Court should reject Defendants' jurisdictional arguments.

## LEGAL BACKGROUND[2]

The CSRA was enacted in 1978 to ensure fairness and impartiality in the federal government's relations with its career workforce. *See Nat'l Ass'n of*

---

[2] Amici adopt, without repeating, the facts as set forth in Plaintiffs-Appellees' brief. *See* Circuit Rule 29(a).

*Immigr. Judges v. Owen*, 139 F.4th 293, 306 (4th Cir. 2025) (citing S. Rep. 95-969, at 2-3 (1978)). It created the Merit System Protection Board (MSPB), the Office of Special Counsel (OSC), and the Federal Labor Relations Authority (FLRA), each of which plays a role in the resolution of specific types of disputes between federal employees or their labor representatives and the employing agencies. *See* 5 U.S.C. § 1204 (powers and functions of MSPB); 5 U.S.C. § 1212 (powers and functions of OSC); 5 U.S.C. § 7105 (powers and duties of FLRA). These agencies have defined roles, with respect to specific types of claims and disputes, and do not act as courts of general jurisdiction to adjudicate any and every issue affecting federal employees.

The CSRA was also enacted against the backdrop of the longstanding protections and requirements of the APA, and indeed, references and incorporates the APA in at least three places. *See* 5 U.S.C. §§1103, 1105, 7134. No provision of the CSRA expressly precludes jurisdiction of Article III courts over federal claims, including claims challenging agency action under the APA.

The Supreme Court has rarely held that specific federal claims are impliedly precluded by the creation of an administrative adjudicatory agency process under the framework established by *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). *See Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 185 (2023); *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11-12 (2012); *Free Enter. Fund v. Pub. Co.*

*Acct. Oversight Bd.*, 561 U.S. 477, 490–91 (2010). In *Elgin*, the Court evaluated

the CSRA under this implied preclusion framework and held that "the CSRA

provides the exclusive avenue to judicial review when a qualifying employee

challenges an adverse employment action by arguing that a federal statute is

unconstitutional." 567 U.S. at 5. The Court reasoned in that case that "the CSRA

grants the MSPB and the Federal Circuit jurisdiction over petitioners' appeal

because they are covered employees challenging a covered adverse employment

action." *Id*. at 21. *Elgin* built on the Supreme Court's holding in *United States v.*

*Fausto*, 484 U.S. 439, 447 (1988), a case that pre-dates *Thunder Basin*, in which

the Supreme Court reconciled the CSRA with the Backpay Act, and held that

employees for whom Congress did not provide a remedy under the CSRA could

not seek remedies through the Backpay Act. 484 U.S. at 443.

Neither *Elgin* nor *Fausto* suggests, as the government argues, that any

claims "vindicating injuries related to federal employment" or "employment-

related" challenges are foreclosed by virtue of their subject-matter alone.

Appellees' En Banc Br. at 26-27. Instead, the Court has explained that implied

preclusion requires close analysis of the type of claim at issue and cautioned that

statutes do not categorically bar federal jurisdiction over any claims by

implication. *See Axon*, 598 U.S. at 185 ("[A] statutory review scheme . . . does not

necessarily extend to every claim concerning agency action."); *see also Match-E-*

*Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 216 (2012) ("We have never held, and see no cause to hold here, that some general similarity of subject matter can alone trigger a remedial statute's preclusive effect.").

The Supreme Court has accordingly reached the merits of a First Amendment challenge brought by a federal-employee union against a governmental ban on honoraria, without questioning its jurisdiction, despite deciding the case one year after *Thunder Basin*. *See United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454 (1995). And this Court has held that the CSRA's administrative scheme does not preclude district court jurisdiction over federal employees' claims under the Privacy Act, *Hubbard v. EPA Adm'r*, 809 F.2d 1, 5 (D.C. Cir. 1986); under the Appointments Clause, *Andrade v. Lauer*, 729 F.2d 1475, 1493 (D.C. Cir. 1984); or under the First Amendment in the case of pre-enforcement challenges to prior restraints on speech, *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1433-34 (D.C. Cir. 1996). *See also Spagnola v. Mathis*, 859 F.2d 223, 229 (D.C. Cir. 1988) (declining to "suggest that the CSRA precludes the exercise of federal jurisdiction over the constitutional claims of federal employees and job applicants altogether"); *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 534 (D.C. Cir. 2015) (embracing *Spagnola*).

