**[EN BANC ORAL ARGUMENT HELD FEBRUARY 24, 2026]**

**No. 25-5091**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

NATIONAL TREASURY EMPLOYEES UNION, et al.,

*Plaintiffs-Appellees*,

v.

RUSSELL T. VOUGHT, in his official capacity as Acting Director of the Consumer Financial Protection Bureau, et al.,

*Defendants-Appellants*.

---

On Appeal from the United States District Court
for the District of Columbia

---

**MOTION TO MODIFY THE STAY PENDING APPEAL, FOR A
LIMITED REMAND, AND TO PLACE THE APPEAL IN ABEYANCE**

---

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
MELISSA N. PATTERSON
DEREK WEISS
SIMON GREGORY JEROME
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7209*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-1673*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................... 1

STATEMENT ..................................................................................................... 3

ARGUMENT ...................................................................................................... 5

    I.     This Court Should Modify Its Stay Pending Appeal To Permit CFPB To Immediately Carry Out Its New RIF Plan. ................................................................................................. 6

    II.    This Court Should Grant A Limited 45-Day Remand With Instructions To Reconsider The Preliminary Injunction In Light Of Intervening Developments. ........................................... 12

          A.    Significant Factual And Legal Developments Have Occurred Since The District Court Issued The Preliminary Injunction On Appeal. .................................... 13

          B.    These Intervening Developments Warrant Dissolution Or Modification Of The Preliminary Injunction Consistent With Correct Legal Principles. ...... 16

    III.   This Court Should Hold This Appeal In Abeyance While The District Court Reconsiders The Preliminary Injunction Issued Under Materially Different Circumstances. ................................................................................ 18

CONCLUSION ................................................................................................ 18

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                              **Page(s)**

*Califano v. Yamasaki*,
   442 U.S. 682 (1979)......................................................................................15

*McGrath v. Potash*,
   199 F.2d 166 (D.C. Cir. 1952)..................................................................17

*MediNatura, Inc. v. FDA*,
   998 F.3d 931 (D.C. Cir. 2021)....................................................................9

*Nken v. Holder*,
   556 U.S. 418 (2009)......................................................................................6

*Sampson v. Murray*,
   415 U.S. 61 (1974)......................................................................................10

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025)................................................................................2, 15

*United States v. Booker*,
   543 U.S. 220 (2005)....................................................................................17

*United States v. Coles*,
   403 F.3d 764 (D.C. Cir. 2005)..................................................................17

**Statutes:**

One Big Beautiful Bill Act, Pub. L. No. 119-21, 139 Stat. 72............................14

12 U.S.C. § 5493(a)............................................................................................9

12 U.S.C. § 5493(d)..........................................................................................11

12 U.S.C. § 5497(a)..........................................................................................14

**Rules:**

D.C. Cir. R. 41(b)..............................................................................................2

**Other Materials:**

CFPB, *What should I do after a disaster to protect my finances and property?*, https://perma.cc/24QX-ERHE.................................................................12

**INTRODUCTION**

Recent developments significantly affect the propriety of the preliminary injunction this Court is currently considering en banc. Most fundamentally, as government counsel indicated at oral argument, *see* Oral Arg. 2:46:00-2:49:00, Consumer Financial Protection Bureau (CFPB) has continued to prepare ways to downsize, and the Acting Director has recently adopted a plan for a reduction in force (RIF) that supersedes any previous plans about the proper size or functioning of the agency. That plan, attached here, makes clear that CFPB leadership will not close the agency absent the injunction, contrary to the central factual premise on which the injunction is based. CFPB would implement the plan were it not impermissible under the injunction, in order to respond to a Presidential directive to streamline agency operations while leaving CFPB sufficiently staffed to fulfill its statutory obligations.

