**EN BANC ORAL ARGUMENT HELD FEBRUARY 24, 2026**
**No. 25-5091**

# In the United States Court of Appeals
# for the District of Columbia Circuit

NATIONAL TREASURY EMPLOYEES UNION, et al.,
*Plaintiffs-Appellees*,

v.

RUSSELL VOUGHT, in his official capacity as Acting Director of the
Consumer Financial Protection Bureau, et al.,
*Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Columbia
Case No. 25-cv-0381-ABJ (The Hon. Amy Berman Jackson)

## RESPONSE TO MOTION TO MODIFY THE STAY PENDING APPEAL, FOR A LIMITED REMAND, AND TO PLACE THE APPEAL IN ABEYANCE

PARAS N. SHAH
ALLISON C. GILES
NATIONAL TREASURY EMPLOYEES
UNION
800 K Street, NW, Suite 1000
Washington, DC 20001
(202) 572-5500

*Counsel for Plaintiff-Appellee*
*National Treasury Employees Union*

JENNIFER D. BENNETT
GUPTA WESSLER LLP
235 Montgomery Street, Suite 629
San Francisco, CA 94104
(415) 573-0336
*jennifer@guptawessler.com*

DEEPAK GUPTA
ROBERT FRIEDMAN
STEFANIE OSTROWSKI
GUPTA WESSLER LLP
2001 K Street, NW, Suite 850 North
Washington, DC 20006
(202) 888-1741

*Counsel for Plaintiffs-Appellees*

April 17, 2026

# TABLE OF CONTENTS

Table of authorities ..................................................................................iii

Introduction.................................................................................................1

Statement...................................................................................................3

Argument....................................................................................................6

    I.      The plaintiffs do not object to a limited remand, but there is no
           basis for an artificial deadline ............................................................6

    II.     This Court should deny the defendants' request to stay the
            preliminary injunction pending appeal.................................................8

Conclusion................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Acker v. H. Herfurth, Jr., Inc.*,
  110 F.2d 241 (D.C. Cir. 1939)............................................................................11

*Agudath Israel of America v. Cuomo*,
  980 F.3d 222 (2d Cir. 2020)..............................................................................11

*Ahlman v. Barnes*,
  2020 WL 3547960 (9th Cir. 2020)...................................................................13

*Baker v. Adams County/Ohio Valley School Board*,
  310 F.3d 927 (6th Cir. 2002)........................................................................10–12

*Brown v. Cain*,
  546 F. App'x 471 (5th Cir. 2013)......................................................................11

*Caddo Nation of Oklahoma v. Wichita & Affiliated Tribes*,
  877 F.3d 1171 (10th Cir. 2017)..........................................................................11

*Campbell v. McGruder*,
  580 F.2d 521 (D.C. Cir. 1978)..........................................................................13

*Carter v. United States*,
  2003 WL 21659644 (D.C. Cir. 2003)................................................................10

*Chemical Weapons Working Group v. Department of the Army*,
  101 F.3d 1360 (10th Cir. 1996) ...................................................................10, 13

*Citizens for Responsibility & Ethics in Washington v. FEC*,
  904 F.3d 1014 (D.C. Cir. 2018)........................................................................15

*Federal Prescription Service, Inc. v. American Pharmaceutical Association*,
  636 F.2d 755 (D.C. Cir. 1980) ...........................................................................9

*FemHealth USA, Inc. v. Williams*,
  83 F.4th 551 (6th Cir. 2023)..............................................................................13

*Fontem US, LLC v. U.S. FDA*,
  2022 WL 2761393 (D.C. Cir. 2022)..................................................................15

*Fund for Animals v. Frizzell*,
  530 F.2d 982 (D.C. Cir. 1975) ...................................................................16

*In re Grand Jury Proceedings*,
  626 F.2d 1051 (1st Cir. 1980)....................................................................10

*Morrissey v. Mayorkas*,
  17 F.4th 1150 (D.C. Cir. 2021) ....................................................................8

*Nken v. Holder*,
  556 U.S. 418 (2009)..............................................................................15, 16

