**[EN BANC ORAL ARGUMENT HELD FEBRUARY 24, 2026]**

**No. 25-5091**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

NATIONAL TREASURY EMPLOYEES UNION, et al.,

*Plaintiffs-Appellees,*

v.

RUSSELL T. VOUGHT, in his official capacity as Acting Director of the
Consumer Financial Protection Bureau, et al.,

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the District of Columbia

---

**REPLY IN SUPPORT OF MOTION TO MODIFY THE STAY PENDING
APPEAL, FOR A LIMITED REMAND, AND TO PLACE THE APPEAL
IN ABEYANCE**

---

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
MELISSA N. PATTERSON
DEREK WEISS
SIMON GREGORY JEROME
  *Attorneys, Appellate Staff
  Civil Division, Room 7230
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 616-5365*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...........................................................................ii

INTRODUCTION.......................................................................................1

ARGUMENT ............................................................................................ 3

I.      This Court Should Re-Modify Its Stay Pending Appeal To Permit CFPB To Immediately Implement The New RIF Plan. ................................................................................... 3

II.     This Court Should Impose A Time Limit On A Remand To Consider Intervening Developments. ..................................10

CONCLUSION ........................................................................................13

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:** <u>**Page(s)**</u>

*Agudath Israel of Am. v. Cuomo,*
  980 F.3d 222 (2d Cir. 2020) (per curiam) ........................................................ 6

*Baker v. Adams County/Ohio Valley Sch. Bd.,*
  310 F.3d 927 (6th Cir. 2002) (per curiam) ........................................................ 6

*Brown v. Cain,*
  546 F. App'x 471 (5th Cir. 2013) (per curiam) ................................................ 6

*Caddo Nation of Okla. v. Wichita & Affiliated Tribes,*
  877 F.3d 1171 (10th Cir. 2017) ........................................................................ 6

*Carter v. United States,*
  No. 03-5067, 2003 WL 21659644 (D.C. Cir. 2003) (per curiam) ................... 6

*Griggs v. Provident Consumer Discount Co.,*
  459 U.S. 56 (1982) ............................................................................................ 11

*Nken v. Holder,*
  556 U.S. 418 (2009) ........................................................................................ 4, 5

*NRDC v. Southwest Marine Inc.,*
  242 F.3d 1163 (9th Cir. 2001) .......................................................................... 11

*SEC v. Dunlap,*
  253 F.3d 768 (4th Cir. 2001) ............................................................................ 6

*Trump v. CASA, Inc.,*
  606 U.S. 831 (2025) .......................................................................................... 12

**Statutes:**

12 U.S.C. § 5493 ................................................................................................. 8

28 U.S.C. § 1292 ........................................................................................... 12-13

**Rules:**

Federal Rule of Appellate Procedure 8 ...................................................... 3, 5, 6

Federal Rule of Civil Procedure 62.................................................................11

**INTRODUCTION**

Over a year ago, the district court entered a preliminary injunction largely freezing the Consumer Financial Protection Bureau's (CFPB) staffing at the level chosen by the prior administration.  Since then, all three branches of government have taken action calling into question the propriety of that injunction: CFPB's Acting Director approved a detailed plan for a reduction in force (RIF) explaining how the agency will continue to perform its statutory obligations with significantly fewer employees; the Supreme Court has reiterated that courts may not issue injunctive relief beyond that which is necessary to remedy a movant's irreparable injury; and Congress reduced the funding flowing to CFPB from the Federal Reserve such that the staffing levels the district court mandated will soon become financially untenable.  In light of these intervening developments, the most appropriate course would be for this Court to both (1) reimplement its original April 2025 stay to permit immediate effectuation of the Acting Director's long-frustrated policy choice to reduce CFPB staffing, *and* (2) impose a time limit on a remand to the district court to consider what preliminary injunctive relief, if any, remains warranted.

At minimum, however, this Court should take at least one of these commonsense measures to ensure that the government's entitlement to immediate appellate review of the preliminary injunction is not inappropriately stymied.  The parties agree that intervening events warrant district court reevaluation of that injunction, but contrary to plaintiffs' proposal, such a reexamination should neither indefinitely suspend this Court's exercise of its jurisdiction nor indefinitely leave the government barred from conducting a lawful RIF bearing no resemblance to the putative CFPB shutdown on which the injunction and this lawsuit are premised.  Plaintiffs' objections to this Court's re-modification of its stay are meritless; this Court has already concluded the government satisfies the procedural and substantive requirements for a stay of the RIF prohibition, and the administrability concerns the Court identified in modifying that stay have been obviated by the Acting Director's detailed explanations regarding the Bureau's ability to discharge its statutory obligations with fewer employees.  And plaintiffs identify no reason why a preliminary injunction that took only 43 days to issue should take more than 45 days to reevaluate.