Channeling is thus not categorical. In assessing whether Congress intended a

given claim to proceed first through administrative adjudication before being heard in federal court, the reviewing court must apply the *Thunder Basin* framework, which asks first whether there is "fairly discernible" Congressional intent within a statute's "language, structure, and purpose" to assign exclusive review to an administrative body. 510 U.S. at 207. It then asks whether the claim at issue is "of the type Congress intended to be reviewed within th[e] statutory structure." *Id*. at 212. Three guideposts inform the second half of the *Thunder Basin* jurisdictional assessment: (a) whether denying district court jurisdiction could "foreclose all meaningful judicial review" of the claim; (b) whether the claim is "entirely collateral" to the statute's review provisions; and (c) whether the claim is "outside the agency's expertise." *Id*. at 212-13. But a Court may find a claim is not channeled even "if the factors point in different directions." *Axon*, 598 U.S. at 186. Ultimately, the question is "whether the statutory review scheme, though exclusive where it applies, reaches the claim in question." *Id*.

Axon is illustrative of this claim-specific approach. In *Axon*, the Court held that parties contesting the constitutionality of administrative agencies' structure could bring their claims directly in federal court, notwithstanding the special statutory review schemes governing those agencies' actions. *Id*. at 180. In holding that the plaintiffs' claims—which  charged that the agencies were "wielding authority unconstitutionally in all or a broad swath of [their] work"—could be

brought in district court, the Court noted it would be "surprising" if challenges regarding "the structure or very existence of an agency" had to be brought first through the agency's administrative process. *Id*. at 189; *see also Free Enter. Fund*, 561 U.S. at 490 (declining to channel a constitutional challenge to the structure of the Public Company Accounting Oversight Board).

More recently, in at least two emergency docket orders in 2025, the Supreme Court declined to impliedly preclude challenges to executive overreach brought by federal employees and beneficiaries of government services, despite the Defendants' argument that the claims were channeled by the CSRA.

In *Trump v. American Federation of Government Employees*, 606 U.S. ---, 145 S. Ct. 2635 (July 8, 2025) (mem.), the Solicitor General asked the Court to stay a preliminary injunction entered by the District Court for the Northern District of California, enjoining the executive branch from reorganizing the federal government without Congressional authorization through a series of reductions in force across government agencies. *See Am. Fed'n of Gov't Emps. v. Trump*, 139 F.4th 1020, 1028-29 (9th Cir. 2025). The Solicitor General devoted a significant portion of its stay application to the argument that the dispute was channeled under the CSRA, an argument the Ninth Circuit had rejected in a published decision denying a stay. *See* Gov't Application to Stay, *Trump v. Am. Fed'n of Gov't Emps.*, 2025 WL 1569930, at *15-21 (June 1, 2025); *Am. Fed'n of Gov't Emps.*,

9

139 F.4th at 1029. Notably, the injunction that was the subject of the stay request exercised jurisdiction over claims brought by AFSCME and others on the basis of "injury on behalf of their federal employee members who have received RIF notices" and "on behalf of their non-federal employee members who stand to lose their jobs as a result of federal workforce reductions." *Am. Fed'n of Gov't Emps. v. Trump*, 784 F. Supp. 3d 1316, 1334 (N.D. Cal.) (subsequent history omitted).

In granting the stay application, the Court said nothing about its jurisdiction, instead holding that the government was likely to prevail in defending the legality of its conduct before the Court. *See* 145 S. Ct. 2635. The Court then stated that it was not reaching additional claims in the case challenging the legality of the application of those central directives, which Justice Sotomayor explained in her concurrence "leaves the District Court free to consider" those issues. *Id*. Other Circuits were quick to pick up on the implication that "the Supreme Court likely decided that the CSRA did *not* funnel the dispute at issue . . . to the MSPB." *New York v. Kennedy*, 155 F.4th 67, 75 (1st Cir. 2025) (emphasis in original); *see also Am. Fed'n of Gov't Emps. v. Trump*, 155 F.4th 1082, 1092 (9th Cir. 2025) (allowing discovery to proceed on remand from Supreme Court). That implication is bolstered by the fact that "[w]ithout jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94 (1998).