This Court should modify its stay pending appeal to permit CFPB to implement the revised RIF plan. Plaintiffs will not be harmed if the agency is permitted to do so—in addition to making clear that the "shut down" plaintiffs alleged will not come to pass, the RIF plan explains in detail that the agency will continue to provide the services on which plaintiffs assert

they rely.  On the other side of the ledger, a modification of the stay would alleviate ongoing harm to the Executive Branch's prerogative to right-size agency operations in line with an important Presidential policy.  Allowing CFPB to implement its downsizing plan now could also conserve judicial resources and help expedite resolution of this litigation.

Whether or not this Court modifies its stay, it should hold this case in abeyance and issue a limited, 45-day remand of the record to the district court to reconsider the propriety of preliminary-injunctive relief in light of CFPB's new, superseding plan for agency operations going forward, as well as two other intervening developments since the injunction was issued more than a year ago.  *See* D.C. Cir. R. 41(b).  First, Congress enacted the One Big Beautiful Bill Act, which significantly reduced the statutory cap on amounts available to CFPB from the Federal Reserve.  As a result, the Bureau cannot sustain the current level of spending mandated by the injunction indefinitely, and it expects that some RIF will be necessary by the fourth quarter of calendar year 2026 (*i.e.*, the first quarter of fiscal year 2027) to remain within the statutory appropriation.  Second, the Supreme Court issued its decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025),

2

confirming that any injunctive relief entered in this case must be limited to that necessary to remedy irreparable injury shown by the plaintiffs here.

Plaintiffs state their position as follows: "Because the defendants' proposal was provided the same day as the defendants sought the plaintiffs' position on this motion, the plaintiffs have not had adequate time to evaluate the proposal or consult with their counsel. After the plaintiffs have been able to adequately consult with counsel, they will respond to the motion under this Court's rules."

## STATEMENT

1.      Plaintiffs are two CFPB employee organizations, three consumer-advocacy organizations, and the husband of a deceased pastor who had student loans. JA22-24, ¶¶ 13-18; Dkt. 83. Plaintiffs' operative complaint alleges, as relevant here, that CFPB's actions violate the separation of powers and the Administrative Procedure Act (APA). JA18-49. On March 28, 2025, the district court issued a preliminary injunction requiring CFPB to, among other things, rehire all terminated employees, reinstate all terminated contracts, and refrain from engaging in RIFs or attempting to stop work through any means. JA633-747.

3

**2.** Defendants appealed, and this Court issued a partial stay pending appeal on CFPB's motion. This Court stayed the requirement that defendants rehire terminated employees "insofar as it requires defendants to reinstate employees whom defendants have determined, after an individualized assessment, to be unnecessary to the performance of defendants' statutory duties." Apr. 11, 2025 Stay Order 1. This Court also provided that the work-stoppage provision remained in effect only on the understanding that it "allow[s] work stoppages that defendants have determined, after a particularized assessment, would not interfere with the performance of defendants' statutory duties." *Id.* 1-2. This Court's partial stay originally also permitted defendants to terminate "employees whom defendants have determined, after a particularized assessment, to be unnecessary to the performance of defendants' statutory duties." *Id.* 1. After disputes arose regarding that language, this Court "restore[d] the interim protection of paragraph (3) of the preliminary injunction" barring employee terminations "rather than continue collateral litigation over the meaning and reviewability of the 'particularized assessment' requirement imposed by this court's stay order." Apr. 28, 2025 Stay Order 2. The injunction's other provisions remain in effect.

4

**3.**    A divided panel of this Court vacated the preliminary injunction.  The panel held that the district court lacked jurisdiction over the employee organizations' termination-related claims because the Civil Service Reform Act provides the exclusive means of review, Panel Op. 12-15, and the non-employee-organization plaintiffs lacked a cause of action either under the APA, *id.* 18-43, or in equity, *id.* 43-47.  Thus, the panel did not reach the government's scope-of-relief arguments.

This Court granted rehearing en banc, vacating the panel's judgment and making clear that the panel's partial stay of the preliminary injunction, as modified, remains in effect.