*People Not Politicians Oregon v. Clarno*,
  826 F. App'x 581 (9th Cir. 2020)...............................................................13

*Rhode Island v. Trump*,
  155 F.4th 35 (1st Cir. 2025) .......................................................................12

*Roberts v. Colorado State Board of Agriculture*,
  998 F.2d 824 (10th Cir. 1993).....................................................................7

*SEC v. Dunlap*,
  253 F.3d 768 (4th Cir. 2001)......................................................................10

*Widakuswara v. Lake*,
  2025 WL 2787974 (D.C. Cir. 2025)..............................................................7

## Rules

Federal Rule of Appellate Procedure 8 ............................................. 2, 9, 10

Federal Rule of Civil Procedure 62 ......................................................9

## Other authorities

*365 Wins in 365 Days: President Trump's Return Marks New Era of Success, Prosperity*,
  The White House (Jan. 20, 2026) ..................................................6

Charles Alan Wright & Arthur R. Miller,
  *Federal Practice & Procedure* (5th ed. 2020).............................................10

D.C. Circuit Handbook of Practice & Internal Procedures ............................. 2, 9, 10

## INTRODUCTION

Throughout this litigation, the defendants have repeatedly sworn to the court that they are committed to keeping the CFPB open, while in fact, they were working to shut it down. The district court found that had it not intervened, the Bureau would have been eliminated in thirty days—and the government could not be "trusted to tell the truth about anything." JA697. Unchastened, the defendants submitted an en banc brief to this Court with an entire section devoted to the claim that there was not and never had been any plan to shut down the agency. Yet not long before they filed that brief, Acting Director Russ Vought publicly boasted that they "want to put it out"—and that he thought they'd finally succeed in closing the agency within months. Dkt. 167 at 18.

Now, the defendants claim (at 1) to have developed a plan to "streamline" the agency, rather than shut it down. And they seek to modify or suspend the preliminary injunction to permit them to do so. We agree with the defendants (at 12) that the proper course is for the district court to consider their request "in the first instance." And we do not object to a limited remand for that purpose or to holding the appeal in abeyance during that limited remand. But this Court should reject the defendants' request to impose an artificial deadline on the district court. The defendants waited over a year following the preliminary injunction—and a month after en banc oral argument—to mention a new plan. There is no reason to force the plaintiffs or the

1

district court, which has moved expeditiously throughout the litigation, into emergency proceedings, when there is no emergency.

This Court should also reject the defendants' request that this Court allow them to proceed with a reduction in force now—before the district court has considered whether the injunction should be modified to permit it. As the defendants seem to recognize, any request to modify or stay an injunction must first go to the district court. *See* Fed. R. App. P. 8(a); D.C. Circuit Handbook of Practice & Internal Procedures 33. The request here is the paradigmatic example: The defendants claim that the factual circumstances underlying the preliminary injunction have changed. The district court that issued the injunction—and has the ability to conduct factfinding into the asserted changed circumstances—is in a much better position to evaluate that claim in the first instance than the en banc Court.

Still, the defendants seek to circumvent that rule by styling their request as a "motion to modify" this Court's order denying a stay of the injunction's prohibition on reductions in force. But however the motion is titled, it seeks relief that the defendants have not yet sought in the district court. So the request must be presented in the district court first.

Finally, even if the defendants' request were properly before this Court, it should be denied. The defendants have not even tried to satisfy the requirements to stay the preliminary injunction. And, again, they waited over a year to put forward

2

their newly proposed RIF. Their own actions thus demonstrate that this is not an emergency warranting this Court's extraordinary relief.

## STATEMENT

Shortly after Russell Vought was appointed Acting Director of the CFPB, the defendants decided to shut down the agency. JA634–35, 697, 705–06, 752.[1] Firing all the agency's employees—and eliminating their positions—was (unsurprisingly) a major part of implementing that decision. On February 11, 2025, the defendants fired all probationary employees. JA648, 674. Two days later, they fired all term-limited employees. JA650, 676. After that, they planned to execute two large-scale reductions in force—eliminating 1,200 employees in the first, followed shortly thereafter by the rest of the agency's workforce. JA518–19, 649–50, 701.