## ARGUMENT

The parties agree that the intervening developments identified above warrant reevaluation of the preliminary injunction, that the district court should have an opportunity to do so, and that this Court should hold its own proceedings in abeyance during such reevaluation.  *See* Mot. 12-18; Resp. 6-7.  But those developments all cut *against* the continuation of the preliminary injunction in its current form; they in no way support plaintiffs' suggestion to leave the government impeded by all the injunction's strictures for an indeterminate period of the district court's choosing.

**I.     This Court Should Re-Modify Its Stay Pending Appeal To Permit CFPB To Immediately Implement The New RIF Plan.**

Plaintiffs' primary objection to restoring this Court's April 2025 stay is procedural, resting on the notion that the government's stay-modification request violates Federal Rule of Appellate Procedure 8(a).  *See* Resp. 8-13.  But the government already satisfied Rule 8, having promptly sought a stay from both the district court and this Court after the district court entered the preliminary injunction.  Indeed, the government even specifically sought a *partial stay* with respect to the injunction's RIF

prohibition, arguing that the injunction was overbroad insofar as provision 3 "prevent[ed] any reductions of force, even if such reductions would not affect the agency's ability to carry out its mandatory statutory duties." Dkt. 97, at 9 (seeking at least a "Partial Stay"). The district court declined to enter such a stay. Dkt. 102. This Court disagreed, concluding that "in light of the governing legal standard, *see Nken v. Holder*, 556 U.S. 418 (2009)," the injunction should be stayed, *inter alia*, "insofar as it prohibit[ed] defendants from terminating or issuing a notice of reduction in force to employees whom defendants have determined, after a particularized assessment, to be unnecessary to the performance of defendants' statutory duties." Apr. 11, 2025 Stay Order 1.

Contrary to plaintiffs' argument (at 14-16), nothing about this Court's subsequent modification of the partial stay undermines this Court's conclusion that the government satisfied the *Nken* factors with respect to a stay of the RIF prohibition. The government attempted to avail itself of the authority restored by that partial stay by noticing a RIF, but disputes quickly arose regarding whether that RIF was supported by the requisite "particularized assessment," prompting new district court hearings, a new district-court order "suspend[ing]" the RIF, a new appeal by the

4

government, and a new emergency motion in this Court. *See* Defendants'

Emergency Motion To Enforce Or Clarify Stay Pending Appeal 3-6 (April

18, 2025); Case No. 25-5132 (filed April 18, 2025). In response, this Court

modified its original stay to reinstate the preliminary injunction's RIF

prohibition, seeking to avoid "collateral litigation over the meaning and

reviewability of the 'particularized assessment' requirement imposed by"

the stay while "ensur[ing] that plaintiffs can receive meaningful final relief

should the defendants not prevail in this appeal." Apr. 28, 2025 Order

(Modification Order) 2. At no point did either the panel or the en banc

Court—which maintained the modified partial stay—revisit the Court's

conclusion that the government satisfied the *Nken* requirements for a stay

of the RIF prohibition in the first place. And notably, in re-subjecting the

government to the RIF prohibition, this Court observed that it had

"accommodated the government's interests by substantially expediting the

appeal, with oral argument scheduled less than three weeks from" the date

of the stay modification—a date now almost a year past. *Id.*

The Court should unwind that modification to allow the Bureau to

implement the RIF plan the Acting Director has now approved and

presented to this Court. Plaintiffs' insistence that Rule 8 requires the

5

government to *again* seek a partial stay from district court cannot be reconciled with that rule, which requires only that "a party … ordinarily move first in the district court" for the "relief" requested—here, a "stay of the … order of [the] district court pending appeal." Fed. R. App. P. 8(a)(1)(A). Unlike the cases on which plaintiffs rely (at 10-11) in which a movant sought different forms of relief or no relief from the district court, the government has already done so.[1] And plaintiffs' repeated contentions (at 2, 7-9) that the government conceded this Court is obliged to permit the district court to control the contours of this Court's stay pending appeal "in the first instance" is incorrect. The government agrees that whether the preliminary injunction itself should be "dissolve[d] or modif[ied]" in light of intervening developments should go first to the district court, Mot. 6, 8,