Days later, the Court resolved another emergency application from the

Solicitor General asking the Court to stay a preliminary injunction entered by the District Court for the District of Massachusetts enjoining the executive's actions to shut down the Department of Education. *See New York v. McMahon*, 784 F. Supp. 3d 311, 324 (D. Mass. 2025) (entering preliminary injunction) (subsequent history omitted). The challenge was brought not by federal employees, but by states and third-party beneficiaries of government services, including public-school employees who are AFSCME members. *Id.* at 338-41. Again the Solicitor General advanced a channeling argument. *See* Gov't Application for Stay, *McMahon v. New York*, 2025 WL 1632131, at *25-30 (June 1, 2025). But instead of announcing that challenges to executive action implicating personnel are categorically channeled, the Court stayed the preliminary injunction without explanation. *McMahon v. New York*, 606 U.S. ---, 145 S. Ct. 2643 (mem.) (July 14, 2025).[3]

The Supreme Court's caution with respect to channeling reflects the Court's increasing unwillingness to craft implied doctrines from divinations of Congressional purpose. *See Ziglar v. Abbasi*, 582 U.S. 120, 132 (2017).

---

[3] Earlier in the year, the Court likewise declined to accept the government's invitation to address channeling when granting a stay of an injunction halting the unlawful termination of probationary employees. It instead stayed the injunction on standing grounds. *Off. of Personnel Mgmt. v. Am. Fed'n of Gov't Emps.*, 145 S.Ct. 1914 (April 8, 2025).

# ARGUMENT

Against this backdrop, Defendants ask this Court to hold that Congress implicitly stripped district courts of their jurisdiction over claims challenging the dismantling of an entire federal agency merely because the claims implicate federal employment, regardless of whether those claims are brought by federal employees or third-party recipients of government services.

Channeling such a claim by either type of litigant would dramatically expand CSRA channeling at a time when the Supreme Court itself has declined to take that step. The Court has never held that federal employees' objection to the dismantling of their employer agency is channeled to agency adjudication under *Thunder Basin*. Nor do Defendants cite any authority to support their argument that *Thunder Basin* precludes third parties with no relationship to federal employment from challenging agency action that implicates federal personnel matters. There is no reason to extend channeling to preclude this case. Indeed, recent events have undermined the independence that is the bedrock of agency adjudication under the CSRA, rendering the government's requested extension of channeling doctrine particularly inappropriate. The *en banc* Court should take this opportunity to repudiate Defendants' overbroad reading of *Thunder Basin* and hold that the district court properly exercised jurisdiction over all parties' claims in this case.

## I. Claims by CFPB employees' representatives are not channeled.

Defendants attempt to frame this case as a "federal employment dispute[]" and a challenge to "labor management practices." Appellees' En Banc Br. at 26, 28. That superficial description ignores the Plaintiffs' actual claims and what is truly at stake. The Plaintiffs have sued to halt a "Presidential plan to shut the [CFPB] down entirely and to do it fast." JA634. They allege a stunning arrogation of legislative power by the executive branch, breaching a boundary that the courts have historically guarded. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring) (noting courts' role in "scrutiniz[ing] with caution" a "Presidential claim to power at once so conclusive and preclusive . . . for what is at stake is the equilibrium established by our constitutional system."); *see also In re Aiken County*, 725 F.3d 255, 259 (D.C. Cir. 2013) (Kavanaugh, J.) (noting courts' role in enforcing "basic constitutional principles" that "apply to the President and subordinate executive agencies").  Plaintiffs' claims challenging the high-level agency decisions to dismantle this agency, and the directives ordering implementation, are grounded in the Constitution and the APA, and are not within the scope of the CSRA, even if the collateral effect of those decisions results in personnel actions. *See Trump*, 139 F.4th at 1031 ("Plaintiffs are not challenging those employment decisions with respect to individual employees. Rather, they are

challenging Defendants' constitutional and statutory authority to . . . take such actions in the first place.").