**4.**    At oral argument before the en banc Court, after government counsel indicated that CFPB continued to plan for a RIF in the event the injunction was vacated or modified, Judge Millett inquired about the possibility of CFPB sharing those plans with the Court.  Oral Arg. 2:48:13-2:48:50.

## ARGUMENT

CFPB should be permitted to implement its new, superseding RIF plan, which is designed to carry out the President's policy goal of shrinking the federal bureaucracy while still carrying out the Bureau's statutory

5

obligations.  Accordingly, this Court should modify its stay pending appeal to permit CFPB to immediately effectuate its newly released RIF plan. Furthermore, whether or not this Court so modifies its stay, it should issue a limited remand to the district court with instructions to consider in the first instance whether to dissolve or modify the preliminary injunction given CFPB's new plan, Congress's significant reduction in CFPB's funding, and the Supreme Court's intervening decision in *CASA*.  Finally, while the district court reconsiders the propriety of continued preliminary injunction in light of these developments, this Court should place this appeal in abeyance.

> **I.     This Court Should Modify Its Stay Pending Appeal To Permit CFPB To Immediately Carry Out Its New RIF Plan.**

This Court has already determined that the government meets the requirements for a stay pending appeal.  *See* Apr. 11, 2025 Stay Order 1 (citing *Nken v. Holder*, 556 U.S. 418 (2009)).  In its original stay order, the Court accordingly stayed the preliminary injunction's prohibition on implementing a RIF, provided that defendants "determined, after a particularized assessment," that the employees to be terminated were "unnecessary to the performance of defendants' statutory duties."  *Id.*

6

When confronted with concerns about "collateral litigation over the meaning and reviewability of the 'particularized assessment' requirement imposed by" the stay order, however, the Court lifted its stay of the RIF prohibition.  Apr. 28, 2025 Stay Order 2.

Since that time, CFPB has developed and the Acting Director has adopted a Workforce Restructuring Plan setting out a revised RIF, which the agency would implement were it not barred by the preliminary injunction on appeal.  *See* Attachment A (recommended CFPB Workforce Restructuring Plan ("Revised RIF Plan")); Attachment B (Acting Director's adoption of the recommended plan).  While CFPB cannot currently implement this intervening RIF plan given the strictures of that injunction, CFPB has also made clear that all prior plans regarding the agency's future size and function have been superseded.  The RIF plan CFPB has now announced reflects a significant downsizing of the Bureau from its operation under the prior Administration—one that CFPB has determined nonetheless "allow[s] CFPB to continue meeting its statutory obligations." Revised RIF Plan 1.  The plan explains—segment-by-segment—the statutory obligations to be performed and details how many employees are

necessary for such duties.  *See id.* 3-26.  The resulting RIF plan, which

retains 556 CFPB employees, is summarized in the following table:

| Division | FY25 Authorized | FY26 Onboard | Retain |
|---|---|---|---|
| CONSUMER RESPONSE EDUCATION DIV | 152 | 127 | 90 |
| DIRECTOR | 73 | 62 | 15 |
| ENFORCEMENT DIVISION | 254 | 137 | 50 |
| EXTERNAL AFFAIRS DIVISION | 45 | 30 | 5 |
| LEGAL DIVISION | 87 | 60 | 60 |
| OPERATIONS DIVISION | 341 | 255 | 133 |
| OTHER PROGRAMS | 5 | 11 | 1 |
| RESEARCH MONITORING AND REGULATIONS DIV | 228 | 142 | 125 |
| SUPERVISION DIVISION | 523 | 350 | 77 |
| **Grand Total** | **1723** | **1174** | **556** |