But before the defendants could implement those RIFs, the plaintiffs moved for a temporary restraining order. Dkt. 10. Recognizing the urgency of the situation, the district court acted quickly, holding an evidentiary hearing less than three weeks after the plaintiffs' motion was filed. Dkt. 19, 58.

In response to the motion, the defendants didn't defend the legality of shutting down the agency. Instead, they claimed that they didn't seek to close it at all. But the sworn declarations they submitted in support of that claim were quickly proven false.

---

[1] Unless otherwise specified, all internal quotation marks, citations, and alterations are omitted throughout this brief. References to Dkt. are to the district court docket, and references to JA are to the En Banc Joint Appendix.

JA723–24. And, as the agency's Chief Operating Officer admitted on the stand, if the district court hadn't intervened, "the whole agency" would have been "completely wiped out in thirty days." JA706, 708. Following an evidentiary hearing, the court agreed: "[T]he defendants were in fact engaged in a concerted, expedited effort to shut the agency down," and "the plan" to do so "remains unchanged." JA697. And, the court concluded, the defendants cannot "be trusted to tell the truth about anything." *Id.*

Having concluded that absent a preliminary injunction, the defendants would eliminate the agency, the district court granted a preliminary injunction to preserve the status quo during the pendency of the litigation. JA733, 738–39, 744. The injunction prohibited the defendants from taking the steps that they had previously taken to effectuate the shutdown, including mass terminations. JA746–47.

The defendants moved for a stay pending appeal in the district court. Dkt. 97. They did not claim to have a lawful RIF plan; their sole argument was that the injunction was overbroad. *Id.* at 3. After the district court denied the stay, Dkt. 102, the defendants sought a stay pending appeal in this Court. Stay Mot., *NTEU v. Vought*, No. 25-5091 (D.C. Cir. Mar. 31, 2025). The Court largely denied the defendants' request. Order at 1–2, *NTEU v. Vought*, No. 25-5091 (D.C. Cir. Apr. 11, 2025). But it stayed the prohibition on mass terminations to the extent that it prohibited the defendants from terminating employees whom they determined, via

a "particularized assessment," were "unnecessary to the performance of defendants' statutory duties." *Id.*

The defendants immediately sent RIF notices to 1,483 employees—90% of the agency—informing them that they would be placed on administrative leave the next day, with their positions being eliminated shortly thereafter. Dkt. 127 at 7; Dkt. 109 at 137. The defendants claimed that they had made the "particularized assessment" this Court required. Dkt. 109 at 2. But the agency's own Chief Information Officer and Chief Operating Officer recognized that, if the RIF were implemented, the agency would cease to exist within 60 days. Dkt. 127 at 8; Dkt. 131 at 92.

This Court then sua sponte reversed its prior decision to partially stay the injunction's mass-termination prohibition. Order at 2, *NTEU v. Vought*, No. 25-5091 (D.C. Cir. Apr. 28, 2025). Keeping that provision in place during the pendency of the litigation, this Court recognized, was necessary to "ensure[] that plaintiffs can receive meaningful final relief should the defendants not prevail in this appeal." *Id.*

A divided panel of this Court then vacated the injunction. The Court stayed the mandate pending a rehearing petition, allowing the preliminary injunction to remain in effect. Order, *NTEU v. Vought*, No. 25-5091 (D.C. Cir. Aug. 15, 2025).

In October, while the en banc petition was still pending, Vought told the press that his efforts to "close down the agency" would "be successful probably within the next two, three months." Dkt. 167 at 18; *see also id.* ("We want to put it out."). And

despite insisting in its en banc brief that there wasn't—and never had been—an effort to close the CFPB, the Administration continued to publicly say otherwise, boasting that among its accomplishments in the past year, it had "ordered" the CFPB to "halt operations." *365 Wins in 365 Days: President Trump's Return Marks New Era of Success, Prosperity*, The White House (Jan. 20, 2026), perma.cc/8LR6-MMEF.