---

[1] *See Baker v. Adams County/Ohio Valley Sch. Bd.*, 310 F.3d 927, 930-31 (6th Cir. 2002) (per curiam) (defendant sought stay pending appeal in district court, but not alternative relief in the form of an injunction pending appeal); *Carter v. United States*, No. 03-5067, 2003 WL 21659644, at *1 (D.C. Cir. 2003) (per curiam) (no relief sought in district court); *Caddo Nation of Okla. v. Wichita & Affiliated Tribes*, 877 F.3d 1171, 1175-76 (10th Cir. 2017) (same); *SEC v. Dunlap*, 253 F.3d 768, 774 (4th Cir. 2001); *Brown v. Cain*, 546 F. App'x 471, 477 (5th Cir. 2013) (per curiam) (same); *Agudath Israel of Am. v. Cuomo*, 980 F.3d 222, 225 (2d Cir. 2020) (per curiam) (similar).

6

but whether this Court should re-modify its own stay of that injunction during this appeal is a matter for this Court, not the district court.

Plaintiffs also ignore that in modifying the partial stay, this Court offered additional clarity regarding the term "particularized assessment" that makes clear the propriety of restoring the government's ability to permit immediate implementation of the proposed RIF.  The Court explained that it had not originally "clearly defined" that term and chose to "define it":  "Such a 'particularized assessment' involves a determination, conducted by the decisionmaker responsible for the RIF, that each division or office within [CFPB] will be able to perform any statutorily required duties of that division or office without the employees subject to the RIF." Modification Order 1.  There can be no doubt that CFPB's 26-page RIF plan—which details the Acting Director's conclusion why every CFPB office can continue to fulfill its statutory duties in light of the proposed reductions in staffing—satisfies that definition.  Indeed, plaintiffs do not even attempt to contest as much.

Nor do any of the reasons this Court gave in modifying the stay to restore the "interim protection" of the RIF prohibition continue to apply. Modification Order 2.  Collateral litigation regarding CFPB's satisfaction of

7

this Court's "particularized assessment" requirement could not ensue, because this Court can examine the RIF plan *before* ruling on the government's motion, which seeks only a modification permitting that particular RIF. And plaintiffs' ability to receive "meaningful relief" at the conclusion of this litigation over an alleged shutdown, Modification Order 2, will not be affected by a RIF retaining more than 550 employees and preserving every division that currently exists, *see* Mot. 8. Meanwhile, on the other side of the ledger, the government and public continue to suffer significant, ongoing harm as the result of the politically accountable Acting Director's inability to use a statutorily authorized tool of agency management by conducting a RIF. *See* Mot. 9-10. For over a year now, the district court—not the Acting Director—has been exercising the Executive Branch's authority to "fix the number of … employees of the Bureau," 12 U.S.C. § 5493(a)(1)(A), and plaintiffs offer no legal or equitable justification for continuing judicial control over that policy decision.[2] Indeed, plaintiffs'

---

[2] *Contra* plaintiffs, the government did not tarry in seeking relief from this Court as soon as was practicable. *Cf.* Resp. 15-16. Rather, it filed its motion the same day the Acting Director adopted the revised RIF plan, which had been submitted for his review four days before. Attachment A at 1; Attachment B at 1. And plaintiffs' suggestion (at 15) that defendants'

*Continued on next page.*

suggestion (at 16) that CFPB must seek preclearance from the district court and plaintiffs for any staffing-level decision underscores the impropriety of the prohibition on CFPB conducting *any* RIF.  If plaintiffs' true object is to forestall a "plan to shut down" CFPB, Resp. 1—rather than to continue inappropriate district-court supervision over the Executive Branch's management of an agency—it is unclear why they believe the district court must scrutinize a plan to reduce staffing levels that bears no resemblance to such an alleged shutdown.