a. Applying *Thunder Basin*'s first step, it is hardly discernible from the text of the CSRA that Congress intended to silently hoist the weight of guarding against executive branch overreach onto a subpart of the executive branch, silently eliminating the responsibility previously granted to a co-equal branch of government. *See Am. Fed'n of Gov't Emps. v. Trump*, 929 F.3d 748, 755 (D.C. Cir. 2019) (courts "can fairly discern that Congress intended [the CSRA's] statutory scheme to be exclusive with respect to claims *within its scope*") (emphasis added). This case is not an aggregation of individual employment disputes or a clash over labor-management policy; it is a challenge going "to the core of the [CFPB's] existence" and a "charge that an agency is wielding authority unconstitutionally." *Axon*, 598 U.S. at 189. The only commonality between the issues addressed by the CSRA and the claims at issue here is a commonality in subject matter regarding one of the many resulting injuries from the challenged decisions, and that has "never" been sufficient to imply preclusion. *Patchak*, 567 U.S. at 216. Implied preclusion is therefore simply inapposite to the Plaintiffs' claims that the CFPB has unilaterally decided to shutter itself, in violation of the separation of powers and the APA. *Cf. Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *7 (D.C. Cir. May 3, 2025) (Pillard, J., dissenting) (subsequent history omitted).

Defendants may argue that federal employees are barred entirely from bringing APA claims against their employer agencies under this Court's precedent, but that argument would overread the relevant caselaw, which does not address claims like those at issue here. This Court has held that the CSRA stripped district courts of jurisdiction over APA claims brought by federal employees challenging agency personnel actions that amount to federal personnel disputes. *See Carducci v. Regan*, 714 F.2d 171, 172 (D.C. Cir. 1983). It has warned that holding otherwise could allow a "savvy litigant [to] recast" a CSRA-covered dispute as an APA claim, "giving rise to a parallel proceeding in district court." *Lucas v. Am. Fed'n of Gov't Emps.*, 151 F.4th 370, 384 (D.C. Cir. 2025). But this Court has never held that the CSRA categorically erased federal employees' ability to bring APA claims against their employing agency, no matter the circumstances of the case. Instead, when confronted with an APA claim brought by a federal employee or union against the employing agency, this Court has applied the *Thunder Basin* framework, faithfully acknowledging that it is a claim-specific analysis. *See, e.g.*, *Fed. L. Enf't Officers Ass'n v. Ahuja*, 62 F.4th 551, 558-65 (D.C. Cir. 2023) (assessing each of Plaintiffs' APA challenges to method of apportioning retirement benefits under *Thunder Basin* factors). That careful claim-by-claim approach makes sense, given that the APA carries a strong presumption of judicial review of agency action that is not easily overcome. *See U.S. Army Corps of Eng'rs v.*

*Hawkes Co.*, 578 U.S. 590, 601 (2016); *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 22-23 (2018); *see also Axon*, 598 U.S. at 186 ("The first *Thunder Basin* factor recognizes that Congress rarely allows claims about agency action to escape effective judicial review.") (citing *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986)).

b. Thus, even if the Court were to hold that the mere employment relationship between the Plaintiffs' members and the Defendants places this case within the CSRA's ambit, it must still apply the *Thunder Basin* step two analysis, which makes clear that the constitutional and APA claims at issue are not of the type Congress intended to channel through the MSPB or FLRA. *See* 510 U.S. at 212-13.

First, denying district court jurisdiction would foreclose all meaningful judicial review. *Id*. This is a case about reviving a Congressionally mandated independent agency. Plaintiffs could not get the relief they seek—an order that CFPB resume functioning—through either the MSPB or FLRA. *Cf. Am. Fed'n of Gov't Emps.*, 929 F.3d at 760.