*Id.* 1 (footnote omitted).  As the foregoing detail shows, the revised RIF

plan satisfies the original stay order's requirement of a "particularized

assessment," which the Court defined to mean "a determination,

conducted by the decisionmaker responsible for the RIF, that each division

or office within the Consumer Financial Protection Bureau will be able to

perform any statutorily required duties of that division or office without

the employees subject to the RIF."  Apr. 28, 2025 Stay Order 1.  Indeed, the

plan details CFPB's statutory functions and explains how the number of

8

staff to be retained in each component will be capable of fulfilling those functions. *See supra.*

To the extent the equities have changed at all since the Court originally granted a stay, they now favor the government even more decisively, given the clarity CFPB has now offered regarding its particularized determinations that the proposed RIF would permit it to perform its statutorily required duties, as well as the year-plus duration of the preliminary injunction's prohibition on conducting any form of RIF in line with the President's policy goals. *See MediNatura, Inc. v. FDA*, 998 F.3d 931, 945 (D.C. Cir. 2021) (explaining that "the public interest and balance of equities factors merge" where "the government is the party" against whom an injunction is sought, and concluding that "[r]equiring the FDA to keep in place a guidance document that no longer reflects its current enforcement thinking … is not in the public interest"). As it stands, the injunction impinges on the agency's flexibility to shift resources and make staffing decisions—tools essential to the management of any agency. Indeed, for more than a year, the current Acting Director has been unable to exercise his authority to "fix the number of … employees of the Bureau," 12 U.S.C. § 5493(a)(1)(A), with that number being fixed by the district

9

court's order mandating the continuation of the prior administration's choices. Such a stricture, imposed for such a time, is particularly inequitable given the "well-established rule that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" *Sampson v. Murray*, 415 U.S. 61, 83 (1974).

By contrast, permitting the revised RIF plan to take effect would not harm the non-employee-organization plaintiffs, who allege potential loss of agency-provided services. Even if those plaintiffs' alleged injuries could satisfy Article III, *but see* En Banc Opening Br. 19-26, no irreparable injuries would result from this downsizing plan, which would not give rise to the harms they rely upon to justify this injunction. *See* En Banc Resp. Br. 39-43.

For example, the National Consumer Law Center's alleged injuries arise from producing reports that rely on the "consumer complaint database," certain "statutorily mandated Bureau publications," and information from CFPB's supervision and examination work. En Banc Resp. Br. 41; *see also id.* 42 (alleging injury to the Virginia Poverty Law Center because it refers individuals to the consumer-complaint hotline). The revised RIF plan (at 3-6) retains 81 employees in the Consumer Response function, explaining why that is sufficient to operate the

10

consumer-complaint hotline and database.  The revised RIF plan (at 3, 5, 7, 24) explains how CFPB will continue providing statutorily required reports.  And the plan (at 12-14) would retain 77 employees in the Supervision Division to fulfill its statutory examination and supervision duties.

Ted Steege argued he will be harmed by not receiving any assistance from the Student Loan Ombudsman.  En Banc Resp. Br. 42-43.  The revised RIF plan (at 7) specifies that the Deputy Director, who stands ready to assist Mr. Steege, will fulfill the Ombudsman role.

The panel (at 16) concluded that the National Association for the Advancement of Colored People (NAACP) had standing because one of its members had not been sent educational resources.  The revised RIF plan (at 3-6) retains the majority of the Office of Financial Education, which fulfills the requirement of 12 U.S.C. § 5493(d)(1) to "develo[p] and implemen[t] initiatives intended to educate and empower consumers to make better informed financial decisions," among other statutory duties.  The consumer-complaint hotline and database will also remain available to assist the general public—including NAACP members, as will the agency's public guidance on how to protect family finances and property following

11

a disaster. *See* CFPB, *What should I do after a disaster to protect my finances and property?*, https://perma.cc/24QX-ERHE (June 27, 2024).

Nor does any potential injury to the employee-organization plaintiffs support the RIF prohibition's continued effect. Employment-related claims are channeled to the MSPB and, therefore, are not a proper basis for injunctive relief. *See* En Banc Opening Br. 26-28; Panel Op. 12-15. In any event, the Merit Systems Protection Board (MSPB) provides an adequate remedy, so any harm from the revised RIF is plainly not irreparable. *See* En Banc Reply Br. 8.