This Court granted rehearing en banc in December. In its order, it ratified the panel's prior decision regarding the stay pending appeal. *See* Order, *NTEU v. Vought*, No. 25-5091 (D.C. Cir. Dec. 17, 2025). Argument was held on February 24. A month thereafter, and over a year after the preliminary injunction was entered, the defendants filed this motion—attaching a RIF plan dated March 27, 2026. *See* Attachment A to Defs.' Mot. to Modify the Stay Pending Appeal, *NTEU v. Vought*, No. 25-5091 (Mar. 31, 2025).

## ARGUMENT

### I.    The plaintiffs do not object to a limited remand, but there is no basis for an artificial deadline.

Despite public statements to the contrary from Vought and the White House, the defendants claim (at 14), once again, that "CFPB leadership does not intend to shut down the Bureau." The Court should believe them this time, they say, because they have "recently adopted" a RIF plan that "supersedes any previous plans about the proper size or functioning of the agency." Mot. 1, 13–14. In other words, the defendants claim to have voluntarily ceased the conduct that led to the preliminary

injunction. For that reason, along with "two other intervening developments," they argue (at 2, 16–17), the district court should consider modifying or suspending that injunction.

As the defendants recognize (at 6), the district court is the proper forum to make this request "in the first instance." *See infra* 9–10. The plaintiffs have no objection to a limited remand for this purpose or to holding the appeal in abeyance in the interim.[2]

But the plaintiffs object to the arbitrary 45-day deadline the defendants ask (at 12) this Court to impose on the district court. Nearly a year and a half into this litigation—and over a month after the en banc argument—the defendants have suddenly decided that it is so urgent that they immediately implement this RIF that the district court must drop everything to consider their request on an emergency timeline.

The defendants have made no attempt to reconcile this feigned urgency with their delay in proposing this RIF. Nor have they offered any basis to believe that the district court will not act expeditiously, as it has throughout these proceedings. No artificial deadline is needed or justified. So there is no reason to intrude on "the

---

[2] It's not clear that a remand is necessary, as the district court has the authority to modify the injunction even while the appeal is pending. *See* Fed. R. Civ. P. 62(d); *Roberts v. Colo. State Bd. of Agric.*, 998 F.2d 824, 827 (10th Cir. 1993); *Widakuswara v. Lake*, 2025 WL 2787974, at *3 (D.C. Cir. 2025) (statement of Pillard, J.).

district court's broad discretion to manage its docket" by dictating the timeline on which it may consider the defendants' (not yet filed) motion. *Morrissey v. Mayorkas*, 17 F.4th 1150, 1157 (D.C. Cir. 2021).

And doing so would burden not only the district court and the plaintiffs, but also litigants in other matters in front of the court. The defendants' proposal would put the modification motion on an emergency track, requiring expedited proceedings that would make it very difficult for the plaintiffs to adequately investigate the defendants' claims of changed circumstances and respond to the defendants' arguments. If the district court determined a hearing was necessary, the defendants' expedited timeline would leave little time for the court to hold one—or the parties to prepare for it. And the district court would have barely any time to evaluate the defendants' claims and draft an important order. Necessarily, other cases would have to wait. As the defendants' choice to wait over a year to even make this request demonstrates, there is no need for their request to turn into a fire drill. No artificial deadline is needed or warranted.

## II.    This Court should deny the defendants' request to stay the preliminary injunction pending appeal.

Although the defendants concede (at 12–13) that the district court should consider their request "in the first instance," they simultaneously insist (at 6) that *this* Court should permit them to move forward with their desired RIF immediately,

8

rather than waiting for the district court to determine whether the injunction should be modified to permit it.

The defendants never explain or attempt to reconcile these inconsistent positions. And the Federal Rules of Appellate Procedure—and the rules of this Court—require them to seek such relief in the district court in the first instance. To get around these rules, the defendants attempt to frame their request to modify the injunction as a request to modify this Court's order denying a stay of the injunction's mass-termination provision. But the rules do not permit such maneuvering. Because the defendants have never before sought to implement this RIF, they must seek a modification or stay of the injunction first in the district court. Their request for a stay should thus be denied.