Finally, plaintiffs' discussion (at 12-13) of the voluntary cessation doctrine is inapposite:  CFPB has not argued mootness here.  On the contrary, the government seeks to continue—not end—proceedings regarding the propriety of continued injunctive relief, with the hope that the parties may "agree on a plan to proceed to final judgment in district court, thus expediting final resolution of this litigation."  Mot. 18.  In light of the expectation that this appeal would be promptly resolved, the

---

careful, months-long reconsideration of CFPB's original RIF plan after this Court's modification order—a process that resulted in a decision to keep well over twice the number of employees contemplated in April 2025—somehow counsels against prompt relief gets matters backward.

government did not previously seek a stay in the Supreme Court.  But this appeal has been pending for over a year now and plaintiffs propose an intolerable situation, in which the RIF prohibition remains entrenched pending temporally unlimited district court proceedings regarding a "fact-intensive inquiry"—all despite the Acting Director's adoption of a detailed RIF plan that plainly does not constitute a CFPB shutdown.  Resp. 16; *see infra*; *see also* Dkt. 113 (district court order contemplating wide-ranging discovery regarding the April 2025 RIF notice).  If placed in such a situation, the government may revisit the propriety of seeking further review.

## II.    This Court Should Impose A Time Limit On A Remand To Consider Intervening Developments.

The parties agree that the Court should hold this case in abeyance while issuing a limited remand to the district court with instructions to consider in the first instance whether to dissolve or modify the preliminary injunction in light of CFPB's issuance of a revised RIF plan superseding all previous agency decisions regarding the agency's size or function,

legislative changes to CFPB's funding, and intervening Supreme Court precedent.  Mot. 12-17; Resp. 1, 6-7, 17.[3]

Plaintiffs, however, oppose the government's request that the remand be limited in duration, calling the proposed 45-day limit "arbitrary."  Resp. 6-8.  Plaintiffs do not acknowledge, however, that the district court required even less time—43 days—to evaluate their amended complaint, hold multiple hearings, entertain amici's contentions, and impose a sweeping injunction on the government.  *See* Dkts. 7 (amended complaint, Feb. 13, 2025), 88 (preliminary injunction, Mar. 28, 2025).  That injunction has now prompted over a year of appellate litigation, including three oral arguments before this Court.  Contrary to plaintiffs' assertion (at

---

[3] Plaintiffs briefly suggest (at 7 n.2) that the district court might be able to act on the government's request to reconsider the preliminary injunction even absent a remand.  But "a notice of appeal is an event of jurisdictional significance" that "divests the district court of its control over those aspects of the case involved in the appeal."  *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982).  Thus, a district court's ability to modify an injunction that has been appealed extends only to "preserv[ing] the status quo during the pendency of an appeal," not to "materially alter[ing] the status of the case on appeal."  *NRDC v. Southwest Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) (citation omitted) (discussing Fed. R. Civ. P. 62).  The government seeks material modifications or dissolution of the preliminary injunction now on appeal, thus requiring a remand.

11

7), the government having been fettered by the preliminary injunction over a year—long enough for all three branches of government to take action directly bearing on the injunction's propriety—is a reason to impose a time limit on a remand, not a reason to forgo one.  Plaintiffs identify no reason why over six weeks suffices to impose an injunction but not to reevaluate one, especially given that an administrative record for the RIF plan would make evidentiary hearings and government discovery particularly improper.  The adequacy of such a period is particularly evident given that the district court now has the benefit of the Supreme Court's intervening instructions in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), making clear it must narrow its focus to remedying only plaintiffs' demonstrated injuries rather than attempting to craft an injunction broad enough to "freez[e] the status quo" and "preserv[e] the agency's … workforce," JA634, in part influenced by amici's assertion of the "public interest" in "the singular role played by the CFPB and the costly vacuum that would be created by its absence," JA740-41.

Accordingly, 45 days is an appropriate time limit on a remand to the district court.  The government invoked its right to immediate appellate review of the preliminary injunction over a year ago.  *See* 28 U.S.C.

12

§ 1292(a)(1).  This Court should not indefinitely yield its jurisdiction over that appeal to the district court, especially without alleviating the most pronounced infringement on the Executive Branch's ability to manage CFPB by re-imposing the partial stay to permit the proposed RIF.

## CONCLUSION

For the foregoing reasons, this Court should re-modify its stay pending appeal to permit CFPB to implement the revised RIF plan, issue a time-limited remand to the district court to reconsider the injunction, and hold this appeal in abeyance.

13

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
MELISSA N. PATTERSON

 *s/ Derek Weiss*
DEREK WEISS

SIMON GREGORY JEROME
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7230*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-5365*
  *derek.l.weiss@usdoj.gov*

April 2026

14

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify this motion complies with the requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) because it has been prepared in 14-point Book Antiqua, a proportionally spaced font, and that it complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(C), because it contains 2,591 words, according to the count of Microsoft Word.

/s/ *Derek Weiss*

DEREK WEISS