Any judicial review under the CSRA would come only after multiple layers of agency review, a process that could take years. *See* 5 U.S.C. § 7703 (judicial review of MSPB decisions); *id*. § 7123 (judicial review of FLRA final orders). By the time the agency adjudication process had run its course, the dismantling of the

CFPB would be irreversible, rendering judicial review of Plaintiffs' core claims meaningless. It would also render the agency review process largely futile. "The purpose of a[n MSPB] order canceling an adverse action is to place the appellant as nearly as possible in the status quo ante." *Bullock v. Dep't of Air Force*, 80 M.S.P.R. 361, 366 (1998). Where the appellant's position has been abolished, the Board would look to place the appellant in a position "substantially equivalent in status and scope." *Id*. at 368-69. But if the CFPB were allowed to proceed with abolishing nearly all agency positions, no substantial equivalent would exist. On a more fundamental level, if the CFPB were to cease to exist during the administrative process, any administrative adjudication would become moot. *See Cmty. Servs. Admin*., 7 F.L.R.A. 762, 763 (1982) (holding that the termination of an agency moots an unfair labor practice proceeding pending before it). The injuries that Plaintiffs seek to address are thus also akin to the type of "here and now" injury recognized by the Court in *Axon* as "effectively lost" if channeled to agency adjudication. 598 U.S. at 192.

Second, the issues in this case are collateral to CSRA review provisions. Unlike the cases Defendants rely on, this case does not challenge employment actions directed at specific employees: Plaintiffs "challenge the evisceration of their jobs only insofar as it is the means by which they challenge defendants' unlawfully halting the work of [the CFPB]." *Widakuswara*, No. 25-5144, 2025

WL 1288817, at *7 (Pillard, J., dissenting); *see also Am. Fed'n of Gov't Emps.*, 139 F.4th at 1031. Similar to *Axon*, here the "separation-of-powers claims do not relate to" any claims that would or could be heard by the MSPB or FLRA, "nor do the parties' claims address the sorts of procedural or evidentiary matters an agency often resolves on its way to a merits decision." 598 U.S. at 904.

Third, this case involves issues outside the CSRA administrative agencies' expertise. Fundamental questions about an agency's prerogative to ignore Congressional mandates are decidedly not issues the relevant administrative bodies "customarily handle[]." *Id*. at 186; *Carr v. Saul*, 593 U.S. 83, 92 (2021) ("[A]gency adjudications are generally ill suited to address structural constitutional challenges."). Plaintiffs have alleged the agency's actions, including its mass removal of staff, should be halted and reversed not because the actions run afoul of civil service laws, but because they were taken pursuant to an overarching unlawful scheme that violates the APA and the separation of powers. There are therefore no threshold employment questions implicating agency expertise. *See AFGE*, 929 F.3d at 761; *Axon,* 598 U.S. at 195 (distinguishing *Elgin* on this basis).

Accordingly, there is no basis to hold that federal employees are precluded from bringing this type of challenge in district court.

**II.    Claims by parties who rely on CFPB services and have no relationship to federal employment are not channeled.**

The panel opinion correctly held that the plaintiffs without "employment-related injuries" faced no channeling barrier. *See Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, 776 (D.C. Cir. 2025), reh'g en banc granted, opinion vacated, No. 25-5091, 2025 WL 3659406 (D.C. Cir. Dec. 17, 2025). And Defendants cite no authority for the proposition that a third party, a stranger to the federal employment relationship, can be channeled by the CSRA. That makes sense. Holding as much would leave such government beneficiaries without any forum to challenge the government action that has harmed them, as they cannot invoke the administrative processes created by the CSRA.

Remarkably, Defendants assert that third parties are even *more* channeled than federal employees and their representatives. Appellees' En Banc Br. at 28 ("The same [channeling] conclusion holds with even greater force for the non-union plaintiffs, who are strangers to the government-employee relationships."). Defendants devote a mere paragraph to this extraordinary claim and make no attempt to explain how it is fairly discernible that Congress intended the CSRA to eliminate the constitutional and statutory rights of individuals who have no relationship to federal employment. Defendants rely only on *Fausto* and *Elgin* – cases dealing with federal employees—as support for their novel argument.

But *Elgin* is entirely inapposite because it applies *Thunder Basin* channeling, not complete preclusion analysis. *Lucas v. Am. Fed'n of Gov't Emps.*, 151 F.4th 370, 386–87 (D.C. Cir. 2025) ("When the argument is that a statutory review scheme completely extinguishes a plaintiff's rights under another federal statute, we have generally not applied the *Thunder Basin* framework."). What the government advocates here is complete preclusion, not just a delay in judicial review, since third parties cannot access administrative channels under the CSRA.