All told, the revised RIF plan reaffirms what CFPB has repeatedly made clear in this litigation: that it is committed to fulfilling its statutory obligations. The Court should thus reimpose the partial stay of the preliminary injunction's prohibition on RIFs to permit CFPB to immediately effectuate the attached plan.

## II. This Court Should Grant A Limited 45-Day Remand With Instructions To Reconsider The Preliminary Injunction In Light Of Intervening Developments.

Whether or not this Court modifies its stay pending appeal as requested above, the Court should grant a limited remand to the district court with instructions to consider in the first instance whether to dissolve

or modify the preliminary injunction in light of CFPB's issuance of a revised RIF plan superseding all previous agency decisions regarding the agency's size or function, legislative changes to CFPB's funding, and intervening Supreme Court precedent. If this Court modifies its stay, such a remand would still enable the district court to evaluate whether any preliminary injunctive relief remains appropriate. If this Court does not modify its stay, the requested remand would allow the district court to consider whether to modify the preliminary injunction to, at minimum, permit CFPB to carry out its proposed RIF.

### A. Significant Factual And Legal Developments Have Occurred Since The District Court Issued The Preliminary Injunction On Appeal.

After the district court entered the preliminary injunction, CFPB, Congress, and the Supreme Court took actions that materially affect the issues involved in this appeal—particularly with respect to the appropriate scope of any injunctive relief.

**1.** As detailed above and in the attached, CFPB has finalized a revised RIF plan in tandem with a memorandum from the Acting Director formally superseding any prior plans regarding the appropriate size and scope of the agency. These developments make clear, as the government

13

has repeatedly represented, that CFPB leadership does not intend to shut down the Bureau, the purported legal violation identified by the district court as the basis for injunctive relief.  *See* JA697.  The plan also leaves no doubt that CFPB will continue to perform its statutory obligations as required by law.

**2.**  Congress enacted the One Big Beautiful Bill Act, which substantially changed the cap on the statutory appropriation to CFPB. Congress reduced the annual limit on transfers from the Federal Reserve System from 12.0% to 6.5% of the Federal Reserve's 2009 expenses, Pub. L. No. 119-21, tit. III, § 30001, 139 Stat. 72, 126 (July 4, 2025) (codified as amended at 12 U.S.C. § 5497(a)(2)(A)(iii)), adjusted for inflation, 12 U.S.C. § 5497(a)(2)(B).  This change limits Fiscal Year 2026 transfers from the Federal Reserve to CFPB to $466.8 million.  As CFPB explained in its letter to Congress—previously filed in this Court—the annual funding the agency needs to continue complying with the injunction is $677.5 million. Nov. 21, 2025 Notice 6 n.1.  To date, CFPB has been able to continue spending above the limit on future transfers due to cash reserves on hand. At the current staffing level, however, CFPB has informed undersigned counsel that it expects that by the fourth quarter of calendar year 2026 (*i.e.*,

14

the first quarter of fiscal year 2027) its cash on hand will no longer be sufficient to comply with both the injunction and the statutory funding cap Congress has now imposed under 12 U.S.C. § 5497(a)(2).

**3.** Several months after the district court issued the preliminary injunction on appeal, the Supreme Court decided *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). In *CASA*, the Supreme Court underscored that federal equitable relief is party-specific, not universal, in nature. *Id.* at 842-43. Accordingly, although a court *may* fashion complete relief for the complaining party, *id.* at 851, it may not do more than that, *id.* at 852 (citing *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). It certainly cannot design "an injunction [to] offer[] complete relief to *everyone* potentially affected by an allegedly unlawful act," rather than tailoring relief to "offer complete relief *to the plaintiffs before the court*." *Id.* While the government raised the principles underlying the Supreme Court's *CASA* analysis in district court, *see, e.g.*, Dkt. 31 at 39-40; Dkt. 97 at 3, the district court did not apply them. A remand would enable the district court to revisit the propriety and scope of any injunctive relief in light of the Supreme Court's intervening and unequivocal instructions that even preliminary injunctive relief may not extend beyond what is necessary to afford plaintiffs complete relief for any