**1.** A party seeking to modify or stay an injunction while an appeal is pending "must" move first in the district court. Fed. R. App. P. 8(a)(1)(A), (C); *see also* D.C. Circuit Handbook at 33 ("Application for a stay or any other appropriate emergency relief must first be made to the district court … whose order is being appealed"); *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760 (D.C. Cir. 1980) (recognizing that Rule 8(a) "requires" an applicant "to apply for [relief] first in the district court"); Fed. R. Civ. P. 62(d) (granting the district court authority to "suspend" or "modify" an injunction "[w]hile an appeal is pending"). The only exception to this rule is

where a movant "show[s]" that "moving first in the district court would be impracticable." Fed. R. App. P. 8(a)(2)(A)(i); D.C. Circuit Handbook at 33.

This "cardinal principle" is rooted in considerations of institutional competence. Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3954 (5th ed. 2020). The district court is "familiar with the controversy and better able to assess potential prejudice to a party from the grant or denial of interim relief." *In re Grand Jury Proc.*, 626 F.2d 1051, 1059 (1st Cir. 1980). And where a motion would require the court to consider new evidence, "the fundamentally different roles" of appellate and trial courts "mandate" consideration of that new evidence by the district court in the first instance—"before Rule 8 proceedings" in a court of appeals. *Chem. Weapons Working Grp. v. Dep't of the Army*, 101 F.3d 1360, 1362 (10th Cir. 1996).

As the defendants concede (at 12), they have never asked the district court to modify or stay the injunction to permit them to implement this RIF plan. And they haven't even attempted to show that it would be impracticable to do so. That's fatal to their motion. *See Carter v. United States*, 2003 WL 21659644, at *1 (D.C. Cir. 2003) (denying motion where movant "failed to demonstrate that seeking injunctive relief first in the district court would be impracticable"); *Baker v. Adams Cnty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 931 (6th Cir. 2002) (denying stay motion because the movant "did not so move below and has not made any showing that such a motion would have been impracticable"); *SEC v. Dunlap*, 253 F.3d 768, 774 (4th Cir. 2001); *Agudath*

10

*Israel of Am. v. Cuomo*, 980 F.3d 222, 225 (2d Cir. 2020); *Caddo Nation of Okla. v. Wichita & Affiliated Tribes*, 877 F.3d 1171, 1175–76 (10th Cir. 2017); *Brown v. Cain*, 546 F. App'x 471, 477 (5th Cir. 2013).

**2.** The defendants never explain why they think Rule 8 doesn't apply to them. But by styling their motion as a request to "modify the stay pending appeal," they suggest that they think they can skip the district court because once, over a year ago, they sought a different stay from the district court. In other words, the defendants seem to think that, because they once sought a stay in the district court, they are now free—for the remainder of the lawsuit—to come directly to this Court any time they desire further relief.

That is not the law. How a movant styles their motion has no "legal effect"— it is a motion's "substance," not "linguistic form," that "determines [its] nature." *Acker v. H. Herfurth, Jr., Inc.*, 110 F.2d 241, 243 (D.C. Cir. 1939). And Rule 8 requires a movant to turn first to the district court whenever they seek new relief from an injunction. In *Baker*, for example, after the district court denied the defendant's request to stay its injunction, the defendant asked the court of appeals to do so—or, in the alternative, to modify it. 310 F.3d at 930. The Sixth Circuit held that Rule 8 required the modification request to be sought in the district court in the first instance. "Although the defendant [had] moved in the district court to stay the district court's judgment *altogether*," the court explained, the defendant had never

11

asked the district court for the proposed modification "as an alternative." *Id.* (emphasis added). And it had to do so before it could seek that relief in the court of appeals. *Id.*; *see also Rhode Island v. Trump*, 155 F.4th 35, 46 (1st Cir. 2025) (recognizing that it would "undermine[]" Rule 8 to allow movants seeking a stay "to rely on arguments that they did not make" before the district court).