Second, *Fausto* does not control here either. *Fausto* addressed the question whether Congress intended the "withholding of remedy" to particular employees who were identified expressly in the CSRA to foreclose relief under the Back Pay Act. *Id.* at 443, 448. Nothing in *Fausto* suggests Congress intended to foreclose any type of claims by plaintiffs not expressly identified in the statute.

If this Court were to hold that the CSRA categorically bars third parties from bringing their constitutional claims to federal court when their claims implicate federal employment, it would have to justify that holding under the analysis set forth in *Webster v. Doe*, which requires a "clear" Congressional intent "to preclude judicial review of constitutional claims." *Elgin*, 567 U.S. at 9 (quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988)). Defendants have not offered any reading of the CSRA that meets that standard, nor could they.

And before this Court could conclude that the CSRA implicitly precludes all APA claims by third-party recipients of government services when those claims implicate federal employment, it would have to grapple with the countervailing presumption of judicial review that the APA carries. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967). That presumption manifests Congress's "evident intent . . . to make agency action presumptively reviewable." *Patchak*, 567 U.S. at 225. Given that presumption, the Supreme Court has refused to deem APA review impliedly precluded, even when an agency adjudication scheme established by Congress did provide a path to eventual judicial review. *Sackett v. E.P.A.*, 566 U.S. 120, 129 (2012) ("[I]f the express provision of judicial review in one section of a long and complicated statute were alone enough to overcome the APA's presumption of reviewability for all final agency action, it would not be much of a presumption at all."); *accord Hawkes*, 578 U.S. at 601-02.

Accordingly, this Court should hold that the CSRA has nothing to do with the rights of individuals who benefit from government services, who are harmed by their abrupt and unlawful cessation, and whose relief would require the federal government to retain a workforce, to access federal court.

III. **Fundamental assumptions underlying the CSRA have been eroded, rendering administrative channels particularly inappropriate fora for this dispute.**

There is an additional reason to hold that this dispute is not channeled under

the CSRA. Events unfolding over the past year have undermined the CSRA's guarantee of impartial adjudication to federal employees. These events defeat any channeling inference at both *Thunder Basin* steps. First, because impartiality is bedrock to the adjudicatory scheme that Congress crafted in the CSRA, courts can no longer fairly discern that Congress intended to channel through the administrative process disputes between federal employees and their employers, particularly disputes going to fundamental questions of agency overreach. CSRA channeling therefore fails at *Thunder Basin* step one for this independent reason. Moreover, these developments further preclude parties from obtaining meaningful judicial review or the benefit of any actual independent agency expertise, demonstrating once again that the Plaintiffs' claims should not be channeled under *Thunder Basin* step two.

As discussed above, the CSRA created three administrative agencies that carry out "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests" of federal employees with "the needs of sound and efficient administration." *Fausto*, 484 U.S. at 445. Congress created the agencies as wholly "independent of any control or direction by the President," S. Rep. No. 95-969, at 24, and thereby insulated from any appearance of bias that would attend the executive adjudicating its own employment disputes, *id*. at 6-7 (emphasizing need for "a strong and independent [MSPB] and Special Counsel"); *see also id*. at

7-8 (FLRA structure "will assure impartial adjudication of labor-management cases").

Congress put in place multiple protections to ensure agency independence from the President. It made the MSPB and FLRA members as well as the Special Counsel removable only for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. §§ 1202(d), 1211(b), 7104(b); *see also* H. Rep. 95-1403 (1978) (Congress rejected President's proposal that FLRA members "serve at the pleasure of the President"). And it insulated the MSPB's internal agency employment decisions, including regarding its administrative law judges, from "approval or supervision of the Office of Personnel Management or the Executive Office of the President." 5 U.S.C. § 1204(j).[4]

These guarantees of independence and impartiality at the administrative stage are important because judicial review of the agencies' decisions is deferential. *See* 5 U.S.C.A. § 7703(c). Prejudice from a partial administrative tribunal will not necessarily be rooted out by the Federal Circuit.