irreparable injury.  *Cf., e.g.*, JA634 (district court's conclusion that it should issue "an injunction freezing the status quo" without explaining why such sweeping relief was necessary to remedy plaintiffs' injuries).

### B. These Intervening Developments Warrant Dissolution Or Modification Of The Preliminary Injunction Consistent With Correct Legal Principles.

The foregoing changes warrant dissolution — or, at a minimum, correction or modification — of the injunction.

Most fundamentally, the purportedly unlawful action identified by the district court as the basis for preliminary injunctive relief — a "plan" to "shut the agency down entirely," JA697 — has unambiguously been superseded through new agency action that renders any prior action void, *see* Attachment B, although defendants continue to dispute that any such plan existed.  It was from that "plan" that all of the injuries plaintiffs allege flowed, deprivation of services and termination of employment alike.  As a result, plaintiffs are unlikely to be able to demonstrate any continued justification for injunctive relief.

Even if the district court were to conclude on remand that some injunction remained appropriate, the intervening factual developments described — the agency's revised RIF plan and Congress' change to the

16

agency's funding limits—merit reassessment of the scope of any such relief.

*See, e.g.*, *United States v. Coles*, 403 F.3d 764, 771 (D.C. Cir. 2005) (per curiam) (granting limited remand for district court to clarify its decision in light of intervening decision in *United States v. Booker*, 543 U.S. 220 (2005)).  The staffing levels the agency has proposed will materially affect the viability and imminence of plaintiffs' claims of injury from deprivation of agency services.  And the reduced appropriation itself justifies the district court revisiting its order requiring the agency to maintain staffing levels as of January 2025.  *Cf. McGrath v. Potash*, 199 F.2d 166, 167 (D.C. Cir. 1952) (explaining that even where a final judgment has been entered, "the passage of the new act by Congress [i]s a valid ground under Rule 60(b)(6) of the Civil Rules for relief of the defendant parties").

This Court should remand with instructions to assess the import of the foregoing developments consistent with the principles outlined by the Supreme Court in *CASA*.

17

### III. This Court Should Hold This Appeal In Abeyance While The District Court Reconsiders The Preliminary Injunction Issued Under Materially Different Circumstances.

As discussed, intervening developments have materially altered the factual backdrop against which the district court issued the preliminary injunction on appeal, while clarifying the relevant legal principles. Those developments warrant a limited remand to the district court for consideration in the first instance. This Court should place this case in abeyance during such a remand, which could obviate the need for an interlocutory appeal at all. Indeed, if CFPB is able to implement the revised RIF in accordance with the attached plan, the parties may be able to agree on a plan to proceed to final judgment in district court, thus expediting final resolution of this litigation, preserving judicial resources, and better serving all the parties' interests.

## CONCLUSION

For the foregoing reasons, this Court should modify its stay pending appeal to permit CFPB to implement the attached RIF plan, issue a limited remand to the district court to reconsider the continued propriety of

18

injunctive relief, and hold this appeal in abeyance until the completion of

proceedings on remand.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
MELISSA N. PATTERSON
DEREK WEISS

*/s/ Simon G. Jerome*
SIMON GREGORY JEROME
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7209*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-1673*
  *simon.g.jerome@usdoj.gov*

March 2026

19

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify this motion complies with the requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) because it has been prepared in 14-point Book Antiqua, a proportionally spaced font, and that it complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A), because it contains 3,486 words, according to the count of Microsoft Word.

/s/ *Simon G. Jerome*
SIMON GREGORY JEROME