Like the defendant in *Baker*, the defendants here previously asked the district court to "stay the district court's [injunction] altogether." *Baker*, 310 F.3d at 930; *see* Dkt. 97 at 3, 8.[3] The defendants never argued that intervening facts render injunctive relief unnecessary or proposed the modification they now seek. They couldn't have: Their new plan was apparently adopted on March 27, 2026, over a year after the injunction was entered. Their current request is thus "precisely the sort of motion that ought to have been made before the district court" in the first instance. *Baker*, 310 F.3d at 931.

Enforcing Rule 8 is particularly important here because the defendants' asserted basis for relief is intervening factual developments. The defendants argue (at 7) that a stay or modification of the injunction is appropriate because their new RIF plan demonstrates that "all prior plans regarding the agency's future size and

---

[3] In the alternative, the defendants asked the court to stay several provisions of the injunction. Dkt. 97 at 9–10. But this request, too, was to stay the provisions in full—not to partially stay the mass-termination provision to allow for a RIF that would not even be planned until a year later.

function"—i.e., their decision to shut down the agency—"have been superseded." Although they resist saying so, this is a voluntary cessation argument: The defendants' position is that a preliminary injunction is no longer necessary because, they say, new evidence shows that they voluntarily halted their shutdown plans. *Cf. Campbell v. McGruder*, 580 F.2d 521, 541 (D.C. Cir. 1978) ("The decision whether defendants' illegal conduct is likely to recur lies in the equitable discretion of the District Court.").

Rule 8 recognizes that the district court is the "proper forum" for presenting that "new evidence." *Chem. Weapons*, 101 F.3d at 1362; *see also FemHealth USA, Inc. v. Williams*, 83 F.4th 551, 557–58 (6th Cir. 2023) (holding it improper to "wade into the parties' factual disputes" about whether the preliminary injunction should remain in effect "before the district court has had a chance to make factual findings" because the district court was "best positioned" to consider the intervening factual developments in the first instance); *People Not Politicians Or. v. Clarno*, 826 F. App'x 581, 583 (9th Cir. 2020) (observing that "the district court is better positioned to evaluate factual nuances" surrounding dispute of whether the preliminary injunction was still appropriate after intervening factual developments); *Ahlman v. Barnes*, 2020 WL 3547960, at *5 (9th Cir. 2020) (recognizing that district court should consider "in the first instance" whether modification was warranted in light of "new evidence" of "changed circumstances").

13

**3.** Finally, even if it were appropriate for this Court to consider the defendants' motion in the first instance, emergency relief would not be warranted.

The defendants have not even attempted to satisfy the stay factors. Instead, they assert (at 6) that they don't need to because this Court "has already determined that the government meets the requirements for a stay pending appeal." But this Court has never considered *any* argument that it should stay the mass-termination provision to permit the RIF that the defendants have only recently proposed—let alone decided that it satisfied the stay requirements. Following the government's initial motion to stay pending appeal, the panel did stay the mass-termination prohibition to the extent that it barred terminations of employees whom the defendants determined, based on "a particularized assessment," were unnecessary to the Bureau's "statutory duties." Order at 1, *NTEU v. Vought*, No. 25-5091 (D.C. Cir. Apr. 11, 2025). But it quickly reversed course after the defendants seized on that partial stay to conduct a RIF that would have effectively shut down the agency. *See* Order at 2, *NTEU v. Vought*, No. 25-5091 (D.C. Cir. Apr. 28, 2025); *supra* 5.

Staying the mass-termination prohibition, the defendants' conduct made clear, would prevent "meaningful final relief" should the plaintiffs prevail, *id.*—by then, the defendants would have already dismantled the CFPB. The full Court kept that decision—that is, the decision *not* to stay the mass-termination prohibition—in place, when it took the case en banc. *See* Order, *NTEU v. Vought*, No. 25-5091 (D.C.

14

Cir. Dec. 17, 2025) ("The partial stay pending appeal entered on April 11, 2025, and later modified on April 28, 2025, is in effect."). So the operative decision of this Court is that the defendants have *not* satisfied the stay requirements.