Over the past year, however, the current administration has taken unilateral action that undermines the CSRA administrative agencies' independence as a matter of law. First, shortly after taking office, President Trump fired members of

---

[4] Administrative law judges are also protected by the general for-cause protections that apply to the federal civil service. 5 U.S.C. § 7513(a).

all three bodies without cause. *See Harris v. Bessent*, 160 F.4th 1235, 1245 (D.C.

Cir. 2025); *Dellinger v. Bessent*, 768 F. Supp. 3d 33, 37-38 (D.D.C. 2025), *vacated

and remanded by* 2025 WL 935211 (D.C. Cir. Mar. 27, 2025); *Grundmann v.

Bessent*, 770 F. Supp. 3d 166, 171-72 (D.D.C. 2025). Following thus-far

unsuccessful legal challenges, none of the fired members are currently reinstated.

The remaining members, and those appointed in the future, are on notice that they

face removal at any time, including for impartial rulings that contradict the current

administration.

Second, the President has taken the position that he has the constitutional

authority to direct the agencies' interpretation and application of federal law.

Through Executive Order 14215, published in February, the President declared that

he and the Attorney General "shall provide authoritative interpretations of law for

the executive branch." 90 Fed. Reg. 10447, 10448-49 (Feb. 18, 2025). The Order is

expressly applicable to formerly independent agencies such as the MSPB. *See id*.

§§ 1, 2(b), 5. Following through on that directive, the Department of Justice has

filed an opinion[5] from the Office of Legal Counsel (OLC) regarding the MSPB's

authority to adjudicate constitutional questions in two pending administrative

proceedings and has taken the position that the OLC opinion is binding on the

---

[5] *See* Office of Legal Counsel, The Merit System Protection Board's Authority to
Adjudicate Constitutional Questions within an Administrative Proceeding (Sept.
26, 2025), available at https://www.justice.gov/olc/media/1415466/dl.

Board and administrative law judges. *Jackler v. Dep't of Justice*, No. DA-0752-25-0330-I-1, Doc. No. 3685733, at 6 (M.S.P.B.) ("[T]he OLC opinion . . . should be considered binding on upon the Board.");[6] *Jaroch v. Dep't of Justice*, No. DA-0752-25-0328-I-1, Doc. No. 3685734, at 6 (M.S.P.B.) (same).[7] In other words, the President, through the Department of Justice, is directing the CSRA administrative agencies' substantive decisionmaking, undermining not only the agencies' independence, but also the presumption that the administrative agencies bring a special expertise to their cases, since there can be no special expertise when the analysis is outsourced to the Department of Justice.

And third, the President has taken the position that he can remove administrative law judges without cause. *See Statement of Justice Department Chief of Staff Chad Mizelle*, Dep't of Justice (Feb. 20, 2025).[8]

Taken together, the President has asserted that he can control the administrative agencies' descisionmaking by dictating how they must interpret and apply the law and by claiming authority to unilaterally terminate any administrative law judge or agency official who defies that mandate. To the extent

---

[6] This filing is available at https://washingtonlitigationgroup.org/wp-content/uploads/2025/09/Jackler-Motion.pdf.

[7] This filing is available at https://washingtonlitigationgroup.org/wp-content/uploads/2025/09/Jaroch-Motion.pdf.

[8] This statement is available at https://www.justice.gov/opa/pr/statement-justice-department-chief-staff-chad-mizelle.

the President's actions are blessed by the judiciary, *see Harris*, 160 F.4th at 1242, that Presidential assertion of control is real. A "bedrock principle" of the CSRA— federal employees' guarantee of an independent adjudicator—is therefore gone. *Owen*, 139 F.4th at 307. Any implication that Congress intended to channel fundamental challenges to executive overreach—to the extent it ever existed—is gone with it.

That is particularly true in a case like this. The Defendants argue that the Plaintiffs must bring their challenge to the agency's decision to shutter itself, which the Plaintiffs allege is an executive overreach of constitutional proportions, before an administrative adjudicatory process whose decisionmaking the President now directly controls. There is no chance the Plaintiffs will receive meaningful judicial review through that process or that the now non-independent review process adds any special expertise or value to the review of executive branch overreach. There is no longer a fair inference—if there ever was—that Congress would have stripped district courts of their jurisdiction over such disputes.