And the defendants don't try to do so in their motion. They don't even attempt to argue that they have a likelihood of success on appeal—"one of the two most critical prongs of the test for a stay." *Citizens for Resp. & Ethics in Wash. v. FEC*, 904 F.3d 1014, 1017 (D.C. Cir. 2018). That alone is sufficient to deny a stay.

Nor do the defendants attempt to demonstrate irreparable harm, the second of the "most critical" prongs. *Nken v. Holder*, 556 U.S. 418, 434 (2009); *see Citizens for Resp.*, 904 F.3d at 1017. It's hard to see how they could. They'd have to show that they would suffer irreparable harm merely from waiting for the district court to consider their request to modify the injunction before going ahead and implementing their new RIF plan. The defendants briefly assert (at 9) that keeping the injunction in place, while the district court considers whether to modify it, "impinges on the agency's flexibility" during that time. But they don't claim that this constitutes irreparable harm—let alone demonstrate how.

The defendants waited over a year after the district court entered the injunction to move to modify it. It is difficult to imagine how they could possibly be irreparably harmed by waiting a little while longer, so the district court can consider its request. *See Fontem US, LLC v. U.S. FDA*, 2022 WL 2761393, at *1 (D.C. Cir. 2022)

15

(explaining that, although the party requesting a stay demonstrated harm, its delay of "more than two months" undermined its claim of "irreparable harm"); *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) ("Our conclusion that an injunction should not issue is bolstered by the delay of the appellants in seeking one.") That, too, is sufficient reason to deny the defendants' request for a stay.

The only factor the defendants mention is the balance of the equities. But that cannot overcome their complete failure to address—let alone satisfy—the other requirements. *See Nken*, 556 U.S. at 434–35. In any event, the equities are not in their favor. The defendants concede (at 10, 12) that implementing their proposed RIF would harm the employee plaintiffs, arguing only that harm suffered by those plaintiffs cannot be considered. But the employee-plaintiffs' claims are properly in federal court. *See* En Banc Br. of Pls.-Appellees at 43–46. As to the other plaintiffs, the defendants do little more than simply assert (at 10–11) that they would not be harmed. The last time the defendants sought to terminate large swaths of the agency, they made similar claims that the agency would remain operational, but a host of declarations from agency leaders said otherwise. *See* Dkt. 127-1. Whether and to what extent the plaintiffs would be harmed is yet another fact-intensive inquiry best considered by the district court in the first instance. And the defendants make no effort at all to demonstrate that the public would not be harmed. *See Nken*, 556 U.S. at 434.

16

## CONCLUSION

The plaintiffs have no objection to a limited remand to the district court to allow the defendants to file and the court to consider a motion to modify or suspend the preliminary injunction. But this Court should not impose a deadline on the district court. Nor should it stay the injunction's prohibition on mass terminations in the interim.

Respectfully submitted,

*/s/ Jennifer D. Bennett*
JENNIFER D. BENNETT
GUPTA WESSLER LLP
235 Montgomery Street, Suite 629
San Francisco, CA 94104
(415) 573-0336
*jennifer@guptawessler.com*

DEEPAK GUPTA
ROBERT FRIEDMAN
STEFANIE OSTROWSKI
GUPTA WESSLER LLP
2001 K Street, NW, Suite 850 North
Washington, DC 20006
(202) 888-1741

*Counsel for Plaintiffs-Appellees*

PARAS N. SHAH
*General Counsel*
ALLISON C. GILES
*Associate General Counsel*
NATIONAL TREASURY EMPLOYEES UNION
800 K Street, NW, Suite 1000
Washington, DC 20001
(202) 572-5500

17

April 17, 2026                                    *Counsel for Plaintiff-Appellee National Treasury Employees Union*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(g)(1)

I hereby certify that my word processing program, Microsoft Word, counted 4,181 words in the foregoing response, exclusive of the portions excluded by Rule 32(f). The document also complies with the typeface requirements of Fed. R. App. P. 32(a)(6) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in proportionally spaced typeface in 14-point Baskerville font.

*/s/ Jennifer D. Bennett*
Jennifer D. Bennett

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2026, I electronically filed the foregoing response with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Jennifer D. Bennett*
Jennifer D. Bennett