## IV. The *en banc* Court should provide guidance to the district courts and future panels on administrative channeling.

The *en banc* Court should take this opportunity to clarify how implied statutory preclusion applies in cases challenging broad agency action aimed at debilitating if not outright eliminating Congressionally established executive

agencies. It should do so both as to the federal employee representatives challenging the decimation of the CFPB, as well as to the third-party Plaintiffs who are not federal employees, but who have been harmed by the CFPB's unlawful actions.

"[A]ppellate review serves a dual purpose: the correction of legal error and the establishment of legal rules for future guidance. Only the latter is ordinarily worthy of the attention of the full court." *Church of Scientology of Cal. v. IRS*, 792 F.2d 153, 155 n.1 (D.C. Cir. 1986) (Scalia, J.), *aff'd,* 484 U.S. 9 (1987). Accordingly, even in the normal course, the *en banc* Court has a responsibility to provide guidance for lower courts and future panels regarding the issues before it. The circumstances surrounding this case only fortify that imperative.

First, the channeling issue presented is and will be a recurring issue before this Court. As discussed above, amici are collectively party to multiple lawsuits challenging unlawful agency action on a grand scale that are either currently before this Court or undoubtedly will be soon. *See supra* Interest of Amici Curiae.

Second, the issue is novel, given the circumstances facing litigants and the courts: The executive branch has undertaken unprecedented unilateral action to remake the government; that action has harmed not only federal employees, but also third parties who relied on abruptly cancelled government services; and the executive branch has concurrently destroyed CSRA agency independence.

Third, the Supreme Court has declined to provide guidance on channeling in cases presenting similar fact patterns. *See Trump*, 145 S. Ct. 2635; *McMahon*, 145 S. Ct. 2643. In *Trump*, the plaintiffs were representatives of federal employees as well as third parties who relied on affected government services. And in *McMahon*, the plaintiffs were states and third-party beneficiaries.

Amici therefore urge this Court to decide the administrative channeling issue and to hold that neither the federal-employee representative Plaintiffs are channeled, nor are the third-party government beneficiary Plaintiffs channeled to an agency adjudicatory process that was never meant to resolve the issues presented, or in the case of the third parties, is entirely unavailable.

## CONCLUSION

Amici respectfully urge this Court to affirm the District Court's exercise of jurisdiction.

Respectfully submitted,

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO

*/s Rushab Sanghvi*
Rushab Sanghvi
80 F. Street, NW
Washington, DC 20001
(202) 639-6424

AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, AFL-CIO (AFSCME)

*/s Teague Paterson*
Teague Paterson
Matthew Blumin
Georgina Yeomans

SanghR@afge.org
*Counsel for Amicus Curiae American*
*Federation of Government Employees,*
*AFL-CIO (AFGE)*

THE NEWSGUILD-CWA, AFL-CIO

*/s Matthew Holder*
Matthew Holder
Communications Workers of America
501 Third Street NW
Washington, DC 20001
Telephone: (202) 215-6788
mholder@cwa-union.org
*Counsel for Amicus Curiae The*
*NewsGuild-CWA*

1625 L Street, N.W.
Washington, D.C. 20036
(202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org
GYeomans@afscme.org
*Counsel for Amicus Curiae American*
*Federation of State, County, and*
*Municipal Employees, AFL-CIO*
*(AFSCME)*

AMERICAN FOREIGN SERVICE
ASSOCIATION

*/s Sharon Papp*
Sharon Papp
Raeka Safai
2101 E Street, N.W.
Washington, D.C. 20037
(202) 338-4045
papp@afsa.org
safai@afsa.org
*Counsel for Amicus Curiae American*
*Foreign Service Association (AFSA)*

Dated:  February 9, 2026

**CERTIFICATE OF COMPLIANCE**

This brief complies with Federal Rule of Appellate Procedure 29 because it contains 6,328 words. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  February 9, 2026                    */s/ Georgina Yeomans*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of February, 2026, I electronically filed the foregoing amicus curiae brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated:  February 9, 2026                                    */s/ Georgina Yeomans*